KAMALA D. HARRIS
Attorney General of California
GLENN R. PRUDEN
Supervising Deputy Attorney General
ERIC D. SHARE
Supervising Deputy Attorney General
State Bar No. 151230
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 703-1375
  Fax:  (415) 703-1234
  E-mail:  Eric.Share@doj.ca.gov
*Attorneys for Respondent*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **ERNEST EDWARD DYKES,** | **DEATH PENALTY CASE** |
| Petitioner, | 11-CV-04454-SI |
| v. | **OPPOSITION TO PETITIONER'S MOTION FOR LEAVE TO FILE AMENDMENT/SUPPLEMENT TO PETITION; MOTION TO STAY OR BIFURCATE PROCEEDINGS; AND MOTION FOR JUDICIAL NOTICE** |
| **KEVIN CHAPPELL, Warden of San Quentin State Prison,** | |
| Respondent. | |

# TABLE OF CONTENTS

                                                                                    **Page**

Introduction ...................................................................................................... 1

Federal Court Proceedings ................................................................................ 2

Argument .......................................................................................................... 2

    I.    Petitioner's proposed amendment is unexhausted because the claim was
never presented to the state court ......................................................... 2

    II.   Petitioner's claim is barred by *Teague* .............................................. 10

    III.   The claim petitioner seeks to add to his petition is untimely as it does not
relate back to any of petitioner's timely filed claims ......................... 17

    IV.   Petitioner's motion to stay or bifurcate proceedings and his motion for
judicial notice should be denied ........................................................ 19

Conclusion........................................................................................................ 19

1

# TABLE OF AUTHORITIES

2

**Page**

3

C A S E S

4

*Arisman v. California State Supreme Court*

5
    2000 WL 1610745 (N.D. Cal. 2000) ......................................................... 9

6
*Beard v. Banks*
    542 U.S. 406 (2004) .................................................................... 15, 16

7

*Blazak v. Ricketts*

8
    971 F.2d 1408 (9th Cir. 1992) ............................................................ 19

9
*Blocker v. Martell*
    2010 WL 1813780 (9th Cir. 2010) ......................................................... 9

10

*Bousley v. United States*

11
    523 U.S. 614, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) ............................. 14

12
*Butler v. McKellar*

13
    494 U.S. 407 (1990) ...................................................................... 15

14
*California v. Brown*
    479 U.S. 538 (1987) ...................................................................... 12

15

*Caspari v. Bohlen*

16
    510 U.S. 383 (1994) ...................................................................... 10

17
*Caswell v. Calderon*

18
    363 F.3d 832 (9th Cir. 2004) ............................................................. 4

19
*Codispoti v. Howard*
    589 F.2d 135 (3d Cir. 1978) ............................................................. 6

20

*Coe v. Thurman*

21
    922 F.2d 528 (9th Cir. 1990) ............................................................. 6

22
*Coleman v. Thompson*
    501 U.S. 722 (1991) ...................................................................... 8

23

*Dickens v. Ryan*

24
    740 F.3d 1302 (9th Cir. 2014) ............................................................ 4

25
*Duckworth v. Serrano*
    454 U.S. 1 (1981) ...................................................................... 5, 8

26

*Easley v. State Attorney General*

27
    2014 WL 1757236 (E.D. Cal. 2014) ......................................................... 9

28

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Engle v. Isaac*
456 U.S. 107 (1982)................................................................................................ 5

4

5

*Furman v. Georgia*
408 U.S. 238 (1972)........................................................................................ 12, 13

6

7

*Galvan v. Alaska Dep't of Corr.*
397 F.3d 1198 (9th Cir. 2005) ............................................................................ 3, 8

8

*Gatlin v. Madding*
189 F.3d 882 (9th Cir. 1999) ................................................................................... 3

9

10

*Gideon v. Wainwright*
372 U.S. 335 (1963) .............................................................................................. 16

11

*Gilmore v. Taylor*
508 U.S. 333 (1993)............................................................................................... 13

12

13

*Goeke v. Branch*
514 U.S. 115 (1995) .............................................................................................. 16

14

15

*Graham v. Collins*
506 U.S. 461 (1993)............................................................................................... 15

16

17

*Gray v. Netherland*
518 U.S. 152 (1996)........................................................................................3, 13, 14

18

*Gregg v. Georgia*
428 U.S. 153 (1976)............................................................................................... 12

19

20

*Hajek v. Woodford*
2001 WL 1006783 (N.D. Cal. 2001) ....................................................................... 9

21

22

*Horn v. Banks*
536 U.S. 266 (2002)............................................................................................... 10

23

*Johnson v. Bredesen*
558 U.S. 1067 (2009)............................................................................................. 11

24

25

*Jones v. Chappell*
2014 WL 3567365 (C.D. Cal. July 16, 2014, No. CV 09-2158-CJC)........................... passim

26

27

*Jones v. McDaniel*
320 Fed. Appx. 784 (9th Cir. 2009)......................................................................... 9

28

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Kellotat v. Cupp*
719 F.2d 1027 (9th Cir. 1983) ......................................................................... 8

*King v. Ryan*
564 F.3d 1133 (9th Cir. 2009) ......................................................................... 17

*Knight v. Florida*
528 U.S. 990 (1999) .......................................................................................... 11

*Kohler v. Newland*
1999 WL 402443 (9th Cir. 1999) ..................................................................... 9

*Lackey v. Texas*
514 U.S. 1045 (1995) ..............................................................................11, 14, 17

*Lambrix v. Singletary*
520 U.S. 518 (1997) .......................................................................................... 10

*Larche v. Simons*
53 F.3d 1068 (9th Cir. 1995) ........................................................................... 9

*Lee v. Stickman*
357 5........................................................................F.3d 338, 341-42 (3d Cir. 2004)

*Mayle v. Felix*
545 U.S. 644, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005) .......................... 17

*McKenzie v. Day*
57 F.3d 1493 (9th Cir. 1995) ...................................................................... 4, 14

*McKoy v. North Carolina*
494 U.S. 433 (1990) .......................................................................................... 15

*Mills v. Maryland*
486 U.S. 367 (1988) .................................................................................... 15, 16

*Nguyen v. Curry*
736 F.3d 1287 (9th Cir. 2013) ......................................................................... 17

*Noltie v. Peterson*
9 F.3d 802 (9th Cir. 1993) ............................................................................... 5

*O'Dell v. Netherland*
521 U.S. 151 (1997) .................................................................................... 10, 13

iv

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Phillips v. Vasquez*
56 F.3d 1030 (9th Cir. 1995) ........................................................................... 6, 7

*Picard v. Connor*
404 U.S. 270 (1971).......................................................................................... 3

*Redeagle-Belgarde v. Wood*
199 F.3d 1333, No. 98-35601, 1999 WL 985164 (9th Cir. 1999)........................ 7

*Reswig v. Miller*
2014 WL 1379233 (C.D. Cal. 2014)................................................................. 9

*Rhines v. Weber*
544 U.S. 269 (2005).......................................................................................... 3

*Ring v. Arizona*
536 U.S. 584 (2002)........................................................................................ 15

*Rose v. Lundy*
455 U.S. 509 (1982).......................................................................................... 3

*Saffle v. Parks*
494 U.S. 484 (1990).................................................................................. 10, 14

*Sawyer v. Smith*
497 U.S. 227 (1990).................................................................................. 13, 15

*Schriro v. Summerlin*
542 U.S. 348, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004) ............................... 15

*Smith v. Baldwin*
51 F.3d 1127 (9th Cir. 2007)............................................................................ 9

*Smith v. Mahoney*
611 F.3d 978 (9th Cir. 2010)..................................................................... 11, 14

*Stringer v. Black*
503 U.S. 222 (1992)........................................................................................ 10

*Sweet v. Cupp*
640 F.2d 233 (9th Cir. 1981) ............................................................................ 5

*Teague v. Lane*
489 U.S. 288 (1989) ................................................................................. passim

v

1

2

## TABLE OF AUTHORITIES
### (continued)

**Page**

3

*Tuilaepa v. California*
    512 U.S. 967 (1994)................................................................................................ 12

4

5

*Whorton v. Bockting*
    549 U.S. 406 (2007)................................................................................................ 15

6

*Wood v. Milyard*
    566 U.S. __, 132 S. Ct. 1826 (2012)....................................................................... 3

7

8

*Woodford v. Ngo*
    548 U.S. 81 (2006).................................................................................................. 4

9

10

*Wooten v. Kirkland*
    540 F.3d 1019 (9th Cir. 2008)................................................................................ 3

11

*Workman v. Tate*
    957 F.2d 1339 (6th Cir. 1992)................................................................................ 6

12

13

STATUTES

14

Antiterrorism and Effective Death Penalty Act ............................................... 4, 7, 10

15

United States Code, Title 28
    § 2254(b)...........................................................................................................3, 4, 5, 6

16

    § 2254(b)(1)......................................................................................................... 2, 8

17

    § 2254(b)(1)(A).................................................................................................... 4, 8
    § 2254(b)(1)(B)......................................................................................................... 9

18

    § 2254(b)(1)(B)(ii)...........................................................................................4, 7, 8, 9
    § 2254(d) .................................................................................................................. 7

19

20

CONSTITUTIONAL PROVISIONS

21

United States Constitution
    Eighth Amendment ...................................................................................... passim

22

COURT RULES

23

Federal Rules of Civil Procedure

24

    Rule 15(c)............................................................................................................ 17
    Rule 15(c)(1)(B) ................................................................................................. 17

25

OTHER AUTHORITIES

26

Pub. L. No. 104-132, 110 Stat. 1214 (1996)....................................................... 4

27

28

**INTRODUCTION**

On September 26, 2014, Petitioner filed three motions that, together, seek leave to amend his petition for writ of habeas corpus to add a new claim ("petition").  The motions are: (1) motion for leave to file amendment/supplement to petition for writ of habeas corpus; (2) motion to stay or bifurcate proceedings; and (3) motion for judicial notice.  Because the motions are integrally related, Respondent opposes them all in this single pleading.  In his motions, Petitioner seeks leave to amend his petition to include a new claim alleging that his death sentence must be vacated because: "California's appellate and post-conviction processes have failed, and are failing to provide Petitioner with a full, fair, and timely review of his conviction and sentence, his confinement is thereby rendered unnecessarily lengthy, tortuous, and inhumane, and his proposed execution rendered unconstitutional."  (Proposed Amendment/Supplement to Petition ("proposed amendment") ¶ 201 D.)  As a result, he concludes in an all encompassing assertion, his "sentence of death and continued confinement are unlawful and violate his rights to due process, equal protection, meaningful appellate review, and freedom from the infliction of torture and cruel and unusual punishment, ex post facto punishment, and double jeopardy as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, international law as set forth in treaties, customary law, international human rights law, including but not limited to the European Convention on Human Rights and international decisional law, and under the doctrine of jus cogens."  (Proposed amendment ¶ 201 D.)  Petitioner relies upon the decision in *Jones v. Chappell*, 2014 WL 3567365 (C.D. Cal. July 16, 2014, No. CV 09-2158-CJC) ("*Jones*"), appeal docketed No. 14-56373 (9th Cir. Aug. 21, 2014.)

Petitioner's motions should be denied on the ground of futility because the claim he seeks to add to his petition by amendment is unexhausted, as the California Supreme Court has not had an opportunity to address it; relief is barred by *Teague v. Lane*, 489 U.S. 288  (1989) (plurality opn.) ("*Teague*"), because existing precedent does not dictate the result being sought in the claim; and the claim is untimely because it does not relate back to any previously pleaded timely claim.  Because amendment of the petition would be futile, there is no basis for bifurcating or staying proceedings, and no reason to grant judicial notice of documents from the *Jones* litigation.

1

1

**FEDERAL COURT PROCEEDINGS**

2
3
4

Petitioner filed his petition in this Court on December 21, 2012. (Dkt. No. 13.) On December 13, 2013, Respondent filed an answer. (Dkt. No. 18.) Petitioner's Response/Traverse has not yet been filed.

5
6
7
8
9

On July 16, 2014, in the unrelated *Jones* case, the Federal District Court for the Central District of California held that California's death penalty system is unconstitutional because of the "systemic delay" between the time a death sentence is pronounced and when that sentence is executed. *Jones*, 2014 WL 3567365 at *1, 8, 14. By his three motions, Petitioner seeks leave to amend his pending petition to add a similar claim.

10

**ARGUMENT**

11
12

**I.    PETITIONER'S PROPOSED AMENDMENT IS UNEXHAUSTED BECAUSE THE CLAIM WAS NEVER PRESENTED TO THE STATE COURT**

13
14
15
16
17
18

Petitioner asserts that his proposed amendment is proper because in his current petition "he recited each of the operative facts for a <u>Jones v. Chappell</u> claim, <u>viz.</u> the date of his conviction, as well as the dates the California Supreme Court denied relief in this direct appeal and state habeas petition." (Motion for Leave to File Amendment at p. 2.) Petitioner's assertion that he has pleaded sufficient facts to state a new claim is unavailing. His proposed new claim has never been presented to the California Supreme Court and is, therefore, unexhausted.

19
20
21
22
23
24
25
26

Exhaustion of state remedies is a prerequisite to a federal court's consideration of claims sought to be presented by a state prisoner in federal habeas corpus. 28 U.S.C. Section 2254(b)(1)[1] provides: "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—[¶] (A) the applicant has exhausted the remedies available in the courts of the State; or [¶] (B)(i) there is an absence of available State corrective remedies; or [¶] (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." Thus, exhaustion of state remedies is a prerequisite to a federal court's consideration of claims sought to be presented by a state

27
28

---

[1] Unless otherwise indicated, all subsequent statutory references are to Title 28 of the United States Code.

2

1  prisoner in federal habeas corpus.  § 2254(b); *Picard v. Connor*, 404 U.S. 270, 275 (1971);

2  *Wooten v. Kirkland*, 540 F.3d 1019, 1025 (9th Cir. 2008).  To satisfy the state exhaustion

3  requirement, the Petitioner must fairly present his federal claims to the state's highest court.  *Rose*

4  *v. Lundy*, 455 U.S. 509, 515 (1982).  A claim has not been fairly presented unless the Petitioner

5  has described in the state court proceedings both the operative facts and the federal legal theory

6  on which his contention is based.  *See Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *Gatlin v.*

7  *Madding*, 189 F.3d 882, 888 (9th Cir. 1999).

8         The exhaustion doctrine "reflects a policy of federal-state comity, 'an accommodation of

9  our federal system designed to give the State an initial "opportunity to pass upon and correct"

10  alleged violations of its prisoners' federal rights.'"  *Picard v. Connor*, 404 U.S. at 275 (citations

11  omitted).  It ""'"teaches that one court should defer action on causes properly within its

12  jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant

13  of the litigation, have had an opportunity to pass upon the matter."'"  *Rhines v. Weber*, 544 U.S.

14  269, 274 (2005) (quoting *Rose v. Lundy*, 455 U.S. at 518).

15         "The exhaustion doctrine . . . is founded on concerns broader than those of the parties; in

16  particular, the doctrine fosters respectful, harmonious relations between the state and federal

17  judiciaries."  *Wood v. Milyard*, 566 U.S. __, 132 S. Ct. 1826, 1833 (2012).  "We have consistently

18  adhered to this federal policy, for 'it would be unseemly in our dual system of government for a

19  federal district court to upset a state court without an opportunity to the state courts to correct a

20  constitutional violation.'"  *Picard v. Connor*, 404 U.S. at 275.

21         "Congress has commanded that, where there is an available and effective state corrective

22  process, and a federal petitioner for a writ of habeas corpus has not exhausted the remedies

23  available in the state courts, the petition 'shall not be granted.'"  *Galvan v. Alaska Dep't of Corr.*,

24  397 F.3d 1198, 1201 (9th Cir. 2005) (footnote omitted).  Here, Petitioner has an available and

25  effective state remedy—he can file a petition for writ of habeas corpus in the California Supreme

26  Court presenting his new claim.  The California Supreme Court will consider and resolve the

27  claim, giving it the due attention it deserves, just as it considered and ruled on every other claim

28  that Petitioner previously presented on appeal and in his prior state habeas corpus petition.

1    Affording careful and meaningful review may take a period of time, but this does not render the

2    state review process defective in any way that would support invoking an exception to the

3    exhaustion requirement.  In fact, "[i]t would indeed be a mockery of justice if the delay incurred

4    during the prosecution of claims that fail on the merits could itself accrue into a substantive claim

5    to the very relief that had been sought and properly denied in the first place."  *McKenzie v. Day*,

6    57 F.3d 1493, 1494 (9th Cir. 1995) (en banc).  Because Petitioner has an available state remedy,

7    he must exhaust her new claim before federal habeas corpus relief may be granted.

8    § 2254(b)(1)(A); *Woodford v. Ngo*, 548 U.S. 81, 92 (2006) (state court remedies are "exhausted"

9    for habeas purposes when they are no longer available).

10        The failure to exhaust state remedies as to a claim is a basis for finding futility of

11    amendment of a federal habeas petition.  See *Caswell v. Calderon*, 363 F.3d 832, 837 (9th Cir.

12    2004) (finding futile an effort to add unexhausted claims through amendment).  Petitioner asserts

13    that his federal habeas petition already includes all the facts necessary to state his new claim.

14    This assertion is incorrect, as will be explained *post*.  Equally important, however, is that

15    Petitioner never argued in the California Supreme Court, either in his direct appeal or in any state

16    habeas corpus petition, that his death sentence was unconstitutional because of any systematic

17    delays in California's death penalty system.  In short, the legal theory he now wishes to advance

18    was never presented to the state's highest court for its consideration.  Therefore, because his

19    claim is unexhausted and relief cannot be granted on an unexhausted claim (*see Dickens v. Ryan*,

20    740 F.3d 1302, 1318 (9th Cir. 2014), any amendment adding this claim to the current petition

21    would be futile.

22        Any reliance on section 2254(b)(1)(B)(ii) in this case would be misplaced.  Section

23    2254(b)(1)(B)(ii) is rarely applied, and has never been applied to excuse exhaustion under the

24    circumstances present in this case.  Prior to Antiterrorism and Effective Death Penalty Act

25    ("AEDPA") Pub. L. No. 104-132, 110 Stat. 1214 (1996), the relevant portions of section 2254(b)

26    were nearly identical to the relevant sections of the current statute.  Section 2254(b) provided that

27    a habeas Petitioner was required to exhaust state court remedies unless there was "either an

28    absence of available State corrective process or the existence of circumstances rendering such

4

1    process ineffective to protect the rights of the prisoner." In *Duckworth v. Serrano*, 454 U.S. 1

2    (1981) (per curiam), the Supreme Court held that the exception to the exhaustion requirement

3    under section 2254(b) was applicable only when "there is no opportunity to obtain redress in the

4    state court or *if the corrective process is so clearly deficient as to render futile any effort to obtain*

5    *relief*." *Id*. at 3 (emphasis added).  However, the Supreme Court has never found a circumstance

6    in which this "futility" exception applied.  The exception has rarely been applied in the lower

7    federal courts and, when it has, it generally has been misapplied.

8         Some courts have erroneously applied the futility exception to situations where the state's

9    highest court had recently rejected the claim presented by a petitioner in another case and there

10   was no reason to believe the claim would be resolved differently in the instant petitioner's case.

11   *See Sweet v. Cupp*, 640 F.2d 233, 236 (9th Cir. 1981) ("A number of circuits have held that a

12   petitioner may be excused from exhausting state remedies if the highest state court has recently

13   addressed the issue raised in the petition and resolved it adversely to the Petitioner, in the absence

14   of intervening United States Supreme Court decisions on point or any other indication that the

15   state court intends to depart from its prior decisions").  But this application of the exception did

16   not find support in the Supreme Court.  In *Engle v. Isaac*, 456 U.S. 107, 130 (1982), the Court

17   held that "[a petitioner] may not bypass the state courts simply because he thinks they will be

18   unsympathetic to the claim.   Even a state court that has previously rejected a constitutional

19   argument may decide, upon further reflection, that the contention is valid." *Id*. at 130 (footnote

20   omitted); see *Noltie v. Peterson*, 9 F.3d 802, 805 (9th Cir. 1993) (questioning continued validity

21   of futility doctrine in light of *Engle*).

22        Here, Petitioner cannot show that exhaustion would be futile.  Petitioner can present his

23   claim to the California Supreme Court in a habeas petition and there is no reason to conclude that

24   the California Supreme Court will not adjudicate the claim.  Petitioner is therefore not excused

25   from exhausting his claim on futility grounds.

26        Like the court found in *Jones*, some lower federal courts—but not the Supreme Court—

27   have held that a state process in a given case may be ineffective to protect a petitioner's rights so

28   as to excuse exhaustion when the state engages in inordinate delay in adjudicating the petitioner's

5

1   claims.  See *Lee v. Stickman*, 357 5 F.3d 338, 341-42 (3d Cir. 2004); *Phillips v. Vasquez*, 56 F.3d

2   1030, 1035-38 (9th Cir. 1995) ("*Phillips*"); *Workman v. Tate*, 957 F.2d 1339, 1344 (6th Cir.

3   1992); *Coe v. Thurman*, 922 F.2d 528, 530-31 (9th Cir. 1990); *Codispoti v. Howard*, 589 F.2d

4   135, 141-42 (3d Cir. 1978).  But these cases all involve delay *after* the petitioner presented his or

5   her claims to the state court and afforded the state a full and fair opportunity to review them.

6   There is no case in which a federal petitioner has been excused from presenting a claim to a state

7   court because the petitioner alleges that a state court may take too long to decide the claim in the

8   first instance.  Thus, to the extent delay in the state review process could ever warrant excusing

9   exhaustion, it would only ever be the actual delay that a state has taken to review a claim, not any

10  hypothetical delay conjured up by a petitioner.

11       The Ninth Circuit's decision in *Phillips* well illustrates this point.  In *Phillips*, the defendant

12  was convicted of capital murder (and other offenses) and was sentenced to death.  On appeal, the

13  California Supreme Court affirmed the defendant's convictions but reversed his death sentence.

14  The defendant was later resentenced to death and he again appealed to the California Supreme

15  Court.  While the appeal was pending, the defendant filed a petition for writ of habeas corpus in

16  federal court, seeking review only of his guilt-phase claims.  The district court dismissed the

17  petition under the abstention doctrine and as unexhausted.  *Phillips*, 56 F.3d at 1032.  The Ninth

18  Circuit held that the district court erred in finding the petition unexhausted because the petitioner

19  sought habeas relief on exhausted claims related to his conviction rather than claims arising from

20  his death sentence.  *Id*. at 1034.  The *Phillips* court also held that the petitioner could pursue his

21  habeas claims in federal court even though the state court had not rendered a final decision on the

22  validity of his sentence because of the extraordinary delay in the state court.  *Id*. at 1035-38.  It

23  was in this context, where the petitioner had already presented his claims in state court, that the

24  Ninth Circuit held, "extraordinary delay in the state courts can render state corrective processes

25  'ineffective' within the meaning of section 2254(b) and that exhaustion is not required in such

26  cases."  *Id*. at 1035.  *Phillips* observed that "[c]omity concerns in this case are practically

27  nonexistent since the state has had a full and fair opportunity to review the validity of *Phillips*'

28  conviction . . . ."  *Id*. at 1036.

6

1    Neither *Phillips* nor any other case (except *Jones*) has excused exhaustion based on delay in

2    state court where, as here, the petitioner has never presented his claim to the state court.  *See*

3    *Redeagle-Belgarde v. Wood*, 199 F.3d 1333, No. 98-35601, 1999 WL 985164 at *5 (9th Cir.

4    1999) (distinguishing *Phillips* on the ground that the petitioner did not present his claims to the

5    state court).  Petitioner cannot be heard to assert excessive delay when he has not even given the

6    state court an opportunity to consider his claim.  Such roundabout reasoning would destroy the

7    exhaustion requirement.

8        Moreover, exhaustion has never been excused on the ground that presentation of a brand

9    new claim to a state court would cause further delay in the proceedings.  Presentation of new

10   claims to a state court will always cause delay, but principles of comity and federalism require

11   that the state court be given an opportunity to address the claims before the federal court grants

12   relief.  Under AEDPA, state court review of claims is even more necessary, as Congress has

13   determined that state court decisions are to be accorded deference when determining whether

14   federal habeas corpus relief is to be granted.  § 2254(d).  In sum, relying on "delay" in the state

15   review process cannot serve as a reason here to excuse exhaustion under section

16   2254(b)(1)(B)(ii).

17       In *Jones*, although recognizing that the petitioner had not presented his claim to the

18   California Supreme Court, the court found that "exhaustion [was] not required" because requiring

19   the petitioner to return to state court "to exhaust his claim would only compound the delay that

20   has already plagued his post-conviction review process" and "would require [petitioner] to have

21   his claim resolved by the very system he has established is dysfunctional and incapable of

22   protecting his constitutional rights."  *Jones*, 2014 WL 3567365 at *13, citing § 2254(b)(1)(B)(ii)

23   (where "circumstances exist that render [the state] process ineffective to protect the rights of the

24   applicant," exhaustion is not required).  Based on this language, Petitioner may attempt to assert

25   in reply that the exhaustion requirement was excused under section 2254(b)(1)(B)(ii) because

26   exhaustion would require him to have his claim resolved by the very system he claims is

27   dysfunctional and incapable of protecting his constitutional rights.  Any such claim is unavailing.

28

7

1    California's system for post-conviction review is not unconstitutionally dysfunctional and is

2    not incapable of protecting the constitutional rights of condemned prisoners.  In concluding that

3    the California death penalty system is unconstitutional, *Jones* held only that "where the State

4    permits the post-conviction review process to become so inordinately and unnecessarily delayed

5    that only an arbitrary few of those sentenced to death are executed, the State's process violates the

6    Eighth Amendment." *Jones*, 2014 WL 3567365 at * 13.  *Jones* never found that the California

7    Supreme Court is incapable of fairly adjudicating constitutional claims that are presented to it by

8    individual prisoners.  Nor could it, given that there is no evidence to support such a finding.

9    More specifically, there is no basis for the conclusion that the California Supreme Court cannot

10    fairly adjudicate Petitioner's claim.  See *Kellotat v. Cupp*, 719 F.2d 1027, 1032 (9th Cir. 1983)

11    ("We are unwilling to hold that Oregon courts will so disregard their duties under the federal

12    Constitution . . . that recourse to them is futile").

13    For exhaustion purposes, the question is whether there is an available and effective state

14    court corrective process.  § 2254(b)(1)(A); *Galvan v. Alaska Dep't of Corr.*, 397 F.3d at 1201.

15    With respect to Petitioner's proposed new claim, there is an available and effective state

16    corrective process—Petitioner can present the claim to the California Supreme Court in a habeas

17    corpus petition.  "[I]n a federal system, the States should have the first opportunity to address and

18    correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722,

19    731 (1991).  Even where there are "clear" violations of constitutional rights, "considerations of

20    federal-state comity would still inhere, and it would be unseemly in our dual system of

21    government for the federal courts to upset a state-court conviction without affording to the state

22    courts the opportunity to correct a constitutional violation." *Duckworth v. Serrano*, 454 U.S. at 4.

23    Here, Petitioner failed to give the California Supreme Court the first opportunity to address

24    allegations that the administration of the death penalty in California is unconstitutional.

25    Accordingly, Petitioner should not be permitted to amend his petition to add his unexhausted

26    claim.  § 2254(b)(1).

27    Notably, the Ninth Circuit has consistently refused to excuse exhaustion pursuant to

28    §2254(b)(1)(B)(ii) explaining that its "adherence to the principle of comity is so strong that we

8

require that a state's highest court be given an opportunity to review constitutional claims even when that court's review is discretionary." *Larche v. Simons*, 53 F.3d 1068, 1071 (9th Cir. 1995). As the Ninth Circuit explained in *Kohler v. Newland*, 1999 WL 402443, *1 (9th Cir. 1999), the question under 28 U.S.C. § 2254(b)(1)(B) is whether the petitioner "still has the opportunity to file an original petition for writ of habeas corpus in state court asserting the claims stated in the federal habeas appeal." See also *Jones v. McDaniel*, 320 Fed. Appx. 784 (9th Cir. 2009) (that the state might erect a procedural bar does not render state proceedings "ineffective to protect his rights"); *Smith v. Baldwin*, 51 F.3d 1127, 1138-39 (9th Cir. 2007) (rejecting a § 2254(b)(1)(B)(ii) argument because the claims were exhausted).) That California may deny the claim, or even refuse to hear the claim at all due to some procedural bar, "cannot excuse [the petitioner's] failure to exhaust those state court remedies." *Kohler v. Newland*, 1999 WL 402443 at *2.[2]

Finally, having condemned as "dysfunctional" the system by which the California Supreme Court conducts direct and collateral review of condemned prisoners' claims of trial error, *Jones* leapt to the unsupportable conclusion that the California Supreme Court is "incapable of protecting . . . constitutional rights" in any regard, and thus, presumably, cannot be counted upon either to recognize any deficiencies in its own adjudicative process or to fairly consider any requests for relief on that account. This line of reasoning suffers from two flaws: first, its conclusion in no way follows from its premise, inasmuch as the circumstances that, on *Jones*'s theory, impair the state court's "functionality" (under-funding of defense investigation, for example) would have no impact on the court's capacity for self-scrutiny. Moreover, it assumes the correctness of its premise—namely, that the state court is wrong and it is correct, a construct

---

[2] Likewise, no other District Court in California that has examined the question has held that exhaustion is excused under 28 U.S.C. § 2254(b)(1)(B)(ii): *See Easley v. State Attorney General*, 2014 WL 1757236 (E.D. Cal. 2014) ("a state court's enforcement of its own procedural rules does not render such process ineffective to protect the rights of the applicant.' See 28 U.S.C. § 2254(b)(1)(B)(ii)"); *Reswig v. Miller*, 2014 WL 1379233 (C.D. Cal. 2014) (limitations on law library access do not satisfy § 2254(b)(1)(B)(ii)); *Blocker v. Martell*, 2010 WL 1813780 (9th Cir. 2010) ("Nothing before the court suggests that California's habeas corpus process was rendered ineffective to protect petitioner's rights. *Cf. Jones v. McDaniel*, 320 Fed. Appx. 784, 786 (9th Cir.2009)."); *Hajek v. Woodford*, 2001 WL 1006783 (N.D. Cal. 2001) (rejecting the argument that a delay in the appointment of habeas counsel satisfies § 2254(b)(1)(B)(ii)); *Arisman v. California State Supreme Court*, 2000 WL 1610745 (N.D. Cal. 2000) (delay in appointment of appellate counsel did not state a claim under § 2254(b)(1)(B)(ii)).

9

1  that, applied in the exhaustion context, would excuse exhaustion of any claim with respect to

2  which the federal court contemplates granting relief.  The exhaustion requirement cannot be

3  evaded by question-begging of this sort.  Petitioner's proposed amendment is unexhausted, there

4  is no basis for excusing exhaustion, and Respondent does not waive exhaustion.  Therefore,

5  amendment of the petition would be futile.

6  **II.   PETITIONER'S CLAIM IS BARRED BY *TEAGUE***

7        Even if Petitioner were permitted to avoid the exhaustion requirement, relief on his

8  proposed new claim would be barred by the habeas corpus anti-retroactivity doctrine first

9  announced in *Teague*, 489 U.S. at 301-10.  Under the *Teague* doctrine, a new constitutional rule

10  may not be applied retroactively on federal collateral review to upset a state conviction or

11  sentence unless the new rule alters the substantive elements of the crime, precludes punishment

12  for a class of people, or qualifies as a rare "watershed" rule of criminal procedure.  *Lambrix v.*

13  *Singletary*, 520 U.S. 518, 539-40 (1997); *Caspari v. Bohlen*, 510 U.S. 383, 396 (1994).  A rule is

14  "new" under *Teague* unless it was "dictated" by precedent—in the strict sense that no reasonable

15  jurist would have disputed the defendant's entitlement to relief— at the time the defendant's

16  conviction became final.  *O'Dell v. Netherland*, 521 U.S. 151, 156 (1997); *Lambrix*, 520 U.S. at

17  527-28.

18        In enforcing the doctrine, the federal court must determine whether relief on the habeas

19  claim would require the recognition of a new rule, or even an extension of an old rule, even by a

20  "short step," to a new context.  *Caspari v. Bohlen*, 510 U.S. at 396; *Saffle v. Parks*, 494 U.S. 484,

21  487-88 (1990); *Stringer v. Black*, 503 U.S. 222, 228 (1992).  If the rule would be "new," in the

22  sense that relief on the claim was not compelled by precedent that dictated that result in the

23  context of the case at hand, then the court must reject the claim at the threshold.  *Bohlen*, 510 U.S.

24  at 389. This *Teague* bar applies regardless of whether the case is also governed by AEDPA.  *Horn*

25  *v. Banks*, 536 U.S. 266, 272 (2002).

26        The *Teague* anti-retroactivity doctrine bars relief in this case.  The purported rule on which

27  Petitioner is relying is that Eighth Amendment concerns of "arbitrariness" and lack of

28  "penological purpose" limit the accumulated time state courts may take to adjudicate direct

10

1   appeals and collateral attacks raised by capital defendants against their death sentences.  As the

2   court in *Jones* put it, "where the State permits the post-conviction review process to become so

3   inordinately and unnecessarily delayed that only an arbitrarily selected few of those sentenced to

4   death are executed, the State's process violates the Eighth Amendment."  *Jones*, 2014 WL

5   3567365 at * 13.  No precedent, however, ever "dictated"—or even suggested—any such

6   improbable rule, which treats the remedial process invoked by capital-case defendants as an

7   element of a constitutional violation.  Certainly, the Supreme Court has never held that a lengthy

8   post-conviction review process in state or federal court may result in an arbitrary execution in

9   violation of the Eighth Amendment's proscription against cruel and unusual punishment.  No

10  other American court save the court in *Jones* has ever reached a decision even remotely close to

11  the one Petitioner is asking for here.

12          Delay—regardless of duration and who is responsible for which portion of it—has never

13  been validated by any other court as a basis for granting habeas corpus relief against a death

14  sentence.  The Supreme Court has repeatedly refused to even review such a claim.  *Johnson v.*

15  *Bredesen*, 558 U.S. 1067 (2009) (denying certiorari); *Knight v. Florida*, 528 U.S. 990 (1999)

16  (same); *Lackey v. Texas*, 514 U.S. 1045 (1995) ("*Lackey*") (same).  Moreover, the Ninth Circuit

17  has specifically held that such delay claims are *Teague* barred.  *Smith v. Mahoney*, 611 F.3d 978,

18  998-99 (9th Cir. 2010).

19          The basis for granting retroactive habeas corpus relief based on "delay" is not made

20  sufficient by adding an "arbitrariness" gloss to the claim.  In *Jones*, the court held that lengthy

21  delay—said to be all the State's fault due to a dysfunctional judicial review system—leads to

22  arbitrary executions that offend the Constitution.  *Jones*, 2014 WL 3567365 at * 13 ("The Court

23  has determined that systemic delay caused by the dysfunctional state review process has resulted

24  in the arbitrary selection of a small handful of individuals for execution, and has therefore

25  rendered Mr. Jones's death sentence unconstitutional").  But this addition does nothing to take the

26  novel rule outside of *Teague*'s anti-retroactivity prohibition.  Claims based on delay in execution

27  are generally referred to as "*Lackey*" claims.  *Lackey*, 514 U.S. 1045.  No precedent "dictated"

28  that *Lackey* delay may be unconstitutional.  Indeed, *Lackey* was itself a denial of certiorari, in

11

1    which Justice Stevens, writing only for himself, dissented, commenting that he felt certiorari

2    review was warranted to consider whether the Constitution could be violated by extended time on

3    death row prior to execution. A dissent from a denial of certiorari review by one Justice does not

4    create a rule supporting a claim upon which habeas relief can be granted. Not surprisingly, no

5    precedent ever went further to dictate that delay somehow may result in an unconstitutionally

6    "arbitrary" punishment.

7        Nonetheless, *Jones* found that the prohibition against the arbitrary infliction of the death

8    penalty announced in *Furman v. Georgia*, 408 U.S. 238 (1972) ("*Furman*) is the rule that dictates

9    relief, and *Furman*'s rule has existed for decades and inheres "in the most basic notions of due

10   process and fair punishment embedded in the core of the Eighth Amendment." *Jones*, 2014 WL

11   3567365 at * 14.

12       *Furman*, however, never adopted a "delay" rule. *Furman* was a one-paragraph per curiam

13   opinion in which none of the Justices who comprised the majority agreed upon the basis for

14   decision. *Furman*, 408 U.S. 238. The limited holding was that the death penalty cannot "be

15   imposed under sentencing procedures that created a substantial risk that it would be inflicted in an

16   arbitrary and capricious manner." *Gregg v. Georgia*, 428 U.S. 153 (1976) (explaining the holding

17   in *Furman*); accord *California v. Brown*, 479 U.S. 538, 541 (1987). That holding addressed and

18   decided nothing about constitutional limits regarding delay, or about the fact that some

19   condemned prisoners might be executed before others, or about the reality that some condemned

20   prisoners will be executed and others might die of other causes prior to execution. It certainly

21   never treated the remedial process of the state, voluntarily invoked by the prisoner, as itself part

22   of the proof of a constitutional wrong. Contrary to the court's finding in *Jones*, California's death

23   penalty scheme complies with the Constitution as required by *Furman* because it narrows the

24   class of defendants subject to capital punishment. The United States Supreme Court said so in

25   *Tuilaepa v. California*, 512 U.S. 967 (1994).

26       In his concurrence in *Furman*, Justice Stewart condemned any system in which the death

27   penalty is "wantonly" and "freakishly" imposed. *Furman*, 408 U.S. at 310 (Stewart, J.,

28   concurring). Justice White stated in his concurrence that a death penalty that does not serve the

12

1    penological goals of deterrence and retribution "would be patently excessive and cruel and

2    unusual punishment . . . ." *Furman*, 408 U.S. at 312 (White, J., concurring).  The concurring

3    opinions of two Justices, however, cannot amount to precedent that "dictates" any specific rule in

4    the *Teague* sense.  *See O'Dell v. Netherland*, 521 U.S. at 159 (a plurality opinion with

5    concurrences is an "unlikely candidate for 'old-rule' status," under *Teague*).  In any event, these

6    concurring opinions did not endorse any rule about delay in carrying out executions following a

7    prisoner's fair trial and full post-conviction review.  They focused instead on the great number of

8    crimes punishable by death and the infrequency with which death sentences for those crimes were

9    being sought and handed down.  *Id.* at 307-14.

10       The Supreme Court has repeatedly condemned attempts by lower courts to proffer a

11   constitutional rule at a high level of generality, rather than identifying with specificity the rule it

12   was applying.  *See Gray v. Netherland*, 518 U.S. at 169-70.  In *Sawyer v. Smith*, 497 U.S. 227,

13   235 (1990), for example, the Court rejected an attempt to treat a novel and specific rule about jury

14   instructions as merely an application of the general Eighth Amendment requirement of

15   "reliability" in capital sentences.  Here, Petitioner's contention that his claim should succeed

16   because it is dictated by a general rule against "arbitrariness" fares no better.

17       In *Gilmore v. Taylor*, 508 U.S. 333, 335-39 (1993), the Seventh Circuit purported to deduce

18   from various Supreme Court precedents—governing reliability in capital sentences, the burden of

19   proof, and the right to present defense evidence—a specific rule that juries be instructed to

20   consider lesser-offense verdict options based on affirmative defenses before finding the defendant

21   guilty of the charged offense.  The Supreme Court reversed.  It rejected the notion that its

22   precedents governing capital-sentence reliability, the state's burden of proof, and the exclusion of

23   defense evidence somehow had "dictated" a specific rule about the order in which a jury should

24   consider lesser-offense options based on affirmative defenses in a non-capital case.  As the Court

25   explained, "the level of generality at which respondent invokes this line of cases is far too great to

26   provide any meaningful guidance for purposes of our *Teague* inquiry."  *Gilmore*, 508 U.S. at 344.

27       Even if there were an established rule for *Teague* purposes that delay could reach a point

28   where the penological justification for the death penalty was no longer served, resulting in an

13

1    arbitrary selection of prisoners for execution, there would still have to be a further established

2    rule, joined to it, that the delay could be a byproduct of the prisoner affirmatively seeking relief

3    from judgment and sentence. *See Gray v. Netherland*, 518 U.S. at 168-70. As set forth *ante*, the

4    Ninth Circuit has already observed how preposterous that prospect is. *McKenzie v. Day*, 57 F.3d

5    at 1494 ("It would indeed be a mockery of justice if the delay incurred during the prosecution of

6    claims that fail on the merits could itself accrue into a substantive claim to the very relief that had

7    been sought and properly denied in the first place. If that were the law, death-row inmates would

8    be able to avoid their sentences simply by delaying proceedings beyond some threshold amount

9    of time, while other death-row inmates—less successful in their attempts to delay—would be

10   forced to face their sentences").

11        Petitioner's discussion of what he identifies as the penological purposes of the death

12   penalty, and whether the California review system serves those purposes (*see, e.g.*, proposed

13   amendment at ¶ 201 FF), does nothing to remove it from *Teague*'s prohibitions. Commenting on

14   the denial of certiorari in *Lackey*, Justice Stevens opined that the penological purposes of the

15   death penalty—retribution and deterrence—may cease to be served if too much time passes

16   between conviction and execution. *Lackey*, 514 U.S. at 1421-22 (conc. opn. of Stevens, J.). But,

17   just as Justice Stevens' ultimate conclusion—that delay could conceivably violate the

18   Constitution—is insufficient to "dictate" relief here, his underlying explanation for that

19   conclusion does not dictate relief either. As the Ninth Circuit has recognized, *Lackey* claims are

20   *Teague* barred. *Smith v. Mahoney*, 611 F.3d at 998-99.

21        Given that Petitioner is articulating a new rule, the final inquiry, then, is whether this new

22   rule falls into one of *Teague*'s exceptions. The first exception is for those rules that "plac[e]

23   certain kinds of primary, private individual conduct beyond the power of the criminal law-making

24   authority to proscribe." *Teague*, 489 U.S. at 307 (plurality opinion, internal quotation marks

25   omitted). Often referred to as "substantive" rules, these are "decisions that narrow the scope of a

26   criminal statute by interpreting its terms, see *Bousley v. United States*, 523 U.S. 614, 620-621,

27   118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998), as well as constitutional determinations that place

28   particular conduct or persons covered by the statute beyond the State's power to punish, see *Saffle*

14

1    *v. Parks*, 494 U.S. 484, 494-95, 110 S. Ct. 1257, 108 L. Ed. 2d 415 (1990); *Teague*, 489 U.S. 288,

2    311, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989) (plurality opinion)." *Schriro v. Summerlin*, 542

3    U.S. 348, 351-52, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004).  This exception does not apply here.

4         Petitioner's claim does not purport to rely on a substantive rule that the state statute did not

5    authorize capital punishment, or that no criminal conduct authorizes imposition of the death

6    penalty, or that he was member of a class as to whom no death sentence may ever be imposed.

7    Rather, Petitioner's claim is that the judicial review process—i.e., the procedure used to review

8    capital judgments and sentences—is unconstitutional in California because unreasonable delay

9    leads to prisoners being arbitrarily selected for execution.  Such a procedural rule is precisely the

10   type routinely held inapplicable retroactively.  *See*, *e.g.*, *Schriro v. Summerlin*, 542 U.S. 348

11   (*Ring v. Arizona*, 536 U.S. 584 (2002) rule that only the jury may make the factual finding

12   necessary to impose the death penalty was procedural under *Teague* so as to prohibit retroactive

13   application of the rule).

14        *Teague*'s second exception is a rare and narrow one that permits the retroactive application

15   of "watershed rules of criminal procedure" necessary to the fundamental fairness and accuracy of

16   criminal proceedings generally.  *Teague*, 489 U.S. at 311 (plurality opinion); *Sawyer v. Smith*,

17   497 U.S. at 242; *Butler v. McKellar*, 494 U.S. 407, 416 (1990); *Whorton v. Bockting*, 549 U.S.

18   406 (2007).  "[W]hatever the precise scope of this exception, it is clearly meant to apply only to a

19   small core of rules requiring observance of those procedures that . . . are implicit in the concept of

20   ordered liberty." *Graham v. Collins*, 506 U.S. 461, 478 (1993).  As *Teague* explained, it is

21   "unlikely that many such components of basic due process have yet to emerge." *Teague*, 489

22   U.S. at 313.

23        *Beard v. Banks*, 542 U.S. 406 (2004) is instructive.  Banks sought retroactive habeas relief

24   under the Supreme Court *Mills/McKoy*[3] precedents that had invalidated capital sentencing

25   schemes requiring juries to disregard mitigating factors unless found unanimously.  The Supreme

26   Court held, however, that the new rule did not fit within the second *Teague* exception.  *Banks*,

27   _____

28        [3] *Mills v. Maryland*, 486 U.S. 367 (1988); *McKoy v. North Carolina*, 494 U.S. 433 (1990).

15

542 U.S. at 416-20.  Even though the purpose of the *Mills/McKoy* rule was to avoid "potentially arbitrary impositions of the death sentence," the Court explained, it was not a rule that qualified under the second *Teague* exception.  *Id.* at 419.

In emphasizing the narrowness of the second *Teague* exception, the Supreme Court further observed that the right to counsel, established in *Gideon v. Wainwright*, 372 U.S. 335 (1963), was the only rule to date that would qualify under such a high standard as "watershed."  "However laudable the *Mills* rule might be, 'it has none of the primacy and centrality of the rule adopted in *Gideon*.'"  *Beard v. Banks*, 542 U.S. at 420.  Petitioner's proposed new delay/arbitrariness rule—that delay can lead to arbitrary executions—meets the same fate.  Simply put, this rule has no impact on an accurate determination of guilt or the reliability of a sentence of death.

*Goeke v. Branch*, 514 U.S. 115 (1995) (per curiam) is also instructive.  When Branch fled the jurisdiction while her criminal appeal was pending, the state court dismissed her appeal as a result of her fugitive status.  On habeas review, the Eighth Circuit held that the Constitution prohibited the dismissal of the appeal in the absence of some adverse effect on the appellate process.  *Id.* at 116-17.  The Supreme Court reversed.  It first held that such a rule was not dictated by existing precedent and therefore was barred by *Teague*.  The Court further rejected Branch's argument that the second *Teague* exception was applicable.  Significantly, it explained that the state rule allowing for dismissal of a fugitive's appeal could not be a "watershed" rule of criminal procedure when there was no constitutional right to an appeal at all.  *Id.* at 120-21.  Here, because Petitioner has no constitutional right to an appeal or to state post-conviction review at all, *Branch* compels the conclusion that a rule granting relief for deficiencies in such processes cannot be a "bedrock" or "watershed" rule of due process exempt from the *Teague* doctrine.

Therefore, because the rule on which Petitioner purports to rely as the basis for habeas corpus relief is "new" within the meaning of *Teague*, and does not fall into one of *Teague*'s exceptions, federal habeas corpus relief is barred, and, thus, amending the petition would be futile.

1

**III.  THE CLAIM PETITIONER SEEKS TO ADD TO HIS PETITION IS UNTIMELY AS IT DOES NOT RELATE BACK TO ANY OF PETITIONER'S TIMELY FILED CLAIMS**

2

3      Petitioner maintains that the claim he seeks to add to his petition is timely under Federal

4  Rules of Civil Procedure, Rule 15(c)(1)(B) because it arises from facts that he has already

5  pleaded in his current petition.  Thus, he asserts, "It should be noted that [in his current petition

6  Petitioner] recited each of the operative facts for a <u>Jones v. Chappell</u> claim, <u>viz.</u> the date of his

7  conviction, as well as the dates the California Supreme Court denied relief in his direct appeal and

8  state habeas petition."  (Motion for Leave to File Amendment at p. 2.)  This is manifestly

9  insufficient to deem his claim timely.  Thus, even if this Court finds that Petitioner is relieved of

10  his obligation to exhaust his proposed claim in state court, and that the claim is not barred by

11  *Teague*, this Court should deny Petitioner's motion because his proposed claim does not relate

12  back to any common core of facts set forth in his pending petition and is therefore barred by the

13  operative statute of limitation.

14      "A claim added to a timely filed habeas petition after the expiration of the statute of

15  limitations is timely only if the new claim relates back to a properly filed claim contained in the

16  original petition."  *Nguyen v. Curry*, 736 F.3d 1287, 1296 (9th Cir. 2013), citing *King v. Ryan*,

17  564 F.3d 1133, 1142 (9th Cir. 2009).  "In *Mayle v. Felix*, 545 U.S. 644, 125 S. Ct. 2562, 162 L.

18  Ed. 2d 582 (2005), the Supreme Court held that a late-filed claim in an amended federal habeas

19  petition relates back under Rule 15(c) if the timely claim and the late-filed claim 'are tied to a

20  common core of operative facts.'"  *Id*. at 1298.

21      Here, Petitioner's proposed claim does not share a common core of operative facts with any

22  of his timely filed claims in his current petition.  None of the claims in his current petition in any

23  way discuss *systemic delays* in the imposition of the death penalty.[4]  Rather, his current claims

24  allege, for example, defects in the determination of the class of persons eligible for the death

25  penalty, defects in the procedure in which a capital jury is instructed and how it evaluates the

26

---

27      [4] Petitioner did not even assert in his current petition a "*Lackey*" claim alleging that his death sentence violated the Eighth Amendment because the delay in his case between sentencing and execution is unconstitutional.  See *Lackey v. Texas*, 514 U.S. 1045 (1995).

28

possible penalties, and that California's death penalty statute is fundamentally flawed.  Therefore, because the "facts" supporting Petitioner's proposed claim, which include statistics from the California Commission on the Fair Administration of Justice (see Proposed Amendment/Supplement to Petition for Writ of Habeas Corpus Under 28 U.S.C. 2254 ("Proposed Amendment") at ¶¶ 201 G, 201 U), statistics contained in a law review article (Proposed Amendment at ¶ 201 R), and information regarding the practices of the California Department of Corrections and Rehabilitation, and other facts not set forth in her petition, differ in "both time and type" from those set forth in his timely filed petition and are not supported by any "common core of facts," Petitioner's new claim does not relate back to any timely filed claim.

Petitioner's contrary assertion that all that is necessary for him to state a claim based on *Jones* is that he recite certain dates on which events occurred in his own case, and that he has already did so in his petition, is simply wrong.  In fact, it is belied by the very text of Petitioner's proposed amendment.  That text covers 20 pages of facts and argument.  (Proposed amendment ¶¶ 201 A – 201 SS.)  Far from reciting simply operative dates of events in Petitioner's own case, the proposed new claim includes, among many other things, allegations regarding the California Supreme Court's caseload and practices and procedures; purported statistics regarding the percentage of cases in which the California Supreme Court and the Federal Courts have granted relief to capital defendants; alleged conditions for the housing of capital defendants in California; information regarding California's method of execution; information regarding practices in other countries; and information regarding a 2012 California election in which the voters *rejected* an effort to repeal the death penalty.  Indeed, most of these facts and allegations include information about, and relate to, events occurring *after* Petitioner filed his state petition for writ of habeas corpus in the California Supreme Court.  Therefore, it simply cannot credibly be maintained that Petitioner has already pleaded all the facts necessary to state a claim under *Jones*.  For these reasons as well, Petitioner's claim is untimely and his motion for leave to amend his petition should be denied.

1  **IV.  PETITIONER'S MOTION TO STAY OR BIFURCATE PROCEEDINGS AND HIS MOTION FOR JUDICIAL NOTICE SHOULD BE DENIED**

2

3      Because, as established *ante*, Petitioner's proposed amendment is unexhausted, barred by

4  *Teague*, and untimely, his motions to stay or bifurcate, and his motion for judicial notice are

5  moot.[5]  With no amendment to the Petition, there would be nothing to bifurcate and no

6  justification for a stay.[6]  Similarly, because Petitioner cannot rely on *Jones* to amend his Petition,

7  there would be no justification for granting judicial notice of documents from that case.

8  **CONCLUSION**

9      For the foregoing reasons, Petitioner's combined motions to amend his petition for writ of

10  habeas corpus should be denied.

11

12  Dated:  October 22, 2014              Respectfully Submitted,

13                              KAMALA D. HARRIS
                            Attorney General of California

14                              GLENN R. PRUDEN
                            Supervising Deputy Attorney General

15

16                              /s/ Eric D. Share

17                              ERIC D. SHARE
                            Supervising Deputy Attorney General

18                              *Attorneys for Respondent*

19  SF2011202695
41112372.doc

20

21

22

23

24

---

25      [5] Petitioner's request to stay proceedings is particularly puzzling.  The core of petitioner's complaint in his combined motions  is that he has been harmed by delay in his capital

26  proceedings.  Yet, he now asks that his case be delayed pending resolution of litigation in another case, a process that could take some time.  For this reason alone petitioner's request to stay should be denied.

27      [6] For this reason, Petitioner's reliance on *Blazak v. Ricketts*, 971 F.2d 1408 (9th Cir. 1992) is misplaced.

28

19

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Ernest Edward Dykes v. Kevin Chappell, Warden of San Quentin State Prison**

No.:    **11-CV-04454-SI**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On October 22, 2014, I served the attached

**OPPOSITION TO PETITIONER'S MOTION FOR LEAVE TO FILE AMENDMENT/SUPPLEMENT TO PETITION; MOTION TO STAY OR BIFURCATE PROCEEDINGS; AND MOTION FOR JUDICIAL NOTICE**

by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

California Appellate Project          Habeas Corpus Resource Center
Federal Court Docketing              303 Second Street, Suite 400 South
101 Second Street, Suite 600         San Francisco, CA 94107
San Francisco, CA 94105-3647

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on October 22, 2014, at San Francisco, California.

| J. Wong | /s/ J. Wong |
|---|---|
| Declarant | Signature |

SF2011202695
41113338.doc