1   **PHILLIP A. TREVIÑO** [SBN 121119]
    137 N. Larchmont Blvd., #801
2   Los Angeles, California 90004
    Telephone: (213) 949-8000
3
    Attorney for Petitioner
4   ERNEST DYKES

5

6               **UNITED STATES DISTRICT COURT**

7           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

8

9   **ERNEST DYKES,**                ) **Case No. 11-CV-04454-SI**
                                      )
10          Petitioner,              ) CORRECTED PARTIAL TRAVERSE TO
                                      ) RESPONDENT'S ANSWER TO PETITION
11          v.                        ) FOR A WRIT OF HABEAS CORPUS
                                      )
12  **KEVIN CHAPPELL, Warden,**       )
                                      )
13          Respondent.              ) **DEATH PENALTY CASE**
    _____  )

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Table of Contents

Table of Contents . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . iii

**Partial Traverse to Respondent's Answer to
Petition for a Writ of Habeas Corpus** 1

General Denial . . . . . . . . . . . . . . . . . . . . 2

Jurisdiction . . . . . . . . . . . . . . . . . . . . . 2

Initial Allegations . . . . . . . . . . . . . . . . . 2

Exhaustion of State Remedies . . . . . . . . . . . . . 3

Application of AEDPA to this Matter . . . . . . . . . 4

    The "contrary" path to relief . . . . . . . . . . 5

    The "unreasonable application" path to relief . . 5

    The third path to relief, no state court evidentiary
    hearing . . . . . . . . . . . . . . . . . . . . . 11

Cullen v. Pinholster . . . . . . . . . . . . . . . 16

Constitutional Deprivations and Merits of
    Habeas Corpus claims . . . . . . . . . . . . . . . 20

Factual summary and state court findings of fact . . 24

Teague v. Lane . . . . . . . . . . . . . . . . . . 28

Exhibits and Request for Judicial Notice . . . . . . 29

Petitioner's Claims . . . . . . . . . . . . . . . . .

    Claim One . . . . . . . . . . . . . . . . . . . . 30

    Claim Two . . . . . . . . . . . . . . . . . . . . 30

        Discussion - Traverse of Answer . . . . . . . 33

    Claim Three . . . . . . . . . . . . . . . . . . . 38

        Respondent's Answer . . . . . . . . . . . . . 51

# Table of Contents
## (continued)

Claim Four  . . . . . . . . . . . . . . . . . .    59

Claim Five  . . . . . . . . . . . . . . . . . .    81

    Respondent's Answer  . . . . . . . . .  85, 97

Claim Six  . . . . . . . . . . . . . . . . . .    98

    Respondent's Answer  . . . . . . . . . .   104

Claim Seven  . . . . . . . . . . . . . . . . .   105

    Respondent's Answer  . . . . . . . . . .   115

Claim Eight  . . . . . . . . . . . . . . . . .   116

Conclusion  . . . . . . . . . . . . . . . . . .   116

1

## Table of Authorities

2

3  **Federal Cases**

4

5  Alpha Distributing Company of California,
        Inc., v. Jack Daniel Distillery,
6        454 F.2d 442 (9th Cir. 1972) . . . . . . . .    26

7  Apprendi v. New Jersey
        530 U.S. 466 (2000)   . . . . . . . . . . . .    89
8
9  Arredondo v. Ortiz
        365 F.3d 778 (9th Cir. 2004) . . . . . . . .    29

10 Ashe v. Swenson
        397 U.S. 436 (1970)   . . . . . . . . . .   46, 48
11
12 Ashmus v. Woodford
        202 F.3d 1160 (9th Cir. 2000)   . . . . . . . .    4

13 Baja v. Ducharme
        187 F.3d 1075 (9th Cir. 1999)   . . . . . . . .   20
14
15 Bank of Jackson County v. Cherry
        980 F.2d 1362 (11th Cir. 1993) . . . . . . .   106

16 Beck v. Alabama
        447 U.S. 625 (1980)   . . . . . . . . . .   57, 69
17
18 Bell v. Cone
        535 U.S. 685 (2002)   . . . . . . . . . . . .   22

19 Board of Regents v. Roth
        408 U.S. 564 (1972)   . . . . . . . . . . . .   51
20
21 Boyde v. California
        494 U.S. 370 (1990)   . . . . . . . . . .   33, 73

22 Bracy v. Gramley
        520 U.S. 899 (1997)   . . . . . . . . . . . .   19
23
24 Brown v. Palmateer
        379 F.3d 1089 (9th Cir. 2004)   . . . . . . . .   13

25 Bullington v. Missouri
        451 U.S. 430 (1981)   . . . . . . . . . .   46, 89
26
27 Caldwell v. Mississippi
        472 U.S. 320 (1985)   . . . . . . . . . .   57, 90

28                              -iii-

**Table of Authorities**
(continued)

California v. Brown
      479 U.S. 538 (1987)   . . . . . . . . . . .  33, 101

Cargle v. Mullin
      317 F.3d 1196 (10th Cir. 2003)  . . . . . . . . .  12

Caro v. Calderon
      165 F.3d 1223 (9th Cir. 1999)  . . . . . . . . .  33

Chapman v. California
      386 U.S. 18 (1967)  . . . . . . . . . . . . .  79, 90

Clabourne v. Lewis
      64 F.3d 1373 (9th Cir. 1995)  . . . . . . . . .  33

Coker v. Georgia
      433 U.S. 584 (1977)  . . . . . . . . . . . . .  113

Connally v. General Construction Co.
      269 U.S. 385 (1926)  . . . . . . . . . . . . .  86

Cullen v. Pinholster
      563 U.S. 170 (2011)  . . . . . . . . .  16-18, 20-23

Delap v. Dugger
      890 F.2d 285 (11th Cir. 1989)  . . . . . . . .  47

Dent v. West Virginia
      129 U.S. 114 (1889)  . . . . . . . . . . . .  51

Duhaime v. Ducharme
      200 F.3d 597 (9th Cir. 1999)  . . . . . . . . . .  7

Dyer v. Calderon
      151 F.3d 970 (9th Cir. 1998)  . . . . . . . . .  56

Earp v. Ornoski
      431 F.3d 1158 (9th Cir. 2005)  . . . . . . . .  11

Enmund v. Florida
      458 U.S. 782 (1982)  . . . . . . . . . . . .  113

Estelle v. Gamble
      429 U.S. 97 (1976)  . . . . . . . . . . . . .  112

Estelle v. McGuire
      502 U.S. 62 (1991)  . . . . . . . . . . . . .  98

1

**Table of Authorities**
(continued)

2

3    Fahy v. Connecticut
        375 U.S. 85 (1963)  . . . . . . . . . . . . . . .    90
4
    Fierro v. Gomez
5        865 F.Supp.1387 (N.D. Cal. 1994)
        aff'd, 77 F.3d 301, 309
6        vacated & remanded, 519 U.S. 918 (1996)  . . . .    113

7    Ford v. Wainwright
        477 U.S. 399 (1986)  . . . . . . . . . . . .    57, 69
8
    Furman v. Georgia
9        408 U.S. 238 (1972)  . . . . . . . . . . . . . .    113

10   Gardner v. Florida
        430 U.S. 349 (1977)  . . . . . . . . . . . . . .    90
11
    Goldberg v. Kelly
12       397 U.S. 254 (1970)  . . . . . . . . . . . . . .    51

13   Gomez v. Fierro
        519 U.S. 918 (1996)  . . . . . . . . . . . . . .    113
14
    Goss v. Lopez
15       419 U.S. 565 (1975)  . . . . . . . . . . . . . .    51

16   Gregg v. Georgia
        428 U.S. 153 (1976)  . . . . . . . . . . . . . .    112
17
    Griffin v. United States
18       502 U.S. 46 (1991) . . . . . . . . . . . . . . .    88

19   Hard v. Burlington Northern Railroad
        812 F.2d 482 (9th Cir. 1987)  . . . . . . . . . .    56
20
    Harrington v. Richter
21       562 U.S. 86 (2011)  . . . . . . . . . . . 9, 11, 17, 21

22   Hicks v. Oklahoma
        447 U.S. 343 (1980)  . . . . . . . . . . 64, 74, 75
23
    Himes v. Thompson
24       336 F.3d 848 (9th Cir. 2003)  . . . . . . . . .    14

25   Hitchcock v. Dugger
        481 U.S. 393 (1977)  . . . . . . . . . . . . . .    90
26
    Holland v. Jackson
27       542 U.S. 649 (2004)  . . . . . . . . . . . . . .    12

28
                            -v-

Table of Authorities
(continued)

Horton v. Mayle
    408 F.3d 570 (9th Cir. 2005)  . . . . . . . . . .    15

Hudson v. McMillian
    503 U.S. 1 (1992)   . . . . . . . . . . . . . . .   112

In re Kemmler
    136 U.S. 436 (1890)   . . . . . . . . . . . . . .   112

Insyxiengmay v. Morgan
    403 F.3d 657 (9th Cir. 2005)  . . . . . . . . . .    20

Johnson v. Mississippi
    486 U.S. 578 (1988)   . . . . . . . . . . . . . .    49

Kelly v. South Carolina
    534 U.S. 246 (2001)   . . . . . . . . . . . . . .    58

Kesser v. Cambra
    465 F.3d 351 (9th Cir. 2006) (en banc)  . . . . .    10

Killian v. Poole
    282 F.3d 1204 (9th Cir. 2002)
    cert. denied, 537 U.S. 1179 (2003)  . . . . .  12, 14

LaGrand v. Lewis
    883 F.Supp. 469 (D.Ariz. 1995),
    aff'd, 133 F.3d 1253 (9th Cir. 1998)  . . . . . .   114

LaJoie v. Thompson
    217 F.3d 663 (9th Cir. 2000)  . . . . . . . . . . .    8

Lambert v. Blodgett
    393 F.3d 943 (9th Cir. 2004)  . . . . . . . . . .    12

Lambright v. Stewart
    241 F.3d 1201 (9th Cir. 2001)  . . . . . . . . .    78

Lambrix v. Singletary
    520 U.S. 518 (1997)   . . . . . . . . . . . . . .    28

Lanzetta v. New Jersey
    306 U.S. 451 (1939)   . . . . . . . . . . . . . .    86

LeCroy v. Secretary, Florida Dep't of Corrections
    421 F.3d 1237 (11th Cir. 2005)  . . . . . . . . .    12

Lockett v. Ohio
    438 U.S. 586 (1978)   . . . . . . . . . . . .  72, 78-80

**Table of Authorities**
(continued)

Lockyer v. Andrade
    538 U.S. 63 (2003)   . . . . . . . . . . . . . . .   5, 20

Luna v. Cambra
    306 F.3d 954, 960 (9th Cir. 2003)   . . . . . . .   14

MacFarlane v. Walter
    179 F.3d 1131 (9th Cir. 1999)   . . . . . . . . . .   7

Mak v. Blodgett
    970 F.2d 614 (9th Cir. 1992)   . . . . . . . . . .   33

Marshall v. Union Oil
    616 F.2d 1113 (9th Cir. 1980)   . . . . . . . . .   107

Matheny v. Anderson
    377 F.3d 740 (7th Cir. 2004)   . . . . . . . . . .   12

Mattox v. United States
    146 U.S. 140 (1892)   . . . . . . . . . . . . . .   54

Mayes v. Gibson
    210 F.3d 1284 (10th Cir.)
    cert. denied, 531 U.S. 1020 (2000)   . . . . . . .   33

McKenzie v. Day
    57 F.3d 1461 (9th Cir 1995)   . . . . . . . . . .   113

Meachum v. Fano
    427 U.S. 215 (1976)   . . . . . . . . . . . . . .   51

Miller-El v. Dretke
    545 U.S. 231 (2005)   . . . . . . . . . . . . . .   10

Monge v. California
    524 U.S. 721 (1998)   . . . . . . . . . . . . .   89, 90

Monroe v. Angelone
    323 F.3d 286 (4th Cir. 2003)   . . . . . . . . . .   12

Morales v. Gonzales
    472 F.3d 689 (9th Cir. 2007)   . . . . . . . . . .   26

Morrissey v. Brewer
    408 U.S. 471 (1982)   . . . . . . . . . . . . . .   51

Murray's Lessee v. Hoboken Land and Improvement Co.
    59 U.S. (18 How) 272 (1855)   . . . . . . . . . .   88

-vii-

1

**Table of Authorities**
(continued)

2

3

Nunes v. Mueller
    350 F.3d 1045 (9th Cir. 2003)  . . . . . . . . .  14

Ohio Adult Parole Authority v. Woodward
    523 U.S. 272 (1998)  . . . . . . . . . . . . .  106

Parker v. Dugger
    498 U.S. 308 (1991)  . . . . . . . . . . . . .  65

Penry v. Lynaugh
    492 U.S. 302 (1989)  . . . . . . .  28, 33, 65, 66

Perry v. Sindermann
    408 U.S. 593 (1972)  . . . . . . . . . . . . .  51

Remmer v. United States
    347 U.S. 227 (1954)  . . . . . . . . . . . . .  54

Reynoso v. Giurbino
    462 F.3d 1099 (9th Cir. 2006)  . . . . . . . .  13

Ring v. Arizona
    536 U.S. 584 (2002)  . . . . . . . . . . .  67, 89

Rossum v. Patrick
    659 F.3d 722 (9th Cir. 2011)  . . . . . . . . .  19

Satterwhite v. Texas
    486 U.S. 253 (1988)  . . . . . . . . . . . . .  90

Schad v. Arizona
    501 U.S. 624 (1991)  . . . . . . . . . . . .  85-87

Schiro v. Farley
    510 U.S. 222 (1994)  . . . . . . . . . . . . .  46

Schriro v. Landrigan
    550 U.S. 465 (2007)  . . . . . . . . . . . . .  19

Sealfon v. United States
    332 U.S. 575 (1948)  . . . . . . . . . . . . .  48

Shafer v. South Carolina
    532 U.S. 36 (2001)  . . . . . . . . . .  58, 76, 77

Silva v. Woodford
    279 F.3d 825 (9th Cir. 2002)  . . . . . . . . .  11

-viii-

**Table of Authorities**
(continued)

Simmons v. South Carolina
     512 U.S. 154 (1994)   . . . . . . . . . . . . . .   76

Snyder v. Massachusetts
     291 U.S. 97 (1934)   . . . . . . . . . . . . . .   87

Speiser v. Randall
     357 U.S. 513 (1958)   . . . . . . . . . . . . .   87

Stankewitz v. Woodford
     365 F.3d 706 (9th Cir. 2004)   . . . . . . . . .   11

Strickland v. Washington
     466 U.S. 668 (1984)   . . . . . . . . . . . . .   9, 89

Stringer v. Black
     503 U.S. 222 (1992)   . . . . . . . . . . . . .   75

Sullivan v. Louisiana
     508 U.S. 275 (1993)   . . . . . . . . . . . .   74, 90

Taylor v. Maddox
     366 F.3d 992 (9th Cir. 2004)   . . . . . .   10, 14, 22

Teague v. Lane
     489 U.S. 288 (1989)   . . . . . . . . . . . .   28, 29

Trop v. Dulles
     356 U.S. 86 (1958)   . . . . . . . . . . . . .   112

Tuilaepa v. California
     512 U.S. 967 (1994)   . . . . . . . . . .   63, 64, 79

United States v. Bailin
     977 F.2d 270 (7th Cir. 1992)   . . . . . . .   46, 47

United States v. Gaudin
     515 U.S. 506 (1995)   . . . . . . . . . . . . .   90

United States v. Henley
     238 F.3d 1111 (9th Cir. 2001)   . . . . . . . .   56

United States v. Smith
     26 F.3d 739 (7th Cir. 1993)   . . . . . . . . .   57

Valdez v. Cockrell
     274 F.3d 941 (5th Cir. 2001)   . . . . . . . . .   12

-ix-

**Table of Authorities**
**(continued)**

Van Tran v. Lindsey
    212 F.3d 1143, 1150 (9th Cir.)
    cert. denied, 531 U.S. 944 (2000)
    overruled in part on other grounds
    Lockyer v. Andrade, 538 U.S. 63 (2003) . . .  4-6, 8

Wade v. Terhune
    202 F.3d 1190 (9th Cir. 2000)  . . . . . . . . .  54

Wallace v. Stewart
    184 F.3d 1112 (9th Cir. 1999)  . . . . . . . . .  33

Walton v. Arizona
    497 U.S. 639 (1990)  . . . . . . . . . . . . .  67

Weaver v. Thompson
    197 F.3d 359 (9th Cir. 1999)  . . . . . . . . .  15

Wellons v. Hall
    558 U.S. 220 (2010)  . . . . . . . . . . . .  19, 20

Wiggins v. Smith
    539 U.S. 510 (2003)  . . . . . . . . . . . . .  14

Williams v. Coyle
    260 F.3d 684 (6th Cir. 2001) . . . . . . . . . .  12

Williams v. Taylor
    529 U.S. 362 (2000)  . . . . . . . . 4-6, 17, 19, 78

Woodford v. Visciotti
    537 U.S. 19 (2002) . . . . . . . . . . . . . .  21

Zant v. Stephens
    462 U.S. 862 (1983)  . . . . . . . . . . . .  65, 67

1

**Table of Authorities**
(continued)

2

3  **California Cases**

4

5  In re Hitchings
        6 Cal.4th 97 (1993)  . . . . . . . . . . . . . .   55

6

   In re Malone
7        12 Cal.4th 935 (1996)  . . . . . . . . . . . .  101

8  In re Waltreus
        62 Cal.2d 218 (1965)  . . . . . . . . . . . . .   59
9
   People v.  Quartermain
10       16 Cal.4th 600 (1997)  . . . . . . . . . . . .   93

11 People v. Avalos
        37 Cal.3d 216 (1984)  . . . . . . . . . . . . .   75
12
   People v. Belmontes
13       45 Cal.3d 744 (1988)  . . . . . . . . . . . . .   94

14 People v. Bolin
        18 Cal.4th 297 (1998)  . . . . . . . . . . . .   87
15
   People v. Boyd
16       38 Cal.3d 762 (1985)  . . . . . . . . . . . . .   92

17 People v. Brown
        40 Cal.3d 512 (1985)  . . . . . . . . . . . . .   73
18
   People v. Cardenas
19       31 Cal.3d 897 (1982)  . . . . . . . . . . . . .   97

20 People v. Clair
        2 Cal.4th 629 (1992)  . . . . . . . . . . . . .   93
21
   People v. Cooper
22       53 Cal.3d 771 (1991)  . . . . . . . . . . . . .   74

23 People v. Davenport
        41 Cal.3d 247 (1985)  . . . . . . . . . . . . .   65
24
   People v. Gonzalez
25       51 Cal.3d 1179 (1990)
        cert. denied, 502 U.S. 835 (1991)  . . . . . .  102
26
   People v. Grant
27       45 Cal.3d 829 (1988)  . . . . . . . . . . . .  74, 93

28
                                -xi-

1

**Table of Authorities**
(continued)

2

3

People v. Hamilton
    48 Cal.3d 1142 (1989)  . . . . . . . . . . . .   65

People v. Hayes
    52 Cal.3d 577 (1990)  . . . . . . . . . . . .   74

People v. Hernandez
    47 Cal.3d 315 (1988)  . . . . . . . . . . . .   75

People v. Hines
    15 Cal.4th 997 (1997)  . . . . . . . . . . . .   93

People v. Honeycutt
    20 Cal.3d 150 (1977)  . . . . . . . . . . . .  101

People v. Hughes
    27 Cal.4th 287 (2002)  . . . . . . . . . . . .   93

People v. Jackson
    13 Cal.4th 1164 (1996)  . . . . . . . . . . .   93

People v. Jennings
    53 Cal.3d 334 (1991)  . . . . . . . . . .  50, 51

People v. Jones
    17 Cal.4th 279 (1998)  . . . . . . . . . . . .   54

People v. Karis
    46 Cal.3d 612 (1988)  . . . . . . . . . . . .  101

People v. Mayberry
    15 Cal.3d 143 (1975)  . . . . . . . . . . . .   76

People v. McElheny
    137 Cal.App.3d 396 (1982)  . . . . . . . . . .   75

People v. Michaels
    28 Cal.4th 486 (2002)  . . . . . . . . . .  91, 94

People v. Mickey
    54 Cal.3d 612 (1991)
    cert. denied, 506 U.S. 819 (1992)  . . . . . .  102

People v. Ramirez
    50 Cal.3d 1158 (1990)  . . . . . . . . . . . .   93

People v. Ramos
    15 Cal.4th 1133 (1997)  . . . . . . . . . . .   93

-xii-

1

**Table of Authorities**
(continued)

2

3

People v. Reynolds
    205 Cal.App.3d 775 (1988)  . . . . . . . . . .  76

People v. Robertson
    33 Cal.3d 21 (1982)  . . . . . . . . . . . .  50

People v. Rucker
    26 Cal.3d 368 (1980)  . . . . . . . . . . .  97

People v. Sanders
    51 Cal.3d 471 (1990)  . . . . . . . . . . .  66

People v. Sheldon
    48 Cal.3d 935 (1989)  . . . . . . . . . . .  50

People v. Smithey
    20 Cal.4th 936 (1999)  . . . . . . . . . . .  93

People v. Taylor
    52 Cal.3d 719 (1990)  . . . . . . . . . . .  87

People v. Vacca
    38 Cal.App.4th 804 (1995)  . . . . . . . . . .  66

People v. Von Villas
    11 Cal.App.4th 175 (1992),
    cert. den. 510 U.S. 838 (1993)  . . . . . . . .  55

People v. Williams
    16 Cal.4th 153 (1997)  . . . . . . . . . . .  93

People v. Woodard
    23 Cal.3d 329 (1979)  . . . . . . . . . . .  97

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Table of Authorities**
**(continued)**

**Other Provisions**

U.S. Constitution Fifth Amend.  .  .  .  .  .  .  .    45 et seq.

U.S. Constitution Seventh Amend.  .  .  .  .  .    56 et seq.

U.S. Constitution Eighth Amend. .  .  .  .  .  .    46 et seq.

U.S. Constitution Fourteenth Amend.   .  .  .  .    45 et seq.


28 U.S.C. § 2254  .  .  .  .  .  .  .  .  .  .  .  .  .  .    3 et seq.

28 U.S.C. §§ 2261-2266  .  .  .  .  .  .  .  .  .  .  .  .  .    4

Rule 2 Rules Governing § 2254 Cases .  .  .  .  .  .  .  .  .    2

Rule 5 Rules Governing § 2254 Cases .  .  .  .  .  .  .  .  .    2

Rule 7 Rules Governing § 2254 Cases .  .  .  .  .  .  .  .    18


Rule 606(b)(2) of Fed. Rules of Evid.  .  .  .  .  .  .  .    56


18 Charles A. Wright, et al., (1981)
    Federal Practice & Procedure § 4418  .  .  .  .  .  .    46

Bowers, Research on the Death Penalty: Research
    Note (1993) 27 Law & Society Rev. 157  .  .  .  .  .    76

Cal. Const., art. I, § 7 .  .  .  .  .  .  .  .  .  .  .  .    64

Cal. Const., art. I, § 15 .  .  .  .  .  .  .  .  .  .  .  .    64

California Evid. Code § 1150  .  .  .  .  .  .  .  .  .  .    54-57

California Evid. Code § 1200  .  .  .  .  .  .  .  .  .  .    55

California Gov't Code § 11342(g)  .  .  .  .  .  .  .    107, 112

California Penal Code § 187 .  .  .  .  .  .  .  .  .  .  .    43

1

**Table of Authorities**
**(continued)**

2

3   California Penal Code § 190.2(b)  . . . . . . . . . .    93

4   California Penal Code § 190.3

5        . . . . . . . . . . . 46, 49-51, 60, 72, 73, 91, 92

6   California Penal Code § 190.9(a)(1) . . . . . . . . .    52

7   California Penal Code § 664 . . . . . . . . . . . .    43

8   California Penal Code § 3604(a) . . . . . . . .   105, 106

9   CALJIC 8.20 . . . . . . . . . . . . . . . . . .   42, 43

10  CALJIC 8.67 . . . . . . . . . . . . . . . . . . . .    43

11  CALJIC 8.85 . . . . . . . . . .   40, 60, 63, 66, 67, 69

12  CALJIC 8.87 . . . . . . . . . . . . . . . . . . . .    82

13  CALJIC 8.88 . . . . . . . . . . .   70, 71, 73, 74, 99

14

15  Webster's New World Dictionary (3d College ed. 1989)    73

16

17

18

19

20

21

22

23

24

25

26

27

28

1  PHILLIP A. TREVIÑO [SBN 121119]
   137 N. Larchmont Blvd., #801
2  Los Angeles, California 90004
   Telephone: (213) 949-8000
3
   Attorney for Petitioner
4  ERNEST DYKES

5
                UNITED STATES DISTRICT COURT
6
           FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
   ERNEST DYKES,              )      Case No. 11-CV-04454-SI
8                             )
            Petitioner,       )      PARTIAL TRAVERSE TO
9                             )      RESPONDENT'S ANSWER TO
              v.              )      PETITION FOR WRIT OF HABEAS
10                            )      CORPUS
   K. CHAPPELL, Warden,       )
11                            )
            Respondent.       )      DEATH PENALTY CASE
12 _____)

13      Consistent with this Honorable Court's scheduling

14 orders, Petitioner herewith submits his partial traverse

15 to Respondent's answer to the petition for a writ of

16 habeas corpus.

17      This is a partial traverse in reliance upon this

18 Court's order of December 16, 2016, which order stayed

19 Claim one of this matter pending a final resolution of

20 Claim Seven in Ashmus v. Chappell, C-93-594-TEH (N.D.

21 Cal. 1993).[1]

22                              Respectfully submitted,

23

24 Dated: June 5, 2017        s/Phillip A. Treviño

25 _____

26     [1]  This necessarily means that Claim 8, which seeks
   relief based upon the cumulative effect of all of the errors
27 that occurred during Petitioner's trial, must also be
   deferred pending resolution of Claim 1.  To the extent that
28 an order from this Court may be required for this relief,
   it is respectfully so moved.

1

2

**TRAVERSE TO RESPONDENT'S ANSWER TO
PETITION FOR WRIT OF HABEAS CORPUS**

3      Comes Petitioner, Ernest Dykes, by and through his

4  counsel and, by way of this Traverse pursuant to Rule 5 of

5  the Rules Governing Section 2254 Cases and denial of the

6  Answer to the Petition for a Writ of Habeas Corpus,

7  Memorandum of Points and Authorities in Support of Answer

8  to Petition for Writ of Habeas Corpus, denies each and every

9  allegation contained in the answer unless otherwise

10 specifically stated herein.

11

12 **General Denial**

13      Petitioner denies each and every allegation and

14 argument set forth in Respondent's Answer, and denies and

15 controverts any further such allegations as may be made in

16 the Answer by reference or inference, unless an express

17 admission is made herein.

18

19 **Jurisdiction**

20      Petitioner has set forth the jurisdictional allegations

21 and the claims in the Petition. See Rule 2 of the Rules

22 Governing Section 2254 Cases.

23

24 **Initial Allegations**

25      Petitioner admits he was convicted in Alameda County

26 Superior Court on August 2, 1995, and sentenced to death.

27 His automatic direct appeal to the California Supreme Court

28

was denied on June 15, 2009.  He filed a petition for a writ of habeas corpus with the California Supreme Court, and it was denied on August 31, 2011.

Petitioner admits accordingly that he is in the custody of Respondent pursuant to the sentence and judgment of death imposed by the Superior Court of Alameda County of California.  Petitioner specifically denies, however, that said sentence and the ensuing judgment are lawful.

**Exhaustion of State Remedies**

Petitioner alleges that each and every claim in the Petition is exhausted, that no claim should be barred under the adequate and independent state ground doctrine, and that 28 U.S.C. § 2254(d) does not bar relief.

Respondent has agreed that "most of" Petitioner's pending have been exhausted.  He notes, however, that in certain instances he believes some of the claims were not "fully and fairly" presented to the California Supreme Court on the merits. Answer, at 2. He has elected to waive exhaustion, however, on those claims.  Id.

Petitioner disagrees that any of his claims have any exhaustion deficiencies whatsoever.  However, it matters not, since Respondent has now affirmatively and permanently waived exhaustion by his answer.  28 U.S.C. § 2254(b)(1)(B)(ii)(3).

Page -3-

**Application of "AEDPA" to this Matter**

Petitioner agrees that portions of the 1996 Anti-Terrorism and Effective Death Penalty Act ("AEDPA") revising the habeas corpus statutes apply to this case. However, the Chapter 154 provisions -- 28 U.S.C. §§ 2261-2266 -- do not apply to this case. See Ashmus v. Woodford, 202 F.3d 1160 (9th Cir. 2000).

Respondent sees AEDPA as all but universally precluding a federal court from granting state inmates federal habeas relief.  Petitioner disagrees, seeing AEDPA as providing guidance to the federal courts, but not an insurmountable barrier to the federal courts' ability to correct unlawful injustice while sitting in habeas.  Under AEDPA, federal courts may still properly grant habeas relief where the state proceedings:

> "  (1) resulted in a decision that was contrary to, or involved an unreasonable interpretation of, clearly established Federal law, as determined by the Supreme Court of the United States;
>
>       or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."

28 U.S.C. § 2254(d) (emphasis added). The statute thus provides three equally viable but alternative paths to federal habeas relief.  See e.g., Williams v. Taylor, 529 U.S. 362 (2000); Van Tran v. Lindsey, 212 F.3d 1143, 1150

(9th Cir.), <u>cert</u>. <u>denied</u>, 531 U.S. 944 (2000), <u>overruled in part on other grounds</u>, <u>Lockyer v. Andrade</u>, 538 U.S. 63 (2003).

(1)  <u>The "contrary to" path to relief</u>

The "contrary to" path is available when "the state court arrives at a conclusion opposite that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] on a set of materially indistinguishable facts." <u>Williams</u>, at 412 (emphasis added). A state court decision that is "contrary to" federal law may properly be overturned on habeas review no matter how "reasonable" it may appear.

(2)  <u>The "unreasonable application" path to relief</u>

Most frequently used, this is perhaps the most developed provision of the statute under the case law. The "unreasonable application" requirement is met if the state court "identifies the correct governing legal principle from the [U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the [particular] prisoner's case." <u>Williams</u>, at 407-12; <u>Van Tran</u>, 212 F.3d at 1150. This inquiry requires the federal court "to ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, at 408-09 (emphasis added).

AEDPA has not replaced federal courts' vigilant protection of federal constitutional rights with an approach that is so "deferential" that it discourages the granting of

relief. In Van Tran for example, the Ninth Circuit began by further interpreting the Supreme Court's terse description of what an "unreasonable application" of federal law is:

> A state court's decision can involve an "unreasonable application" of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.

Van Tran, 212 F.3d at 1150 (citing Williams at 408) (emphasis added). As to the meaning of "objectively unreasonable," while some deference to the state court decision is usually (but not always) given by federal habeas courts, the Ninth Circuit explained that the Supreme Court had adopted the least deferential of the standards applied by Circuit courts in order to espouse the most robust habeas review.'" Id. at 1151. Indeed, in Williams itself, the Supreme Court reversed the habeas petitioner's conviction, holding that the Virginia Supreme Court's application of federal law regarding ineffective assistance of counsel was both "contrary to clearly established federal law" and "an unreasonable application of such law," Id. at 1515.

Moreover, while it is Supreme Court precedent that sets the standard, this Court still may and should look to Ninth Circuit authority to determine whether Petitioner is

entitled to relief:

> This does not mean that Ninth Circuit case law is never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an "unreasonable application" of Supreme Court law, and also may help us determine what law is "clearly established." See MacFarlane v. Walter, 179 F.3d 1131, 1139 (9th Cir. 1999) (looking to Ninth Circuit case law to confirm that Supreme Court case clearly establishes a legal rule). . . .

Duhaime v. Ducharme, 200 F.3d 597, 600-601 (9th Cir. 1999) (emphasis added).

The Ninth Circuit has also noted that, at least where Ninth Circuit precedent does not constitute a "new rule" and create a "substantial extension" of Supreme Court law, Ninth Circuit cases can still be persuasive in determining whether the "force and logic" of a Supreme Court rule should apply in cases where the facts differ from those in the Supreme Court case that established the applicable law. Id. at 602.

Subsequent cases have reaffirmed that Circuit precedent is "persuasive authority" to help determine both whether a particular state court decision is an "unreasonable application" of Supreme Court law, and what law is "clearly established," and that lower court opinions in factually similar cases are also helpful in determining the

reasonableness of a state court decision. See e.g. Van Tran, 212 F.3d at 1154; LaJoie v. Thompson, 217 F.3d 663, 669 n. 6 (9th Cir. 2000). This is partly because the Ninth Circuit had previously held that "the Supreme Court need not have addressed the identical factual circumstances at issue in a case in order for it to have created 'clearly established' law governing that case." Id. at 1154. In other words, habeas relief may be granted even if the state court addressed a question not previously addressed by the Supreme Court or any lower federal courts, and even if the state case was factually different from any case decided by the Supreme Court. Van Tran, 212 F.3d at 1154 & n.16.

Finally, the Ninth Circuit has indicated that federal habeas courts should determine what the law was first, so they could determine whether the state court decision was erroneous and only then, on the basis of their answer, decide whether the state court decision was "unreasonable." Id. at 1155. This allows federal courts to create a body of law to guide state courts trying to interpret federal constitutional rights. Id. at 1155. While this order of analysis is not the only acceptable methodology, Williams, 538 U.S. at 71, it is the one that the Ninth Circuit has adopted, and it is the one which makes the most sense. It is simply too difficult in most circumstances to determine whether a state court's ruling is contrary to, or an unreasonable interpretation or application of federal law, without first knowing what that federal law is.

One more point is in order. At page 8 of the Answer, Respondent argues that the federal courts must determine what arguments or theories supported or could have supported the state court's decision and uphold it if it does not meet the AEDPA standards, citing to Harrington v. Richter, 562 U.S. 86 (2011). Respondent is misguided on this point as concerns a great many of the claims advanced here. In Richter, the Ninth Circuit had applied a de novo review standard to a Section 2254 habeas case where the state court had not provided any explanation for its denial of the claim, and held, without explanation, that the state court's unexplained decision was an unreasonable application of the Strickland v. Washington, 466 U.S. 668 (1984), standard on ineffective assistance of counsel. The Supreme Court reversed, declaring that in such situations, a habeas court must determine what arguments or theories supported, or could have supported, the state court's decision, and then ask whether it is possible fair minded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior Supreme Court decision.

Here, in contrast, as to certain claims presented to this Court the state supreme court stated the arguments and theories of its decisions in great detail. Thus, Harrington is inapplicable to the case at bar, and Respondent is mistaken when he argues that this Court should start from a clean slate and determine what arguments or theories could have supported the state court's decision. Where, as here,

the state court explained its decision, no such speculation is necessary or appropriate.

> "[S]ection 2254(d)(2) authorizes federal courts to grant habeas relief in cases where the state-court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir. 2004) (internal quotation marks omitted).

Although this standard is demanding, it is '"not insatiable."' Kesser v. Cambra, 465 F.3d 351, 358 (9th Cir. 2006) (en banc) (quoting Miller-El v. Dretke, 545 U.S. 231, 240, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005)) (granting relief under section 2254(d)(2)). In Taylor, the Ninth Circuit enumerated some of the "several flavors" of arguments available under section 2254(d)(2). Taylor, 366 F.3d at 1000. For example, a § 2254(d)(2) challenge may be based on the claim that "the state court has before it, yet apparently ignores, evidence that supports petitioner's claim"; that "the state courts plainly misapprehend[ed] or misstate[d] the record in making their findings"; that the "factual findings [are] infected by substantive legal error"; or that "that the process employed by the state court is defective." Id. at 999-1001.

"In a capital case, a habeas petitioner who asserts a colorable claim to relief, and who has never been given the opportunity to develop a factual record on that claim, is

entitled to an evidentiary hearing in federal court."
Stankewitz v. Woodford, 365 F.3d 706, 725 (9th Cir. 2004)
(internal quotation marks omitted); see also Silva v.
Woodford, 279 F.3d 825, 853 (9th Cir. 2002) ("[A] habeas
petitioner is entitled to an evidentiary hearing as a matter
of right on a claim where the facts are disputed if two
conditions are met: (1) the petitioner's allegations would,
if proved, entitle him to relief; and (2) the state court
trier of fact has not, after a full and fair hearing,
reliably found the relevant facts." (internal quotation
marks omitted)).

 (3) The third path to relief, no state court
   evidentiary hearing

 Further, when, as in Petitioner's case, the state court
failed to hold an evidentiary hearing on a colorable claim
that the petitioner sought to present, the state court
determination of the facts is unreasonable under section
2254(d)(2). See Earp v. Ornoski, 431 F.3d 1158, 1173 (9th
Cir. 2005) ("Although he presented his claim to the state
court, Earp never received an evidentiary hearing. Because
an evidentiary hearing is needed in order to resolve these
factual allegations, we hold that the state court's decision
was based on an unreasonable determination of the facts.").

 In Richter, the Supreme Court stated that AEDPA applies
to post-AEDPA denials "without an accompanying statement of
reasons," i.e., a summary denial. Richter, 562 at 91. That
was already the law in the Ninth Circuit. Under Ninth

Circuit law, a claim is "adjudicated on the merits" when the state court denies the claim on substantive rather than procedural grounds, even when the claim is summarily denied without an opinion or an evidentiary hearing. <u>Lambert v. Blodgett,</u> 393 F.3d 943, 966-69 (9th Cir. 2004); <u>Luna v. Cambra,</u> 306 F.3d 954, 960 (9th Cir. 2003).

In <u>Holland v. Jackson</u>, 542 U.S. 649, 124 S. Ct. 2736, 2738, 159 L. Ed. 2d 683 (2004) (per curiam), the Supreme Court recognized that "[w]here new evidence is admitted [in the federal habeas court], some Courts of Appeals have conducted de novo review [rather than apply the §§ 2254(d)(1) and (2) standards] on the theory that there is no relevant state-court determination to which one could defer." <u>See e.g.</u> <u>Monroe v. Angelone</u>, 323 F.3d 286, 297-99 & n.19 (4th Cir. 2003); <u>Cargle v. Mullin</u>, 317 F.3d 1196, 1206 (10th Cir. 2003); <u>Williams v. Coyle</u>, 260 F.3d 684, 706 (6th Cir. 2001); <u>but see</u> <u>Matheny v. Anderson</u>, 377 F.3d 740, 747 (7th Cir. 2004); <u>Valdez v. Cockrell</u>, 274 F.3d 941, 946-47, 951-52 (5th Cir. 2001); <u>see also</u> <u>LeCroy v. Secretary, Florida Dep't of Corrections</u>, 421 F.3d 1237, 1262-63 & n.30 (11th Cir. 2005) (collecting cases). This rule makes sense: "the new, relevant evidence was never before the state court so it never considered the impact of the evidence when denying relief, and there is arguably nothing to defer to." <u>LeCroy</u>, 421 F.3d at 1263 n.30.

In <u>Killian v. Poole</u>, 282 F.3d 1204, 1207 (9th Cir. 2002), <u>cert</u>. <u>denied</u>, 537 U.S. 1179 (2003), the Ninth Circuit

concluded that "[f]or claims for which no adjudication on the merits in state court was possible . . . AEDPA's standard of review does not apply." The court explained:

> "AEPDA deference does not apply to Killian's perjury claim in this case because the state courts could not have made a proper determination on the merits. Evidence of the perjury, after all, was adduced only at the hearing before the magistrate judge."

Killian, at 1207.

Other Ninth Circuit cases, however, have applied the constraints imposed by § 2254(d) to ineffective assistance claims based on evidence presented for the first time in federal habeas, albeit with important limitations, as discussed below. See e.g. Reynoso v. Giurbino, 462 F.3d 1099 (9th Cir. 2006). Ninth Circuit cases consistently hold that less deference to state court decisions is warranted where, as here on many claims, the state court summarily denies the petitioner's habeas claims without an opinion or an evidentiary hearing. First, because there is no reasoned state court decision to assess, this Court must conduct an independent review of the record to determine if the state court decision was objectively unreasonable. Reynoso, 462 F.3d at 1119; Brown v. Palmateer, 379 F.3d 1089, 1092-93 (9th Cir. 2004) ("Because the Oregon courts have provided no ratio decidendi to review, or to which we can give deference, we employ the 'objectively reasonable' test. In

this situation, federal habeas courts accord the state court decisions less deference than in standard habeas cases"); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003) (similar).[2]

Second, because the state courts made no findings of fact, or held a hearing, on Petitioner's non-record based claims, there are no factual determinations for this Court to defer to, or for § 2254(e)(1)'s presumption of correctness to apply to. Taylor v. Maddox, 366 F.3d 992, 1014 (9th Cir. 2004) ("It is well-established that when the state courts do not make findings at all, no presumption of correctness attaches, and we must make our own findings") (citing Wiggins v. Smith, 539 U.S. 510, 123 S. Ct. 2527, 2540, 156 L. Ed. 2d 471 (2003)); Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003) ("with the state court having refused Nunes an evidentiary hearing, we need not of course defer to the state court's factual findings – if that is indeed how those stated findings should be characterized – when they were made without such a hearing"); Killian, 282 F.3d at 1208 (similar); Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002) ("When we are confronted with a state court's 'postcard denial,' such as the one issued by the California Supreme Court in this case, we have nothing to

---

[2]    Richter did not overturn the Ninth Circuit's independent review approach. Richter merely made clear that, under AEDPA, courts must accord deference to state court decisions. Richter, 131 S. Ct. at 78-81. The Ninth Circuit's independent review approach does duly accord deference to state courts.

which we can defer."); <u>Weaver v. Thompson</u>, 197 F.3d 359, 363 (9th Cir. 1999) (presumption of correctness inapplicable when "at no time during the state proceedings in this case was an evidentiary hearing ever held on Weaver's claim of tainted deliberations").

As to each and every claim for relief in the petition, Petitioner realleges that the claim meets the standards for relief under AEDPA. For those claims on which he may not be entitled to relief based solely on the record presently before this Court, because he did not receive a hearing in state court AEDPA does not limit his right to an evidentiary hearing in federal court so long as the lack of a hearing in state court was not due to his failure.

In <u>Williams</u>, 529 U.S. at 430, the Supreme Court explained that [b]y the terms of its opening clause the statute applies only to prisoners who have 'failed to develop the factual basis of a claim in State court proceedings."' The Court held that a "failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." <u>Id</u>. at 432. Thus, "[i]f there has been no lack of diligence at the relevant stages in the state proceedings, the prisoner has not 'failed to develop' the facts under 2254( e)(2)'s opening clause, and he will be excused from showing compliance with the balance of the subsection's requirements." <u>Id</u>.; <u>see also</u> <u>Horton v. Mayle</u>, 408 F.3d 570, 582 n.6 (9th Cir. 2005)

(explaining that California appellate courts decide whether to grant an evidentiary hearing only after the parties file formal pleadings, the filing of which is subject to the discretion of the California Supreme Court, and that if the California Supreme Court summarily denies a habeas petition without ordering formal pleadings-as it did in Petitioner's case - the petitioner never reaches the stage at which a hearing should be requested and thus cannot be said to have shown any lack of diligence).    Petitioner herein did not receive a hearing on his claims in state court solely because California procedures never allowed him to receive one.    This is no failing of his.    He is entitled to a hearing in this Court just as he was prior to the enactment of AEDPA.

In short, this Court is not a rubber stamp for any reasonable-sounding but erroneous ruling state officials may make.    This Court has the right, duty, power and constitutional authority to exercise its own judgment as to the meaning of federal law, and to determine whether it has been misapplied in a contrary way or interpreted or applied in an unreasonable way by the state courts, and to grant habeas relief if the state courts erred in their interpretation and protection of Petitioner's federal constitutional rights.

**Cullen v. Pinholster, 563 U.S. 170 (2011)**

While it is too early to delve deeply into the impact of Pinholster as to each and every claim, Petitioner

considers it appropriate to respond at least to Respondent's sweeping assertion that presentation of any new facts developed during these proceedings will risk converting otherwise exhausted claims into unexhausted claims, or may otherwise be barred from consideration by this Court. (Answer, at 2)

First, while Respondent fails to see it, the federal courts note there are still many important and difficult unanswered questions regarding the application of Pinholster.

Under the 1996 version of 28 U.S.C. § 2254(d), a petitioner had to show that the state court's decision on a post-conviction claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2). Harrington v. Richter, 131 S.Ct. 770, 785 (2011); Williams v. Taylor, 529 U.S. 362, 412 (2000).

In Cullen v. Pinholster, the Supreme Court concluded that, in addressing the proper approach to § 2254(d)(1) in a habeas case, "review . . . is limited to the record that was before the state court that adjudicated the claim on the merits." Pinholster, at 180-81. Any evidence newly presented in federal court during an evidentiary hearing (or by any other method) is not used to assess the question of whether

the state court's decision was "contrary to" federal law or the question of whether the state court's decision was an "unreasonable application of" federal law.    Whatever its effect on habeas procedure overall, it is anticipated that the holding in <u>Cullen v. Pinholster</u> and its application here will be narrow indeed.

In <u>Pinholster</u>, the Supreme Court clarified that: "[t]oday, we . . . hold that evidence introduced in federal court has no bearing on § 2254(d)(1) review." <u>Pinholster</u>, at 185. Thus, in conducting a § 2254(d)(1) analysis, a federal court is limited to an assessment of the factual record presented to the state court.    But federal courts still evaluate habeas petitions beyond just the framework of § 2254(d)(1).

Through evidentiary hearings, and the presentation of evidence through other means, such as Rule 7 of the Rules Governing § 2254 Cases, federal courts may still properly receive and assess additional evidence during habeas proceedings.

Not surprisingly, <u>Cullen v. Pinholster</u> itself recognizes that "state prisoners may sometimes submit new evidence in federal court." <u>Id</u>. at 186.    For example, evidentiary hearings are available to petitioners whose claims were not "adjudicated on the merits" in state court or are outside the scope of § 2254(d). <u>Id</u>. Justice Breyer's concurrence makes a similar point. <u>Id</u>. at 205.

"<u>Pinholster</u> simply "narrowed the circumstances under

which a federal court can order an evidentiary hearing," but it is important to remember it still allows factual development in federal court in the appropriate cases within "those narrow circumstances." Rossum v. Patrick, 659 F.3d 722, 736 (9th Cir. 2011)(dis. opn. of Gertner)("Pinholster did not hold that AEPDA bars a federal habeas court from ever holding an evidentiary hearing.")

Indeed, even a failure to satisfy § 2254(d) does not necessarily preclude an evidentiary hearing. Williams v. Taylor, 529 U.S. 420, 434 (2000), suggests that petitioners should be allowed to present evidence if they meet the criteria of § 2254(e)(2) regardless of the § 2254(d) analysis. A similar sentiment was advanced in Schriro v. Landrigan, 550 U.S. 465, 472-474 (2007), where the Court noted that the "basic rule" that "the decision to grant an evidentiary hearing was generally left to the sound discretion of the district courts . . . has not changed" as long as the other provisions of § 2254 are taken "into account." Thus: "[w]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." Bracy v. Gramley, 520 U.S. 899, 908-09(1997)(internal quotation marks omitted).

In Wellons v. Hall, 558 U.S. 220 (2010), recognizing the ongoing importance of factual development during federal

habeas proceedings, the Supreme Court noted as follows:

    Indeed, it would be bizarre if a federal court had to defer to state-court factual findings, made without any evidentiary record, in order to decide whether it could create an evidentiary record to decide whether the factual findings were erroneous. . . . AEDPA does not require such a crabbed and illogical approach to habeas procedures . . .

Wellons, 558 U.S. at 223 n.3.

As for whether 2254(d) issues should be resolved before an evidentiary hearing is held, Cullen v. Pinholster specifically withholds comment. It suffices now to note that it remains true, as recited in Lockyer v. Andrade, 538 U.S. 63, 71 (2003), that "AEDPA does not require a federal habeas court to adopt any one methodology" in applying § 2254(d). In the Ninth Circuit, then, the inquiry into whether an evidentiary hearing should be granted in a post-AEDPA habeas case should still follow the general approach suggested in opinions like Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999) and Insyxiengmay v. Morgan, 403 F.3d 657, 669-670 (9th Cir. 2005).

**Constitutional Deprivations and Merits of Habeas Corpus claims**

Contrary to Respondent's assertions in the Answer, each of the claims presented in the Petition states a factual and legal basis for relief in federal habeas corpus.

Petitioner's sentence of death is illegal and in contravention of the rights guaranteed to him by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution. Answer, 9-10.

It appears Respondent reads Woodford v. Visciotti, 537 U.S. 19, 25 (2002), Harrington v. Richter, 562 U.S. 86, 102 (2011), and Cullen v. Pinholster, 563 U.S. 170 (2011), as requiring a habeas petitioner to bear some unique pleading burden of establishing entitlement to relief. Answer, at 9. This is a rather unremarkable premise, as indeed such a pleading burden is placed on all plaintiffs and or petitioners in civil litigation. The twist may be that Respondent's view seems to border on an argument that Petitioner must be able to demonstrate that entitlement at the outset of the litigation. In the same way it would be illogical for any other civil litigant to have to shoulder such a burden, so too is this clearly illogical in habeas matters. Indeed, it suffices to note that such a framework would render all of the rest of the Rules Governing Habeas Cases irrelevant. If this is Respondent's position, Petitioner expressly rejects it.

Respondent then moves on, however, and seems to suggest that Pinholster requires all habeas petitioners expressly and generally to limit the allegations and claims they present in federal court to such claims and evidence as was before the state court, and expressly disallowing any "new or additional" evidence that may be submitted in the federal

proceedings.    Answer, at 9.    This truncated analysis is simply mistaken.

Respondent does at least acknowledge, however, that exceptions do exist under 28 U.S.C. § 2254(d).    Id.    Indeed, clearly exceptions do exist, and Petitioner here falls squarely outside the prohibitions delineated by Pinholster. Petitioner had no evidentiary hearing in the state court, not due to any failure of his but rather due solely to the procedural strictures imposed by the California Supreme Court.    For this reason, Pinholster is simply inapposite here.

It seems also that Respondent sees in Pinholster, Williams v. Taylor, 529 U.S. 362, 405-12 (2000), and Bell v. Cone, 535 U.S. 685, 694 (2002), authority for the premise that a petitioner must cite the specific Supreme Court precedent that entitles him to relief or the petitioner's claims must fail.    It seems fair to read his argument as meaning a petitioner must meet these requirements in his petition or suffer denial of the claims ab initio.

"The burden to establish relief is on petitioner, and any claims decided on the merits by the state court must be viewed solely in light of the state court record.    Accordingly, petitioner must demonstrate from the outset that 28 U.S.C. § 2254(d) has been met.    Absent an exception under 28 U.S.C. § 2254(d), the 'analysis is at an end' and 'a writ of habeas corpus 'shall not be

granted.'" <u>Pinholster</u>, 131 S.Ct. at 1411 n. 20.
Answer, at 10. (emphasis added)    Respondent's reading is
not supported by the cases, and Petitioner rejects this
contention.

None of this is relevant here anyway, despite
Respondent's urging.    Petitioner had no state court habeas
evidentiary proceedings.    His claims are properly pled, and
demonstrate a prima facie entitlement to federal habeas
corpus relief.  Respondent is mistaken to contend otherwise.
Once afforded discovery and an evidentiary hearing,
Petitioner will demonstrate conclusively his entitlement to
the relief requested.

Respondent's blanket assertion that any errors alleged
by Petitioner were harmless is insufficient to meet his
burden of pleading this affirmative defense with respect to
any claim, and it is therefore waived. To the extent that
this Court might find that Respondent has not waived this
affirmative defense, the errors alleged by Petitioner in the
petition, taken singly or cumulatively, constitute
structural error or are otherwise not subject to harmless
error review. To the extent that this Court might find that
the harmless error doctrine applies to any of Petitioner's
individual claims, the errors, taken singly or cumulatively,
still had a substantial or injurious effect or influence on
Petitioner sentence, and were not harmless.

For the time being, and particularly at this
preliminary procedural juncture, it seems clear AEDPA and

the case law interpreting it is not anywhere near so preclusive as Respondent seems to believe it to be. Federal courts sitting in habeas courts remain courts of equity, and the fundamental principles of justice still apply.

**Factual Summary and State Court Findings of Fact**

Respondent's Answer contains a statement of facts section; this is just a lengthy quotation from the California Supreme Court opinion. (Answer, at 10-14.)

Respondent appears to urge this Court to construe this recital as factual findings by the state court, and seems to suggest, and possibly even believes, this federal court must accept those "facts" as the operative ones for any analysis of Petitioner's claims herein.

> "The state court's factual findings are presumptively correct. 28 U.S.C. § 2254(e)(1). We set forth in full the state supreme court's summary of the facts."

Answer, at 10.

This is a fundamentally flawed understanding of what constitutes a "factual finding" and the purpose of statement of fact recitals in appellate opinions. Further this is a misreading of the statute and the relevant law. This Court should decline Respondent's invitation to follow him down

this path.[3]

First, Section 2254(e)(1) simply does not stand for the premise that every appellate court's "statement of facts" is presumed correct, nor indeed could it possibly do so. Rather, the statute provides that "a <u>determination</u> of a factual issue made by a State court shall be presumed correct." <u>Id</u>. (emphasis added)   This refers to factual findings on disputed factual issues, not to the routine summaries of the trial court record that are part of every appellate opinion.   Respondent is simply mistaken when he suggests otherwise.   Second,  simply because a state appellate court recited a summary of certain portions of the trial court's record in its opinion does not make that

_____

[3]    Moreover, it bears remembering that the California courts made no findings of fact, or indeed even held a hearing, on Petitioner's non-record based claims.  There are no factual determinations for this Court to defer to, or to which Section 2254(e)(1)'s presumption of correctness should apply. <u>Taylor v. Maddox</u>, 366 F.3d 992, 1014 (9th Cir. 2004) ("It is well-established that when the state courts do not make findings at all, no presumption of correctness attaches, and we must make our own findings") (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 123 S. Ct. 2527, 2540, 156 L. Ed. 2d 471 (2003)); <u>Nunes v. Mueller</u>, 350 F.3d 1045, 1055 (9th Cir. 2003) ("with the state court having refused Nunes an evidentiary hearing, we need not of course defer to the state court's factual findings – if that is indeed how those stated findings should be characterized – when they were made without such a hearing"); <u>Killian</u>, 282 F.3d at 1208 (similar); <u>Luna v. Cambra</u>, 306 F.3d 954, 960 (9th Cir. 2002) ("When we are confronted with a state court's 'postcard denial,' such as the one issued by the California Supreme Court in this case, we have nothing to which we can defer."); <u>Weaver v. Thompson</u>, 197 F.3d 359, 363 (9th Cir. 1999)(presumption of correctness inapplicable when "at no time during the state proceedings in this case was an evidentiary hearing ever held on Weaver's claim of tainted deliberations").

Case 3:11-cv-04454-SI    Document 58    Filed 07/10/17    Page 42 of 134

portion of the trial court proceedings a "factual finding" and, thus, the "facts" recited in the state appellate opinion are not automatically entitled to any presumption of correctness. As will be seen, this is well-established in the case law.

The Ninth Circuit has noted that appellate courts are not triers of fact and do not ordinarily make factual findings, and that a reviewing court should not accept as "factual findings" recitations of factual matters in appellate opinions. See e.g. Morales v. Gonzales, 472 F.3d 689, 699 n. 2 (9th Cir. 2007) (stating that although an IJ "referred to the recitation of factual matters in that [state Court of Appeal's] opinion as 'the factual findings' of the Court of Appeals of Washington[,] [t]his is not actually the case"); see also Alpha Distributing Company of California, Inc., v. Jack Daniel Distillery, 454 F.2d 442 (9th Cir. 1972) ("The appellate court is not the trier of facts and does not ordinarily make findings of fact").

The California courts themselves distinguish between factual findings, which are made by trial courts, and mere recitation of certain evidence in the record by appellate courts. See e.g. Garcia v. Superior Court, 42 Cal. 4th 63, 77 (2007) ("we reasonably rely on trial courts to make the necessary factual findings, and for appellate courts to objectively review the record").

The point is not that factual findings by state appellate courts may never exist: in some cases state

appellate courts do make factual findings, and when they do the findings are subject to a rebuttable presumption of correctness on habeas review. The point, rather, is that Respondent seems to be telling this Court that every reference to a trial court transcript, testimony, pleading or argument by counsel in a state appellate opinion must be considered a "finding of fact" that is entitled to a presumption of correctness. This is simply wrong as a matter of law. Indeed, as the above-cited cases make clear, it is actually rather uncommon for an appellate court to make "factual findings." The mere fact that appellate courts often summarize the testimony and other evidence does not convert every word they print — let alone only the words that favor the prosecution - into a "factual finding" that the federal courts must accept and use against a petitioner in habeas review.

Accordingly, while this Court is of course free to consider the California Supreme Court's summary recitation of the record below, along with both parties' statements of facts, and the record itself, the realm of what may have been decided by the state court is nowhere near so expansive as Respondent suggests.

Petitioner stands by the Statement of Facts included in the Petition.

*       *       *       *       *

**<u>Teague v. Lane</u>, 489 U.S. 288 (1989)**

In his Answer, Respondent summarily avers that since the California Supreme Court denied relief on Petitioner's claims, for this Court to grant relief on any claim would require the creation of a "new rule of criminal procedure." Answer, 10. He further posits that "relief predicated on retroactive application of a new rule of criminal procedure is foreclosed on collateral review except under limited circumstances not applicable here." In support of this, he cites <u>Penry v. Lynaugh</u>, 492 U.S. 302, 314 (1989), and <u>Teague v. Lane</u>, 489 U.S. 288, 299-301 (1989). Traverse, 10.

Respondent is mistaken. None of Petitioner's claims requires this Court to create a new rule of law within the meaning of <u>Teague</u>, 489 U.S. 288. All of Petitioner's claims are based on United States Supreme Court precedent in existence prior to the date on which Petitioner's judgment became final.

In the unlikely event this Court were to conclude that any of the claims in the Petition rely upon a new rule of law, the principles articulated in that claim: (1) place a class of private conduct beyond the power of the State to proscribe, (2) address a substantial categorical guarantee accorded by the Constitution, (3) announce a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding, and/or (4) otherwise fall within one of the exceptions to <u>Teague</u>. <u>See</u> <u>Lambrix v. Singletary</u>, 520 U.S. 518, 539-40, 117 S. Ct.

1517, 137 L. Ed. 2d 771 (1997).

Additionally, Respondent's blanket statement that relief on Petitioner's claims is foreclosed by the non-retroactivity doctrine of <u>Teague</u> is insufficient to meet his burden of pleading this affirmative defense with respect to any claim, and it is therefore waived. In <u>Arredondo v. Ortiz</u>, 365 F.3d 778 (9th Cir. 2004), the court declined to apply <u>Teague</u> because, although the "state does mention <u>Teague</u> in its brief, the [state does so] . . . only in passing" and does not represent "an argument, let alone a developed argument," and "[n]ormally we decline to address an issue that is simply mentioned but not argued, and we see no reason to depart from that practice in a habeas appeal." <u>Id</u>. at 781-82.

**Exhibits and Request for Judicial Notice**

Petitioner respectfully hereby renews and adopts by reference each and all allegations contained in the Petition for a Writ of Habeas Corpus as though set forth herein. Petitioner further adopts by reference all pertinent factual allegations, arguments and claims as are contained in the Appellant's Opening Brief filed with the California Supreme Court, Appellant's Reply Brief filed before the same court, the ancillary pleadings filed there, as well as the allegations and arguments set forth in his petitions before

the state courts for a writ of habeas corpus.[4]

Petitioner notes Respondent has recast certain of his claims in the Answer. Respectfully, Petitioner rejects the recasting of his claims by Respondent. Petitioner may periodically herein adopt, purely for ease of reference of the reader, the phrasing used by Respondent. He does not, however, in any meaningful way abandon or circumscribe the scope of his claims for relief, continuing at all times to advance the claims as set forth in the petition.

Respondent has not addressed Petitioner's request for judicial notice. (Petition, at 20) Petitioner respectfully renews that request, and submits that Respondent's failure to respond should be deemed a waiver of any objection.

## PETITIONER'S CLAIMS

### Claim One

This claim has been stayed, by order dated December 16, 2016, of this Court.

### Claim Two

This claim avers as follows.

TRIAL COUNSEL FAILED TO INVESTIGATE AND PRESENT READILY AVAILABLE EVIDENCE IN MITIGATION AT PETITIONER'S PENALTY PHASE TRIAL.

There were numerous types of mitigation evidence that

_____

[4]    Petitioner notes Respondent has also incorporated by reference the exhibits comprising the state record he lodged with this Court (Answer, at 7), and Petitioner joins him in so incorporating those materials.

reasonable and competent trial counsel would have
prepared and presented to Petitioner's penalty phase
jury.  Petitioner's personal and family profile is
nothing less than the story of how a poor, undereducated
and ignored child grows up in a deprived and violent
inner-city existence:

     a.   Single parent family with absentee father.

     b.   Repeated shuffling back and forth between the
parents.

     c.   Depressed, overworked and mentally ill single
mother with low self-esteem who was raising five
children.

     d.   Low income impoverished environment.

     e.   Life in a series of violent, hopeless
neighborhoods, each with repeated exposure to
crime.

     f.   Lack of parental supervision at home.

     g.   Lack of parental affection.

     h.   Lack of individual attention.

     i.   Lack of appropriate role models at home or in the
neighborhood.

     j.   Volatile relationship with stepmother.

     k.   Drunken and abusive stepfather.

     l.   Low expectations and humiliation by aunts and
uncles.

     m.   Learning disabilities and subnormal intellectual
functioning, of which there appears to be a

strong family history.

n.  Neuropsychological impairments in functions
    related to planning, organizing, judgment,
    cognitive flexibility, fluency and self-
    monitoring.

o.  Lack of parental support for education.

p.  Dysfunctional and underfunded schools.

q.  Extremely poor performance in school, with
    frequent suspensions.

r.  Attention deficit/hyperactivity disorder

s.  Bipolar disorder

t.  Alcoholism, of which there was a strong history
    on both sides of the family, and substance abuse.

u.  Family history of various forms of mental illness
    including schizophrenia.

Reasonable and competent trial counsel would have
brought forth this evidence for the jury's evaluation
during the penalty phase, and once informed fully of
Petitioner's background, the jury would not have
sentenced him to death.  Trial counsel delivered
constitutionally ineffective assistance and the writ
should issue based on these failings.

Petitioner considers it clear that under the case law
this evidence is admissible and relevant during a capital
sentencing proceeding.

"[E]vidence about the defendant's background
and character is relevant because of the belief,

long held by this society, that defendants who

commit criminal acts that are attributable to a

disadvantaged background, or to emotional and

mental problems, may be less culpable than

defendants who have no such excuse."

<u>California v. Brown</u>, 479 U.S. 538, 545 (1987)(O'Connor,

J., concurring); <u>Boyde v. California</u>, 494 U.S. 370, 382

(1990); <u>Penry v. Lynaugh</u>, 492 U.S. 302, 319 (1989).

"The presentation of mitigation evidence

affords an opportunity to humanize and explain--

to individualize a defendant outside the

constraints of the normal rules of evidence."

<u>Mayes v. Gibson</u>, 210 F.3d 1284, 1288 (10th Cir.), cert.

denied, 531 U.S. 1020 (2000).

Petitioner also considers it ineffective assistance

of capital trial counsel to have failed to conduct a

proper penalty phase investigation and to make reasonable

strategic decisions in the presentation of penalty phase

mitigation evidence. <u>Wallace v. Stewart</u>, 184 F.3d 1112,

1117 (9th Cir. 1999); <u>Caro v. Calderon</u>, 165 F.3d 1223,

1227 (9th Cir. 1999); <u>Clabourne v. Lewis</u>, 64 F.3d 1373,

1378 (9th Cir. 1995); <u>Mak v. Blodgett</u>, 970 F.2d 614, 619

(9th Cir. 1992).

<u>Discussion - Traverse of Answer</u>

In his answer, Respondent attempts to dismiss the

prosecutor's concession that the case in aggravation was

weak but suggesting the trial prosecutor did not make
such a concession.  Petitioner stands by his review and
presentation of the record to this Court.  Moreover, as
significant as the concession was, it remains even more
important that, even had the concession not been made
openly as it was, this is a weak case in the capital
world.

   More pointedly: this should not be a capital matter.

   A few stark facts.  The entire penalty phase
comprises exactly and only 62 pages of reporter's
transcript. (RT 3767-3838)   The entire case in
aggravation against Petitioner consisted of victim impact
testimony and proof Petitioner had been in possession of
a handgun during a non-violent police stop.   The
prosecution's own acknowledgment about how weak its
aggravation case against Petitioner was no generous
gesture; the prosecution was compelled to make the
concession.

   Even more stark: the defense case consists of only 22
pages of reporter's transcript. The entire case in
mitigation consisted solely of unemotional requests by
Petitioner's family that he not be executed.

   The record is sparse not because Petitioner had no
redeeming qualities, but because trial counsel failed to
conduct a proper and competent investigation pretrial.  -

   Trial counsel failed to provide a mental health
expert with critical information about Petitioner's

family's history of mental illness, subnormal intellectual function and alcoholism.

- Trial counsel did not follow up on evidence of neuropsychological impairment he did learn existed, he should have done so by requesting a more thorough examination.

- Trial counsel never investigated how any adverse impact from admitting Petitioner's juvenile arson behavior could be blunted, even when it was still a possibility that the arson would be admitted as aggravation. Importantly, counsel also failed to consider how the fires could be developed as powerful mitigation by explaining it as the product of many of the same dysfunctional and unhealthy influences that Petitioner had labored under throughout his young life.

The trial court refused to allow the prosecutor to impeach Petitioner at the guilt phase with evidence of his juvenile misconduct. (RT 3290)[5]

The trial court saw what trial counsel inexplicably did not: that a rational jury probably would not have used Petitioner's minor adolescent juvenile history to discredit him. Even after this ruling trial counsel made no effort to evaluate this evidence as a potentially

---

[5]    Doing so, the court held that even if the fires Petitioner set as a juvenile constituted moral turpitude and would otherwise have been admissible as impeachment, "the probative value of juvenile misdemeanor conduct" as impeachment was substantially outweighed by the potential for confusion of the issues. (RT 3290)

favorable illustration of just how unguided Petitioner was during his formative years.

- Evidence could have been put on about the crime-ridden neighborhood Petitioner spent his adolescent years in.

- Evidence could have been put on about Petitioner's learning disabilities, lifelong failure at school and broken family.

- Importantly, Petitioner could have taken the stand to apologize openly and express the remorse he felt. This alone would likely have saved his life. And the record makes clear Petitioner was fully ready and willing to testify when called upon to do so. Trial counsel simply failed to allow Petitioner to use this opportunity for salvation.

Granted discovery and an evidentiary hearing, Petitioner anticipates illustrating clearly just how these and further details and illustrations of Petitioner's deprived background and personal challenges could have been presented to the jury and why it was ineffective assistance of counsel to fail to do these things. Further, Petitioner will demonstrate just how far below the prevailing standard of care trial counsel's conduct was, and easily prevail on this overarching ineffective assistance of counsel claim.

Petitioner equally strongly rejects each and all of the other arguments Respondent puts forth as to why or

how trial counsel's performance was either reasonable or strategic.  Trial counsel's performance was deficient, indeed dismally so.  Afforded discovery and an evidentiary hearing, Petitioner will show clearly that no reasonable competent lawyer, performing consistent with the standard of care relevant to the time of Petitioner's trial, would have behaved in this way.

No clever arguments, or parsing of language, or any other stratagem, will alter the fact Petitioner has a truly nominal criminal history.  Petitioner confessed to the crimes at issue here.  And the jury made an express finding that Petitioner did not have the intent to commit attempted first degree murder.

It is simple: this should not be a capital case. Petitioner stands before this court sentenced to death solely due to malfunctions of the criminal justice system that have allowed this matter to advance to this point. Chief among them was his trial counsel's failures.  It is a tragedy indeed that the errant ricochet bullet killed Lance.  But it would be grave injustice for Petitioner to be executed, and moreover it would be unlawful under case law and Eighth Amendment norms.

Had trial counsel properly and competently investigated and presented the evidence readily as mitigation, Petitioner would not have been sentenced to death.  Respectfully, Petitioner incorporates here by reference and renews each and all of the further

allegations set forth in this petition in support of this claim, and rejects Respondent's contrary arguments presented in the Answer.

With discovery and an evidentiary hearing, Petitioner will show the judgment of death must be reversed.

**Claim Three**

This claim avers as follows.

**THE JURY COMMITTED MISCONDUCT IN TWO WAYS: (A) IT PUT PETITIONER IN JEOPARDY FOR A CRIME OF WHICH HE HAD ALREADY BEEN ACQUITTED, AND (B) IT CONSIDERED EXTRINSIC EVIDENCE, ALL IN VIOLATION OF FEDERAL AND STATE LAW**

The guilt trial verdict forms required the jury to decide whether the shooting of Mrs. Clark amounted to premeditated attempted murder. The jury's response to this allegation was unequivocal: it entered a finding "that the attempted murder [of Bernice Clark] was not wilful, deliberate and premeditated." (CT 526)

Accordingly, when the jury returned its verdict of first-degree murder as to Lance Clark (CT 529), the only possible reading that reconciled the two components of the jury's verdict is that the jury convicted Petitioner of Lance's murder on a theory of felony-murder. The jury necessarily had to have acquitted Petitioner of the premeditated murder of Lance at the time it found no premeditation as to the attempted murder of Bernice Clark. On this fact pattern and with these legal instructions, there was no alternative basis for the

verdict.

The above verdicts were signed by the foreperson of the jury on July 26, 1995, and August 2, 1995. They were read in open court by the clerk, the jury was polled, and these verdicts were affirmed and made a part of the court's records on August 2, 1995. (CT 528-32) Thereafter the matter proceeded to a penalty trial, with opening statements therein given on August 8, 1995. (CT 533)

On August 22, 1995, the seventh day of penalty phase deliberations, the sentencing jury asked the court:

> Even though we agreed that death of Lance
> Clark was murder of the first degree because it
> happened during the commission of robbery,
> (felony murder law), are we now permitted to look
> at the willful, premeditated and deliberate
> nature of this killing under factor A?

(RT 4015)

The record does not reflect a contemporaneous discussion regarding the jury's question.[6] The court

_____

[6]    The record does contain the trial judge's explanation to the jury that he was going to excuse the jury for a break before answering the jury's inquiries. The court stated: "I have not had a chance to confer with counsel in terms of how to respond. I have notified them of the general nature of it, but I'd like to confer with them in terms of responding to you. . . I will discuss it with them, and I anticipate we'll be able to respond to you very shortly [after your lunch break.]" (RT 4012) Prior to answering the jury's inquiries, the court further stated: "I have had an opportunity to discuss [the note] with

thereafter instructed the jury:

> You may consider such factors under factor A
> of jury instruction 8.85 in your consideration of
> the circumstances of the crime of which the
> defendant was convicted in the present proceeding
> and the existence of any special circumstance
> found to be true.

(CT 635-6; RT 4016) The court did not tell the jury that it was not allowed to revisit a theory as to which Petitioner had already been acquitted. There is no objection from Petitioner's counsel to this instruction on the existing record.

The next day the court substituted two alternate jurors for members of the panel. At this time, Petitioner's counsel requested the court instruct the jury to begin penalty deliberations over. (RT 4032-33) At this point Petitioner's counsel noted he did not want the jury to relitigate the guilt phase, since the jury had found non-premeditated murder. (RT 4034) The prosecutor disagreed, however, arguing the jury could consider premeditation under a lower burden of proof, even if it had a reasonable doubt whether the murder was "willful, deliberate and premeditated." (RT 4034-35)

Petitioner's counsel asked the court to instruct the

_____

counsel." (RT 4014) With discovery and an evidentiary hearing, Petitioner expects to be able to establish the substance of that conference and his contemporaneous opposition to the response given by the court.

jury not to reconsider deliberations already made during the guilt phase, and the court agreed, but reiterated that the jury would be free to consider the circumstances of the crime under factor (a). (RT 4035-36) In the court's view, the circumstances of the crime "encompasses all of the circumstances of the crime including examination of questions of whether or not the acts of the defendant were willful, deliberate or premeditated." (RT 4037)

However, despite this discussion, the court simply instructed the jury to begin its penalty phase deliberations anew, saying nothing about guilt phase deliberations. (RT 4041) The court's lack of instruction, combined with the prior instruction given to all of the ten (10) jurors who remained and had received the prior instruction in response to the jury's earlier question, left the jury with license to revisit the issue of premeditation and deliberation under the guise of factor (a). This error requires reversal of the death sentence.

At the conclusion of the guilt phase, the jury convicted Petitioner of robbing Bernice Clark and of the first-degree murder of Lance Clark. (CT 524) The jury also convicted Petitioner of the attempted murder of Bernice Clark. (CT 526) Importantly, the jury concluded that the attempted murder was not committed with premeditation and deliberation. _Id_. The only logically

consistent interpretation of the jury's verdicts is that the killing of Lance Clark was a first-degree murder because it was committed during a felony robbery. Indeed, the jury even makes this explicit in the aforementioned note.  (RT 4015)

An examination of the guilt phase instructions and verdicts supports this conclusion.  The court instructed the jury that there were two possible verdicts as to counts 1 and 3 and three possible verdicts as to count 2.  (RT 3538; CT 520)  The court also instructed the jury in pertinent part:

> With respect to the charges contained in Count Two (attempted murder) of the Information, if you are not satisfied beyond a reasonable doubt that the defendant is guilty of the crime charged, you may nevertheless convict [him] of an lesser crime, if you are convinced beyond a reasonable doubt that the defendant is guilty of such lesser crime.
>
> *       *       *
>
> The court cannot accept a guilty verdict on a lesser crime unless you have unanimously found the defendant not guilty of the [charged] or [greater] crime.

(CT 489-90)

The court instructed the jury as to premeditated and deliberate murder.  (CT 464-67; CALJIC 8.20)  The jury

Page  -42-

also was instructed in regard to murder, as follows:

> When one attempts to kill a certain person,
> but by mistake or inadvertence kills a different
> person, the crime, if any, so committed is the
> same as though the person originally intended to
> be killed, had been killed.

(CT 474)

In regard to attempted murder, the court instructed the jury that "every person who attempts to murder another human being is guilty of a violation of Sections 664 and 187 of the Penal Code.   The court further instructed:

> It is also alleged in [count[s] 2] of the
> information that the crime attempted was willful,
> deliberate, and premeditated murder.  If you find
> the defendant guilty of attempt to commit murder,
> you must determine whether this allegation is
> true or not true.

(RT 3526; CT 485; CALJIC 8.67)[7]   In contrast, the trial court instructed the jury that Petitioner did not need to have intent to kill in order to be guilty of the special circumstance of robbery-murder.  Of course, under the

_____

[7]   CALJIC 8.67, which concerns premeditated attempted murder, contains the entirety of CALJIC 8.20, which defines the element of premeditation for first degree murder.

felony murder rule, intent to kill also is unnecessary.[8]

During his guilt phase closing argument, the prosecutor argued that Petitioner premeditated the robbery and the murder of Lance Clark. E.g. RT 3443-45, 3446-47, 3461, 3495-96. The legal basis for the prosecutor's theory of premeditated murder was that Petitioner premeditated the shooting of Mrs. Clark and that, under a theory of transferred intent, this premeditation and deliberation should be transferred and applied to the killing of Lance Clark. This was the only available theory, because - as the forensic evidence established - the bullet that killed Lance Clark was the same bullet that struck Mrs. Clark. The evidence clearly showed and the prosecution conceded that Petitioner made no independent effort to shoot let alone kill Lance Clark. There was simply no independent evidence of premeditation as to the homicide, and as such any findings as to Lance Clark's death would have to turn on the jury's findings as to Petitioner's mental state at the time of the alleged attempted murder of Bernice Clark.

The verdict forms required the jury to decide whether the shooting of Mrs. Clark amounted to premeditated attempted murder. The jury's response was unequivocal:

---

[8]    Thus the murder and special circumstance verdicts do not show intent to kill; the only verdict that shows a finding as to Petitioner's mental state is the acquittal of attempted premeditated murder.

it entered a finding the attempted murder was not premeditated. (CT 531)

Thus when the jury also returned a verdict of first-degree murder as to Lance, the only possible reading of the verdict is that the jury convicted Petitioner of Lance's murder on a theory of felony-murder, but - just as it had done with its findings as to Mrs. Clark - the jury necessarily had to have acquitted him of the premeditated murder of Lance.

Despite these prior findings, the court erroneously permitted the jury to reopen the issue of premeditation and deliberation under the guise of "circumstances of the crime."  The court's instruction, which allowed the jury to reconsider the issues of premeditation and deliberation, after an acquittal of premeditated attempted murder, constitutes federal constitutional error and the writ should issue.

**PERMITTING THE JURY TO RECONSIDER THE ISSUE OF PREMEDITATION VIOLATED PETITIONER'S RIGHTS BECAUSE PETITIONER WAS ACQUITTED OF PREMEDITATED MURDER**

The penalty phase jury's reconsideration of the issue of premeditation and deliberation, an issue which the guilt phase jury necessarily resolved in Petitioner's favor, violated constitutional principles of collateral and direct estoppel, incorporated into the Double Jeopardy Clause of the Fifth and Fourteenth Amendments to the United States Constitution.  The trial court's

explicit grant of permission to reconsider premeditation
and deliberation also violated the Eighth Amendment and
Penal Code § 190.3, because the jury already had found
the evidence insufficiently reliable to support a
conviction in the guilt phase. These errors require
reversal of Petitioner's death sentence.

It is well-established that principles of estoppel
apply to criminal proceedings.  Ashe v. Swenson, 397 U.S.
436 (1970).  Estoppel means that "when an issue of
ultimate fact has been once determined by a valid and
final judgment, that issue cannot again be litigated
between the same parties." Id. at 442.  Collateral
estoppel principles apply during the penalty phase of a
capital trial. Bullington v. Missouri, 451 U.S. 430,
444-45 (1981); see Schiro v. Farley, 510 U.S. 222, 230
(1994).

More narrowly, the principle of direct estoppel
applies to issue preclusion "within the confines of a
single claim or cause of action."  18 Charles A. Wright,
et al., (1981) Federal Practice & Procedure § 4418 at
169.  "Direct estoppel prevents a party from relitigating
a fact which was already determined against it in a
'decision that finally disposes of a part of a claim on
the merits but does not preclude all further action on
the remainder of the claim; issues common to both parts
of the claim are precluded, even though new issues remain
to be decided.'" Id. at  169-70 (quoted in United States

v. Bailin, 977 F.2d 270, 276 (7th Cir. 1992). The principles of direct estoppel prevent the prosecution from relitigating issues that were necessarily decided in the defendant's favor by reason of a partial acquittal on other counts. Bailin, at 276-77.

In deciding whether estoppel bars relitigation or reconsideration of an issue, three elements must be present: (1) the issue in question was actually raised and litigated in the prior proceeding; (2) the issue was necessarily decided in the defendant's favor; and (3) the issue in the later proceeding is the same as that involved in the prior proceeding. Delap v. Dugger, 890 F.2d 285, 314 (11th Cir. 1989).

Application of these principles here leads to the conclusion that the trial court committed grave error when it allowed the jury to incorporate premeditation into its deliberations during the penalty phase.

The issue of premeditation and deliberation was openly litigated during the guilt phase of the trial. The prosecution presented evidence that it contended showed that Petitioner committed a deliberate and premeditated murder and a deliberate and premeditated attempted murder.  This evidence was weak, but included testimony from Alphonso Odom, LaCondra Douglas and Edward Tyson. Likely precisely because the prosecution recognized how weak the case was for premeditation, in closing the prosecutor argued in the alternative that

Petitioner was guilty of felony-murder.  (RT 3443-45, 3461-62, 3496)

Once the jury concluded that Petitioner did not commit the crime of premeditated attempted murder and the verdicts were announced, the question was resolved and Petitioner could not properly be put in jeopardy a second time for that crime.

> The rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. . . . [T]his approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'

Ashe v. Swenson, 397 U.S. at 443 (quoting Sealfon v. United States, 332 U.S. 575 (1948)).  The only theory that supported a first-degree murder conviction as to Lance Clark that could be based on premeditation and deliberation was via intent transferred from the attempted murder of Bernice to the actual murder of Lance Clark. The forensic evidence simply permits no other construction: it was undisputed that Lance Clark was killed by the same bullet that first struck his

grandmother.   If the shooting of Mrs. Clark was not deliberate and premeditated, the murder of Lance Clark could not be either.   The jury's acquittal of premeditated and deliberate attempted murder must rest on a factual determination that Petitioner was not guilty of premeditating and deliberating.   There is simply no other conclusion that can be drawn rationally from the verdicts as announced on this fact pattern.

Finally, the issue of premeditation involved in the guilt phase is the same issue of premeditation that came into play during the penalty phase.   But, the acquittal of premeditated murder raised an absolute bar to the jury's reconsideration of premeditation in deciding whether to impose the death penalty.

On this procedural and factual record, the trial court should have clearly instructed the jury it was not allowed to reconsider this part of the matter. The trial court's decision to allow the jury to consider premeditation under factor (a) violated the Eighth Amendment to the United States Constitution as well as Penal Code § 190.3.

The Eighth Amendment requires that a death sentence be based only upon evidence that is reliable.   <u>Johnson v. Mississippi</u>, 486 U.S. 578, 585-86 (1988).

The California Legislature, in enacting § 190.3, apparently recognized and wished to avoid the problems of double jeopardy and estoppel in capital proceedings.

Section 190.3 provides in pertinent part:

> However, in no event shall evidence of prior
> criminal activity be admitted for an offense for
> which the defendant was prosecuted and acquitted.
> The restriction on the use of this evidence is
> intended to apply only to proceedings pursuant to
> this section and is not intended to affect statutory
> or decisional law allowing such evidence to be used
> in any other proceedings.

Section 190.3 thus plainly prohibits the prosecution from
using, as evidence in aggravation, alleged crimes of
which the defendant was acquitted.  See also People v.
Jennings, 53 Cal.3d 334, 389-90 (1991).  The language of
§ 190.3 is mandatory.  The apparent purpose of this
statute, which applies only to capital cases, is to
ensure compliance with the heightened standard of
reliability for evidence admitted in aggravation, as
required by the Eighth Amendment and corresponding
provisions of the state constitution.  See People v.
Robertson, 33 Cal.3d 21, 53-54 (1982); People v. Sheldon,
48 Cal.3d 935, 950-51 (1989).

Section 190.3 excludes not only evidence of conduct
for which the defendant has been acquitted, but also
"evidence surrounding the acquitted offense which
involve[s] additional, lesser criminal misconduct."
Sheldon, 48 Cal.3d at 951.

Thus, § 190.3 itself operates as an independent and

explicit bar during a capital penalty phase to
consideration of conduct for which the defendant has been
acquitted.  Id.[9]  The exclusion of § 190.3 is not limited
to crimes tried in a separate trial or proceeding, but
will include offenses tried along with the capital
offense.  Jennings, 53 Cal.3d at 389-90.

This statute plainly embodies a state created liberty
interest of the highest order, and as such Section 190.3
must be applied in a manner that is consistent with due
process and which does not arbitrarily abrogate its
purpose or intent. To allow otherwise is to violate
federal constitutional due process principles. Dent v.
West Virginia, 129 U.S. 114, 123 (1889); Goldberg v.
Kelly, 397 U.S. 254 (1970); Board of Regents v. Roth, 408
U.S. 564 (1972); Perry v. Sindermann, 408 U.S. 593
(1972); Goss v. Lopez, 419 U.S. 565 (1975); and Meachum
v. Fano, 427 U.S. 215 (1976).

The requirements of heightened reliability under the
Eighth Amendment and the express language of § 190.3
preclude that which the trial court allowed to happen
here.  The requested writ should issue.

Respondent's Answer

Respondent argues that this claim has been
procedurally defaulted.  In the alternative, he argues

---

[9]    The trial court therefore also violated
Petitioner's liberty interest in a state procedural
guarantee, a further violation of federal law. Morrissey v.
Brewer, 408 U.S. 471, 481 (1982).

that the denial on the merits was correct.    Respondent
is wrong on both counts.

   The record clearly shows there were discussions about
this issue "off the record."  (RT 4012, 4014)    It was a
violation of California law for the Superior Court to
conduct proceedings in a capital matter "off the record."
California Penal Code § 190.9(a)(1).  Any consequence of
such a violation may not properly redound to the
prosecution's advantage.

   When Petitioner is afforded an opportunity to cover
the present gap in the existing record, it will be shown
that his counsel did in fact object to the trial court's
proposed approach.   The agreed upon statement was
nothing other than a fall-back position.  After all, when
courts give instructions to which parties have objected,
the courts do not also tell the jurors that the parties
have raised objections to the way the trial court is
instructing them.  The objections are left out, with
parties and the trial court relying on the record to
enable further review.  Except here the existing record
clearly discloses the trial court did not make a
contemporaneous record of its proceedings.  This was a
violation of California law, and this is the cause for
any perceived procedural default.

   For the same reason there was no procedural default,
all of the ensuing California Supreme Court's analysis is
deficient ab initio.  Respondent's discussion of this

claim is unavailing since it is all predicated upon a serious deficiency in the record.

Respondent perceives Petitioner's reference to federal liberty interests as an attempt to secure habeas relief for a violation of state law.    The cases Petitioner cites make clear there is a fundamental federal interest implicated when states fail to follow their own laws, this is not a concept Petitioner invented.    Respondent is simply wrong, and Petitioner stands by the analysis he offered this Court on the point in the petition.

In sum, Petitioner reiterates this claim is meritorious, and once granted discovery and an evidentiary hearing on it he will be able to so show.

**THE JURORS WERE TAINTED BY EXTRANEOUS INFLUENCES AND THEIR EXPOSURE TO THESE EXTRANEOUS MATTERS VIOLATED FEDERAL CONSTITUTIONAL CONCERNS**

**Synopsis**

After the trial, some of the jurors submitted to interviews.    Those interviews disclosed that at least some jurors engaged in serious misconduct. Based on this evidence, Petitioner presented the trial court with a motion for a new trial.    In support of the motion, Petitioner submitted the reports of the investigator who conducted the

juror interviews.[10]

The court concluded that the juror statements themselves were incompetent to impeach the jury verdict, because they concerned the jurors' reasoning processes. (CT 757-59)  The trial court declined to hold an evidentiary hearing on the juror misconduct. (CT 756, RT 4103-04) The court further ruled, contrary to what trial counsel told the court he had been led to believe it would do, that the investigator's statements were a further level of inadmissible hearsay.  (RT 4105)  The court accordingly ruled that the juror statements could not be considered in support of the motion for new trial pursuant to Evidence Code section 1150.  Id.

The trial court's refusal to hold an evidentiary hearing on jury misconduct was error under both state and federal law, as was the subsequent trial court ruling denying the motion for a new trial.  People v. Jones, 17 Cal.4th 279, 317 (1998)[11] Granted appropriate discovery and

_____

[10]    Trial counsel had not obtained declarations from the jurors directly, but rather attempted to rely on an under oath recital from a defense investigator as to what the jurors had told him. Trial counsel represented to the trial court he did this in reliance upon statements the court had made to him to the effect it would consider such a presentation.  (CT 745-46, CT 750, RT 4093-94) The court denied making any statements to counsel as to what would be admissible.  (CT 750-51, RT 4096)

[11]    Under federal constitutional law, a defendant needs only to present a prima facia case of juror misconduct. Mattox v. United States, 146 U.S. 140, 150 (1892); Remmer v. United States, 347 U.S. 227, 229 (1954). See also Wade v. Terhune, 202 F.3d 1190, 1197-98 (9th Cir. 2000).

an evidentiary hearing, Petitioner alleges he will establish these events did indeed violate his federal constitutional rights.

**THE TRIAL COURT ERRED IN REFUSING TO CONSIDER THE JUROR STATEMENTS.**

The trial court initially concluded that the juror statements contained in the defense investigator report were inadmissible as unsworn hearsay. (RT 4105) This ruling was error.

Generally, when a party seeks a new trial based on jury misconduct, "the court must undertake a three-step inquiry." People v. Von Villas, 11 Cal.App.4th 175, 255 (1992), cert. den. 510 U.S. 838 (1993). First, the court must determine whether the affidavits supporting the motion are admissible under Evidence Code § 1150(a). Id. Second, the court must consider whether the facts establish misconduct. Id. Third, if misconduct occurred, the prosecution must be given the opportunity to seek to rebut the presumption of prejudice stemming from the misconduct. In re Hitchings, 6 Cal.4th 97, 118 (1993). Such rebuttal can be made by "proof that no prejudice actually resulted." Id.

Hearsay is defined as an out-of-court statement admitted for the truth of the matter. Evid. Code § 1200. While hearsay is generally inadmissible as evidence at trial, there is no rule that bars consideration of hearsay in considering whether a prima facie case is established to

justify an evidentiary hearing regarding jury misconduct; indeed, juror affidavits themselves constitute hearsay but are nonetheless admissible.  Thus, the trial court's concern that the defense investigator report may have itself been hearsay should not have precluded consideration of its content in deciding whether an evidentiary hearing on juror misconduct should be held.    Jurors commit misconduct when they consider extrinsic evidence - that is, facts or information that was not admitted into evidence.  A juror's affidavits or testimony are admissible to show the truth or falsity of a juror's voir dire responses, as well as juror bias or misconduct.  Hard v. Burlington Northern Railroad, 812 F.2d 482, 484 (9th Cir. 1987).

The trial court erred in denying an evidentiary hearing because the juror statements showed misconduct and the consideration of extrinsic evidence.  A verdict rendered by even one biased juror denies a defendant due process and violates the Sixth Amendment right to a fair trial and the Seventh Amendment's guarantee to an impartial jury.  United States v. Henley, 238 F.3d 1111, 1120 (9th Cir. 2001); Dyer v. Calderon, 151 F.3d 970, 973 (9th Cir. 1998).

Under both federal and state law, jurors are competent to testify regarding certain statements made inside the jury room.  Evid. Code § 1150(a); Rule 606(b)(2) of the Federal Rules of Evidence.  Statements that go to the jurors' deliberative and reasoning processes are inadmissible, but a juror may give testimony about whether extraneous

prejudicial information was brought before the jury. Therefore, while certain statements contained in the juror interviews submitted by the defense were not admissible under evidence law, others clearly were.  The trial court erred in ruling that the substance of the juror statements to the defense investigator were barred by E.C. § 1150.  At a minimum, the admissible portions of the statements presented a prima facie case of misconduct, sufficient to require an evidentiary hearing.

Even without the requested hearing, it was clear the jurors committed prejudicial misconduct, as they considered evidence other than what the court admitted into evidence. This violated Petitioner's Sixth Amendment right to a fair trial and Fifth Amendment right to due process.  United States v. Smith, 26 F.3d 739, 758 (7th Cir. 1993).

This error is particularly offensive in a capital case, which presents a heightened need for reliability.  Ford v. Wainwright, 477 U.S. 399, 414 (1986); Beck v. Alabama, 447 U.S. 625, 637-638 & fn. 13 (1980).

At least two jurors' statements indicated a discussion undertaken in violation of Caldwell v. Mississippi, 472 U.S. 320, 333 (1985), in that the jurors commented that Petitioner likely would never be executed.  In other words, they speculated that death did not mean death.  This was misconduct.  A defendant facing the death penalty is entitled to a jury instruction that a sentence to life imprisonment without possibility of parole precludes any

chance for parole. <u>Kelly v. South Carolina</u>, 534 U.S. 246 (2001); <u>Shafer v. South Carolina</u>, 532 U.S. 36 (2001).

Finally, the jurors committed misconduct when they considered the activities of some unidentified trial spectators who they unjustifiably associated with Petitioner, as well as when they somehow received and then discussed information that the district attorney's automobile tires had been slashed during the trial. Notably, there is no evidence in the record regarding these unidentified spectators or that the slashed tire event occurred, let alone that any of this was in any way associated with Petitioner if it did occur.

The jury misconduct committed in this case was serious and the judgment accordingly infirm. Petitioner will and does request both discovery and an evidentiary hearing in support of his claim his death sentence is accordingly a violation of federal constitutional law.

<u>Respondent's answer</u>

Respondent alleges that the constitutional infirmities Petitioner raises in this claim are procedurally defaulted. He is wrong.

First, Respondent himself concedes that the trial court evaluated this claim on its merits, a point the California Supreme Court failed adequately to consider. Answer, at 91; RT 4106-13. This alone permits this claim to avoid procedural default: it received a merits ruling from the state court.

Respondent also concedes Petitioner presented portions of this claim initially in his direct appeal, and then, following denial of the appeal, presented an amplified version - with additional factual details - in his state habeas petition.

The California Supreme Court denied the habeas claim in the alternative as procedurally barred, citing <u>In re Waltreus</u>, 62 Cal.2d 218, 225 (1965).    This fails to consider the habeas claim was an amplified claim, so that to the extent some portion or portions of it may otherwise have failed under <u>In re Waltreus</u>, in fact that was not a proper basis for its denial in toto.    In sum, the procedural bar that Respondent seeks to invoke has not been consistently or correctly applied, and accordingly this Court may and should proceed to review it in its entirety on the merits.

Further, when granted the opportunity to do so, Petitioner will demonstrate his entitlement to discovery and an evidentiary hearing on this claim.    At the conclusion of those proceedings, he will show he is entitled under federal law to habeas relief on this claim.


**Claim Four**

This claim avers as follows.

**CALIFORNIA'S DEATH PENALTY IS CONSTITUTIONALLY OFFENSIVE IN HOW IT DIRECTS A SENTENCING JURY TO EVALUATE AND WEIGH EVIDENCE IN MITIGATION AND AGGRAVATION**

When a death penalty prosecution proceeds to a penalty

Page -59-

phase trial, California's statutory scheme relies on the jury to weigh the statutorily enumerated aggravating and mitigating factors presented by the evidence,[12] and then to determine which of two penalties to impose: life imprisonment without possibility of parole or death.

Petitioner alleges that as written and as applied in his case, this statutory scheme has denied him his federal constitutional rights. Based on these infirmities, the sentence of death is unlawful and this Honorable Court should grant the requested writ of habeas corpus.

**THE JURY WAS MISLED REGARDING HOW IT SHOULD WEIGH THE AGGRAVATING AND MITIGATING FACTORS IN THIS MATTER**

The jury in this case was instructed with CALJIC No. 8.85, a standard instruction regarding the factors in aggravation and mitigation which may be considered in determining whether a sentence of death or life without the possibility of parole should be imposed. As given in this case, the instruction read as follows:

In determining which penalty is to be imposed on the defendant, you shall consider all of the evidence which has been received during any part of the trial of this case, except as you may be hereafter instructed. You shall consider, take into account and be guided by the following factors

_____

[12]  The jury was instructed on the factors as presented in Penal Code § 190.3.

Page -60-

if applicable.  Some of these factors may be inapplicable because they were not shown by the evidence in this case.  The factors you may consider are as follows:

(a) The circumstances of the crime of which the defendant was convicted in the present proceeding and the existence of any special circumstances found to be true;

(b) The presence or absence of criminal activity by the defendant, other than the crimes for which the defendant has been tried in the present proceedings, which involve the use or attempted use of force or violence or the express or implied threat to use force or violence;

(c) The presence or absence of any prior felony conviction, other than the crimes for which the defendant has been tried in the present proceedings;

(d) Whether or not the offense was committed while the defendant was under the influence of extreme mental or emotional disturbance.

(e) Whether or not the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act;

(f) Whether or not the offense was committed under circumstances which the defendant reasonably believed to be a moral justification or extenuation

for his conduct;

(g) Whether or not the defendant acted under extreme duress or under the substantial domination of another person;

(h) Whether or not at the time of the offense the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect or the effects of intoxication;

(i) The age of the defendant at the time of the crime;

(j) Whether or not the defendant was an accomplice to the offense and his participation in the commission of the offense was relatively minor;

(k) Any other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime, and any sympathetic or other aspect of the defendant's character or record that the defendant offers as a basis for a sentence less than death, whether or not related to the offense for which he is on trial.

You must disregard any jury instruction given to you in the guilt or innocence phase of this trial which conflicts with this principal (sic).

You are to determine from all of the evidence whether any particular factor is present in the

case.  You are to disregard any factor that is not
shown by the evidence.

(CALJIC No. 8.85, CT 609-11)

The foregoing instruction violates the federal
constitution in a number of respects.  Whether read as a
whole or in its component parts, the instruction is
impermissibly vague, overbroad, and misleading regarding the
manner in which aggravating and mitigating factors are to
be weighed.  The instruction also violates the federal
constitution has applied to Petitioner because it includes
inapplicable factors and fails to designate which factors
are aggravating and which are mitigating.  Therefore, in
this case CALJIC 8.85 violates the Eighth and Fourteenth
Amendments.

Factor (b) permitted the jury to consider in
aggravation "[t]he presence or absence of criminal activity
by the defendant, other than the crimes for which the
defendant has been tried in the present proceedings, which
involve the use or attempted use of force or violence or the
express or implied threat to use force or violence."  This
instruction failed to provide the jury with proper guidance
regarding the use of unadjudicated criminal conduct and
violated Petitioner's rights to due process and equal
protection.  In addition, while this instruction was upheld
against an Eighth Amendment vagueness challenge in <u>Tuilaepa</u>
<u>v. California</u>, 512 U.S. 967, 977 (1994), the instruction as
applied in this case violated the Eighth Amendment because

it permitted the jury to consider unreliable evidence of Petitioner's possession of a loaded firearm, an act which did not involve any violence.

To the extent <u>Tuilaepa</u> has any application here, Petitioner respectfully submits that on these facts the holding warrants reconsideration.

The admission of evidence of previously unadjudicated criminal conduct as an aggravating factor justifying a capital sentence violated Petitioner's rights to due process and a reliable determination of penalty under the Eighth Amendment.

California does not allow the use of unadjudicated offenses in non-capital sentencing. For the same state to nevertheless allow use of the same unreliable evidence in a capital proceeding violates Petitioner's equal protection rights under the federal constitution, and it violates Petitioner's federal right to due process of law because the state applies its law in an irrational and unfair manner. <u>Hicks v. Oklahoma</u>, 447 U.S. 343 (1980), U.S. Const. Amend. XIV; Cal. Const., art. I, §§ 7, 15).

The use of factors (d) and (h) on this record specifically violated Petitioner's rights under the federal constitution. The jury was instructed that in determining the appropriate penalty they could consider factor (d), "[w]hether or not the offense was committed while the defendant was under the influence of extreme mental or emotional disturbance" and factor (h), "[w]hether or not at

the time of the offense the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect or the effects of intoxication."

As a matter of both state and Eighth Amendment law, factors (d) and (h) may only be used by the jury to mitigate Petitioner's sentence. People v. Davenport, 41 Cal.3d 247, 288-289 (1985); People v. Hamilton, 48 Cal.3d 1142, 1184 (1989); see generally, Parker v. Dugger, 498 U.S. 308, 314-316 (1991)(intoxication is mitigating circumstance); Zant v. Stephens, 462 U.S. 862, 885 (1983)(some circumstances can only serve as mitigating).

There are several different ways in which the given instructions could have been misunderstood on this record, thereby depriving Petitioner of his federal constitutional protections.

First, a claim that a defendant killed due to some kind of mental illness or emotional disturbance will trigger negative responses in some people and accordingly be seen as an aggravating factor for those individuals. While it is true that many jurors could properly view evidence of mental disturbance or mental defect as mitigating, others may view such evidence as aggravating. As the Supreme Court recognized in Penry v. Lynaugh, 492 U.S. 302 (1989), evidence of a defendant's mental problems-- in that case mental retardation and a history of abuse-- can serve as "a two-edged sword: it may diminish his blameworthiness for his

crime even as it indicates that there is a probability that he will be dangerous in the future." Id. at 324.

Similarly, it is foreseeable that some jurors might conclude that a defendant who was voluntarily under the influence of drugs or alcohol at the time of his crime was more, rather than less, deserving of death. This interpretation is acknowledged within California state law. People v. Vacca, 38 Cal.App.4th 804, 808 (1995)(trial court properly considered as aggravating sentencing factor that defendant committed his offense while under the influence of alcohol and drugs). Other jurors, however, could consider this to be a mitigating factor. This again demonstrates that the jury was not adequately guided; state law makes clear these factors could only be considered mitigating.

Significantly, the California Supreme Court has held that the "presence or absence" formulation normally used with respect to CALJIC No. 8.85 factors (b) and (c) connotes that the presence of those factors is aggravating while their absence is mitigating. See e.g., People v. Sanders, 51 Cal.3d 471, 528 fn. 27 (1990). It follows that the "whether or not" formulation used in factors (d) and (h) gives rise to a converse - but otherwise identical - connotation. Thus, the failure to instruct the jurors that factors (d) and (h) could only be used as mitigation made it reasonably likely that one or more jurors, in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments, would

"attach . . . the 'aggravating' label . . . to conduct that actually should [have] militate[d] in favor of a lesser penalty." <u>Zant v. Stephens</u>, 462 U.S. 862, 865 (1983).

In capital cases "it is essential that jurors be properly instructed regarding all facets of the sentencing process." <u>Walton v. Arizona</u>, 497 U.S. 639, 653 (1990), <u>overruled by</u> <u>Ring v. Arizona</u>, 536 U.S. 584 (2002). In this case, due to these errors, this did not occur. Accordingly, the judgment must be vacated.

The failure to delete inapplicable factors from CALJIC No. 8.85 further violated Petitioner's federal constitutional rights. Although some factors listed in CALJIC No. 8.85 were potentially applicable to the facts of this case, many clearly were not. The inapplicable factors included: factor (c) ("the presence or absence of any prior felony conviction"), factor (e) ("Whether or not the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act"); factor (f) ("Whether or not the offense was committed under circumstances which the defendant reasonably believed to be a moral justification or extenuation for his conduct"); factor (g) ("Whether or not the defendant acted under extreme duress or under the substantial domination of another person"); factor (j) ("Whether or not the defendant was an accomplice to the offense and his participation in the commission of the offense was relatively minor"). In addition, the prosecutor argued that factor (h) ("Whether . . . the capacity of the

defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect or the effects of intoxication"), was also inapplicable as phrased. In spite of their inapplicability, the trial court did not delete these factors from the instruction. Their inclusion in the list introduced confusion, capriciousness, and unreliability into the capital decision-making process in violation of Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments.

The "whether or not" formulation of the inapplicable factors cited above suggested that the jury could consider them either for or against Petitioner. Instructing the jury on such irrelevant matters diluted the jury's focus, distracted its attention from the difficult task at hand, and introduced confusion into the process.  Irrelevant instructions also created a grave risk that the death penalty was imposed on the basis of inapplicable factors. These two dangers are heightened by the court's failure to explain which factors were aggravating and which were mitigating.

The failure to delete unsupported factors for which there was no supporting evidence denigrated the nominal mitigation evidence actually presented.  The jury was effectively invited to engage in a quantitative analysis and sentence Petitioner to death because there was evidence in mitigation for "only" one or two factors, whereas the

instruction suggested there could have, and likely in the jury's eyes should have, been more to justify a life sentence.

The inclusion of inapplicable factors deprived Petitioner of his right to an accurate and individualized sentencing proceeding based solely on permissible factors relating to him and the crime.

This error also artificially inflated the weight of the aggravating factors and violated the Fifth, Sixth, Eighth and Fourteenth Amendment requirements of heightened reliability in the penalty determination. <u>Ford v. Wainwright</u>, 477 U.S. 399, 411, 414 (1986); <u>Beck v. Alabama</u>, 447 U.S. 625, 637 (1980).

The court's failure to designate aggravating and mitigating factors deprived Petitioner of federal constitutional rights. CALJIC No. 8.85 presents the jury with a list of factors but does not indicate which factors are aggravating and which are mitigating.

The failure to instruct Petitioner's jury clearly as to which factors could be mitigating only as well as to eliminate those clearly not presented for consideration all deprived Petitioner of federal constitutional rights to due process, an impartial jury, equal protection, and a reliable determination of penalty in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendment.

These errors are exacerbated here by the prosecutor's arguments, the jury's misconduct, and trial counsel's

ineffective assistance as presented herein and as will be further developed through these proceedings.

Petitioner was entitled to a reliable penalty determination. These errors denied him this. The writ should issue.

**CALJIC NO. 8.88, AS GIVEN HEREIN, VIOLATED PETITIONER'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

Petitioner's jury was instructed with CALJIC No. 8.88. In pertinent part, this instruction read as follows:

It is now your duty to determine which of the two penalties, death or confinement in the state prison for life without parole, shall be imposed on the defendant.

After having heard all the evidence, and after having heard and considered the arguments of counsel, you shall consider, take into account, and be guided by the applicable factors of aggravating and mitigating circumstances upon which you have been instructed.

An aggravating factor is any fact, condition, or event attending the commission of a crime which increases its guilt or enormity, or adds to its injurious consequences which is above and beyond the elements of the crime itself.

A mitigating circumstance is any fact, condition or event which as such does not

constitute a justification or excuse for the crime in question, but may be considered as an extenuating circumstance in determining the appropriateness of the death penalty.

The weighing of aggravating and mitigating circumstances does not mean a mere mechanical counting of factors on each side of an imaginary scale, or the arbitrary assignment of weights to any of them. You are free to assign whatever moral or sympathetic value you deem appropriate to each and all of the various factors you are permitted to consider.

In weighing the various circumstances you determine under the relevant evidence which penalty is justified and appropriate by considering the totality of the mitigating circumstances with the totality of the aggravating circumstances.

To return a judgment of death, each of you must be persuaded that the aggravating circumstances are so substantial in comparison with the mitigating circumstances that it warrants death instead of life without possibility of parole.

(CALJIC No. 8.88; CT 629-30; RT 3962-63)

This instruction violated Petitioner's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the federal constitution. The instruction was defective in a number of respects. First, the instruction was vague and

imprecise, failed to accurately describe the weighing process the jury must apply in capital cases, and deprived Petitioner of the individualized consideration the Eighth Amendment requires. Second, the instruction contradicted the requirements of PC § 190.3 by indicating that a death judgment could be returned if the aggravating circumstances were merely "substantial" when compared to mitigating circumstances, thus permitting the jury to impose death even if it found mitigating circumstances outweighed aggravating circumstances. The instruction was therefore improperly weighted toward death. Third, the instruction effectively informed the jury that a single mitigating factor was not sufficient to prevent imposition of the death penalty.[13] The instruction's definition of mitigating circumstances was further defective in that it failed to inform the jury of the full scope of evidence which may be considered in mitigation. See Lockett v. Ohio, 438 U.S. 586 (1978). The instruction also misled the jury by failing to provide the jury with a definition of the legal term "life without the possibility of parole."

CALJIC No. 8.88 also improperly modified the prosecution's burden of proof under California law. Penal Code § 190.3 states that after considering aggravating and mitigating factors, the jury "shall impose" a sentence of confinement in state prison for a term of life without the

---

[13]    This component alone violates Lockett v. Ohio, 438 U.S. 586 (1978).

possibility of parole if "the mitigating circumstances outweigh the aggravating circumstances." PC § 190.3.[14]    The United States Supreme Court has held that this mandatory language is consistent with the individualized consideration of the defendant's circumstances required under the Eighth Amendment. <u>Boyde v. California</u>, 494 U.S. 370, 377 (1990).

However, this mandatory language is not included in CALJIC No. 8.88. Instead, the instruction informs the jury merely that the death penalty may be imposed if aggravating circumstances are "so substantial" in comparison to mitigating circumstances that the death penalty is warranted. The word "substantial" means only "of or having substance." Webster's New World Dictionary (3d College ed. 1989) 1336. Although the word carries with it the connotations "considerable," "ample," and "large," <u>id.</u>, it neither means nor suggests "outweigh." The instruction therefore fails to conform to the requirements of Penal Code § 190.3. The instruction by its terms would plainly permit, if not outright direct, the imposition of a death sentence whenever aggravating circumstances were merely "of substance" or "considerable," even if the jury felt they were outweighed by mitigating circumstances. By failing to conform to the specific mandate of Penal Code § 190.3, the

---

[14]    It bears note the California Supreme Court has recognized that the statute's provision that if aggravating circumstances outweigh mitigation circumstances, the jury "shall impose" a sentence of death is impermissible. <u>People v. Brown</u>, 40 Cal.3d 512, 544 n. 17 (1985).

1  instruction violates the Fourteenth Amendment. <u>Hicks v.</u>
2  <u>Oklahoma</u>, 447 U.S. 343, 346-347 (1980).

3     In addition, the instruction improperly reduced the
4  prosecution's burden of proof below that required by the
5  applicable statute. An instructional error which
6  incorrectly describes the burden of proof, and thus
7  "vitiates all the jury's findings," can never be shown to
8  be harmless. <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 281
9  (1993)(emphasis in original).

10    The instruction incorrectly described the weighing
11 process applicable to aggravating and mitigating evidence
12 under California law.

13    The instruction incorrectly explained the weighing
14 process required by California law in a number of other
15 respects. For example, the instruction was defective
16 because it improperly suggested that a quantitative
17 comparison of the "totality" of mitigating factors was
18 required. Yet, the California Supreme Court has indicated
19 that one mitigating factor, standing alone, may be
20 sufficient to outweigh all other factors. <u>People v. Grant</u>,
21 45 Cal.3d 829, 857, n. 5 (1988); <u>People v. Hayes</u>, 52 Cal.3d
22 577, 642 (1990); <u>People v. Cooper</u>, 53 Cal.3d 771, 845
23 (1991). The language of CALJIC No. 8.88 not only failed to
24 communicate this important concept to the jury but also
25 suggested that the jury was required to consider the
26 "totality" of the mitigating circumstances and balance them
27 against the "totality" of the aggravating circumstances.

28                    Page -74-

This was prejudicial because, in the absence of qualitative consideration, this quantitative formula could weigh the scales in favor of a judgment of death, thereby depriving Petitioner of the individualized consideration guaranteed him by the Eighth Amendment to the United States Constitution. Stringer v. Black, 503 U.S. 222, 231-232 (1992).

Under California law, a trial court has a sua sponte duty to correctly instruct the jury on the general principles of law governing the case before it. People v. Hernandez, 47 Cal.3d 315, 353 (1988); People v. Avalos, 37 Cal.3d 216, 229 (1984). The trial court's failure to comply with so basic a premise, guaranteed by state, is cognizable here as a deprivation of a liberty interest. Hicks v. Oklahoma, 447 U.S. 343 (1980).

The instruction also is defective and death-oriented because it fails to adequately describe or define the penalty of life without the possibility of parole. This technical term is commonly misunderstood by lay persons and jurors, such that the trial court was obliged to define it.[15] The trial court had a sua sponte duty to define terms which have a "technical meaning peculiar to the law." People v. McElheny, 137 Cal.App.3d 396 (1982). Its failure to do so

---

[15] In fact, here the record shows the jury actually misunderstood the term and a discussion ensued during jury deliberations that Petitioner could receive a sentence of life without the possibility of parole and yet be released from prison. (CT 722-27) See also Claim 3.

denied Petitioner his federal constitutional right to have the jury decide every material issue presented by the evidence.  People v. Reynolds, 205 Cal.App.3d 775, 779 (1988), citing People v. Mayberry, 15 Cal.3d 143, 157 (1975).  The error also deprived Petitioner his rights to a reliable determination of penalty under the Eighth Amendment and his right to due process of law under the Fourteenth Amendment.

Current academic research shows that many jurors, perhaps as many as half, do not understand that the sentencing alternative of life without parole actually means no possibility of parole.  See, e.g., Bowers, Research on the Death Penalty: Research Note (1993) 27 Law & Society Rev. 157, 170; see also, Simmons v. South Carolina, 512 U.S. 154, 169-170 and n. 9 (1994).  Media accounts and pervasive mistrust of the criminal justice system have resulted in a widespread believe that a sentence of  "life without parole" does not really mean the defendant will spend the rest of his life in prison. Id.  Indeed, the United States Supreme Court reversed a South Carolina death sentence on the grounds that the trial court refused to give a parole ineligibility instruction requested by the defense. Shafer v. South Carolina, 532 U.S. 36 (2001).  The court stated that where "[d]isplacement of 'the longstanding practice of parole availability' remains a relatively recent development, . . . 'common sense tells us that many jurors might not know whether a life sentence carries with it the

possibility of parole.'" <u>Id</u>.

Here the danger that Petitioner's jury would share this common misunderstanding ripened into reality. As addressed in Claim 3 at least some jurors believed that even with a sentence of life without possibility of parole, there was a significant chance that Petitioner would be released from prison. They believed that if he were sentenced to death, there was a lesser chance that he would eventually be released. This shows that the lack of a jury instruction defining clearly that life without possibility of parole meant exactly that was harmful to Petitioner.

The instruction given was further defective in its description of mitigation. As noted above, the instruction stated that "[a] mitigating circumstance is any fact, condition or event which as such does not constitute a justification or excuse for the crime in question, but may be considered as an extenuating circumstance in determining the appropriateness of the death penalty." This definition of mitigation failed to inform the jury of the full scope of evidence that may be considered in determining the appropriate sentence and was reasonably likely to be understood as a limitation on mitigating evidence.

The definition of mitigation given in this case, with its focus limited to "the crime in question," was substantially likely to have been understood as limiting the jury's consideration solely to the circumstances of the crime, in violation of the federal constitution. <u>Lockett</u>

v. Ohio, 438 U.S. 586 (1978).    Numerous authorities have noted the importance of mitigation evidence which is wholly unrelated to the crime. See e.g., Williams v. Taylor, 529 U.S. 362, 398 (2000)(defendant's childhood "filled with abuse and privation, or reality that he was 'borderline mentally retarded'" may influence jury's determination of moral culpability); Lambright v. Stewart, 241 F.3d 1201, 1208 (9th Cir. 2001)("Evidence of mental disabilities or a tragic childhood can affect a sentencing determination even in the most savage case.").

The trial court's failure to provide the jury with adequate instructions on this critical concept undermined the reliability of the ensuing death judgment, failed to properly channel the jury's decision-making process, and effectively eliminated from consideration relevant mitigating evidence. (U.S. Const., Amends. V, VI, VIII, and XIV.

It is fundamental that a "risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty . . . is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments." Lockett v. Ohio, 438 U.S. 586, 605 (1978).    The numerous errors in this instruction improperly impaired, all to Petitioner's disadvantage, the jury's freedom to assess whether life without the possibility of parole or death was the proper verdict to reach in this case. On these facts and record, especially given the closeness of the penalty

Page -78-

determination, these errors render infirm the judgment of death.  <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967).

Accordingly, for each and all of these reasons, individually and in unison, the writ should issue.

<u>Respondent's Answer</u>

Respondent relies heavily on <u>Tuilaepa v. California</u>, 512 U.S. 967 (1994), for his position that Petitioner's claim fails.  Petitioner acknowledged <u>Tuilaepa</u> in his petition, and yet stands by his claim that, on these facts, the alleged constitutional violations nonetheless occurred and error resulted.

In addition, Petitioner noted in his petition that <u>Lockett v. Ohio</u>, 438 U.S. 586 (1978) supports his argument that the instructions given his sentencing jury were constitutionally defective.

Observing Petitioner failed to cite to pin-point portion of <u>Lockett</u>, Respondent argues the authority does not control here.  Petitioner disagrees, <u>Lockett</u> does apply here, and it fully supports this claim.

<u>Lockett</u> has been bedrock capital punishment law for almost forty (40) years, it did not seem it would require extensive discussion.  If this was an unwarranted assumption, Petitioner now clarifies.

As Chief Justice Burger wrote in his majority opinion,

"The States now deserve the clearest guidance that the Court can provide. . . and we conclude that the Eighth and Fourteenth Amendments require

Page  -79-

that the sentencer, in all but the rarest kind of
capital case, not be precluded from considering, <u>as
a mitigating factor</u>, any aspect of a defendant's
character or record and any of the circumstances of
the offense that the defendant proffers as a basis
for  a sentence less than death."

<u>Lockett</u>, at 602-04 (emphasis in original) That the Chief
Justice himself elected to emphasize such evidence could be
used as <u>mitigation evidence</u> buttresses Petitioner's claim,
and notwithstanding <u>Tuilaepa</u>, <u>Lockett</u> remains good law.

The Chief Justice went on:

"There is no perfect procedure for deciding in
which cases governmental authority should be used
to impose death.  But, a statute that prevents the
sentencer in all capital cases from giving
independent mitigating weight to aspects of the
defendant's character and record and to
circumstances of the offense proffered in
mitigation creates the risk that the death penalty
will be imposed in spite of factors which may call
for a less severe penalty.  <u>When the choice is
between life and death, that risk is unacceptable
and incompatible with the commands of the Eighth
and Fourteenth Amendments</u>.

<u>Lockett</u>, at 605. (emphasis added)

Petitioner renews his allegations, the instructions
given his sentencing jury violate federal capital case law,

1    and his sentence is infirm as a result.

2        When granted discovery and an evidentiary hearing on

3    this and Claim 3, Petitioner will be able to show his

4    entitlement to relief on each and both of these claims.

5

6        **Claim Five**

7        This claim avers as follows.

8    **CALIFORNIA'S DEATH PENALTY SCHEME VIOLATES THE FEDERAL
     CONSTITUTION IN HOW AND WHAT IT ALLOWS JURIES TO USE AS**

9    **EVIDENCE IN AGGRAVATION.**

10       Petitioner herein alleges that his sentence of death is

11   a violation of the Eighth Amendment in that it is the result

12   of a defective definition of what constitutes evidence in

13   aggravation for purposes of guiding a capital sentencing

14   jury in California, compounded by erroneous rulings by the

15   trial court regarding  such evidence. The result of these

16   flaws is a capital sentence that violates federal

17   constitutional law.

18       This claim has two principal components, each of which

19   assesses a particular defect, each having to do with

20   evidence presented to or considered by the jury in

21   aggravation, and individually and in unison they render the

22   sentence defective as a matter of federal constitutional

23   law:

24       (A) The trial court's refusal to instruct the
         sentencing jury that under California law that it
25       had to find unanimously that an aggravating act had
         been committed, and said act had to reflect an
26       actual or implied threat of force and violence.
         (infra)

27

28                              Page -81-

(B) The trial court's decision to permit the prosecution to introduce evidence of simple possession of a firearm as a qualifying act in aggravation under California Penal Code § 190.3(b). (infra)

Individually as well as in unison, these defects in the proceedings render Petitioner's death sentence a violation of federal law and the writ should be granted.

**THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY THAT, BEFORE CONSIDERING A FACTOR IN AGGRAVATION, IT MUST UNANIMOUSLY FIND BOTH THAT THE DEFENDANT COMMITTED THE ACT IN AGGRAVATION AND THE ACT CONSTITUTED AN IMPLIED THREAT OF FORCE OR VIOLENCE.**

Background

At the jury instruction conference during the penalty phase, Petitioner's counsel asked the court for several modifications to CALJIC 8.87. (RT 3855-57) The court rejected the defense requests, holding that there is no requirement a capital sentencing jury unanimously agree that the act in aggravation was committed. (RT 3856-58) The court then instructed the jury with CALJIC No. 8.87.

Initially, Petitioner's counsel did not request that to consider an incident in aggravation, the jury had to unanimously agree both that it occurred and that it constituted an implied threat of force or violence.

However, after deliberations had commenced, the jury made the following inquiry:

We the jury . . . request:

1. Did both attorneys stipulate to the fact that the defendant was one, convicted of the act of

carrying a concealed firearm upon the person and, two, carrying a loaded firearm on the person while in a public place which involved <u>the implied use of force or violence</u>?

(RT 4014) The jury underlined the term "implied use of force or violence." <u>Id</u>.

The record shows that the trial court responded:

First with respect to your first question, during the course of this trial neither attorney formally stipulated that the defendant was convicted of the act of carrying a concealed firearm upon the person or that the defendant was convicted of carrying a loaded firearm on a person while in public place. The alleged conduct of the defendant's carrying a concealed firearm upon the person and carrying a loaded firearm on the person while in public place was a subject of testimony received at the penalty phase of these proceedings from Officer Rand Monda of the Oakland Police Department, and in addition was the subject of testimony by the defendant Ernest Dykes on cross-examination by Mr. Carmine during the guilt phase of these proceedings.

The weight and significance to be attached to such testimony are exclusively matters for your determination. By your underlining the phrase in your note which reads, and I'm quoting, which

Page -83-

1    involved the implied use of force or violence, end
2    quote, I assume that you wish the court to respond
3    in some fashion to this particular phrase as it is
4    used in the instructions.  As I have just indicated
5    there was no formal stipulation entered into by the
6    attorneys on the subject although the alleged
7    conduct itself was the subject of the testimony to
8    which I have just referred.

9         Whether the conduct involved the implied use
10   of force or violence is also exclusively a matter
11   for your determination.
12 (RT 4015-16)

13   Petitioner's counsel thereupon requested the court to
14 clarify for the jury that it must find beyond a reasonable
15 doubt the alleged act of possession of the concealed, loaded
16 weapon was an act involving the implied use of force or
17 violence.    (RT 4020-21) Petitioner's counsel further
18 objected to the instruction as given since it did not
19 require the jury to find beyond a reasonable doubt both that
20 the incident occurred and that the incident involved the
21 implied use of force or violence.   (RT 4020-21)  He also
22 argued that the prior instruction regarding the gun
23 possession should have required the jury to find the
24 possession beyond a reasonable doubt.   Id.

25   The court refused to give Petitioner's requested jury
26 instruction.  Nor did the court instruct the jury any such
27 finding must be unanimous.  Thus the jury was not reminded

28                          Page  -84-

that its findings on aggravating circumstances must be made beyond a reasonable doubt. (RT 4020) Nor was the jury instructed that it had to be unanimous in its finding. (RT 3855)

Indeed, the court further failed to require even that a simple majority of jurors agree on any particular aggravating factor, let alone agree whether any particular combination of aggravating factors might warrant the sentence of death. (See RT 3856-58) As a consequence, this record is deficient regarding how the jury operated and whether its judgment was structured in compliance with federal constitutional tenets.

This is deficient for the same reason addressed by the plurality opinion in <u>Schad v. Arizona</u>, 501 U.S. 624, 632-633 (1991)(plur. opn. of Souter, J.). With nothing to guide its decision, there is nothing to suggest the jury imposed a death sentence based on any form of agreement regarding the reasons for the sentence. Petitioner requested this clarification be given to his jury when it demonstrated it was foundering on the point; the trial court's refusal to do so warrants relief from this Court.

<u>Respondent's Answer</u>

Although Respondent is disturbed by trial counsel's inconsistent positions during this portion of the proceedings, none of this needs to detain the Court. Respondent concedes this claim was presented to, and

received a merits ruling from, the California Supreme Court. Answer, at 109.

The specific factual inquiry presented by Petitioner's jury shows how important this issue was, and demonstrates why the California Supreme Court's ruling was an unreasonable application of federal law to these facts. It is clear from the jury's note, and the trial court's response to that note, that the phrase "implied use of force or violence" was of concern to the sentencing jury.

The California Supreme Court failed to recognize the weightiness of the issue, and its misapplication of and failure to apply reasonably prevailing federal case law, and in particular U.S. Supreme Court case law, is why relief on this claim is properly available to Petitioner.   In so alleging, Petitioner continues to rely, <u>inter alia</u>, on <u>Schad v. Arizona</u>, 501 U.S. 624, 632-33 (1991).   There the Supreme Court, by Justice Souter, noted the following core assumption of this nation's system of criminal justice.

"The axiomatic requirement of due process that a statute may not forbid conduct in terms so vague that people of common intelligence would be relegated to differing guesses about its meaning, <u>see</u> <u>Lanzetta v. New Jersey</u>, 306 U.S. 451, 453 (1939)(citing <u>Connally v. General Construction Co</u>., 269 U.S. 385, 391 (1926), carries the practical consequence that a defendant charged under a valid statute will be in a position to understand with

some specificity the legal basis of the charge
against him.   Thus it is an assumption of our
system of criminal justice 'so rooted in the
traditions and conscience of our people as to be
ranked fundamental,' <u>Speiser v. Randall</u>, 357 U.S.
513, 523 (1958)(quoting <u>Snyder v. Massachusetts</u>,
291 U.S. 97 (1934), that no person may be punished
criminally save upon proof of some specific illegal
conduct.

<u>Schad</u>, at 632-33.

**CALIFORNIA LAW VIOLATES THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BY FAILING TO REQUIRE UNANIMOUS JURY AGREEMENT ON AGGRAVATING FACTORS**

Petitioner understands the California Supreme Court "has held that unanimity with respect to aggravating factors is not required by statute or as a constitutional procedural safeguard." <u>People v. Taylor</u>, 52 Cal.3d 719, 749 (1990); <u>accord</u> <u>People v. Bolin</u>, 18 Cal.4th 297, 335-336 (1998). It was consistent with this construction of California's capital sentencing scheme that the trial court refused to provide an instruction requiring jury agreement or unanimity on any particular aggravating factor. The instructions did not even require that a majority of jurors agree on any particular aggravating factor nor that any particular combination of aggravating factors warranted the sentence of death. Petitioner respectfully notes this is a deficient scheme, failing to guide the sentencer adequately in its task, and indeed allowing a sentence to rest on inconsistent

findings within the jury.

For each and all of these reasons, the sentence of death violates the Sixth, Eighth and Fourteenth Amendments. See e.g., <u>Murray's Lessee v. Hoboken Land and Improvement Co.</u>, 59 U.S. (18 How) 272 (1855); <u>Griffin v. United States</u>, 502 U.S. 46, 51 (1991).

California's judicial interpretation of its capital sentencing structure as not requiring unanimity of the jury on whether a given aggravating factor has been proven beyond reasonable doubt places the state in a distinct minority of the states. Of the twenty-two (22) states that vest responsibility for death penalty sentencing on the jury, fourteen (14) require unanimity within the jury as to proof of specific factors in aggravation.[16]

California's lack of a unanimity requirement violates the Due Process Clause of the Fourteenth Amendment and the jury trial guarantees of the Sixth Amendment, which mandate that all of the findings prerequisite to a sentence of death must be made beyond a reasonable doubt by a unanimous jury.

---

[16]    See Ark. Code Ann. § 5-4-603(a) (Michie 1993); Colo. Rev. Stat. Ann. § 16-11-103(2) (West 1992); Ill. Ann. Stat. ch. 38, para. 9-1(g) (Smith-Hurd 1992); La. Code Crim. Proc. Ann. art. 905.6 (West 1993); Md. Ann. Code art. 27, § 413(i) (1993); Miss. Code Ann. § 99-19-103 (1992); N.H. Rev. Stat. Ann. § 630:5(IV) (1992); N.M. Stat. Ann. § 31-20A-3 (Michie 1990); Okla. Stat. Ann. tit. 21, § 701.11 (West 1993); 42 Pa. Cons. Stat. Ann. § 9711(c)(1)(iv) (1982); S.C. Code Ann. § 16-3-20(C) (Law. Co-op. 1992); Tenn. Code Ann. § 39-13-204(g) (1993); Tex. Crim. Proc. Code Ann. § 37.071 (West 1993). In addition, New Jersey requires unanimity by case law. State v. Bey II (N.J. 1988) 548 A.2d 887, 112 N.J. 123, 159.

Ring v. Arizona, 536 U.S. 584 (2002); Apprendi v. New Jersey, 530 U.S. 466 (2000).

In Apprendi, the Supreme Court held that a state may not impose a sentence greater than that authorized by the jury's verdict of guilt, unless the facts supporting an increased sentence (other than a prior conviction) are submitted to the jury and proved beyond a reasonable doubt. Id. at 489. Under California's capital sentencing scheme, a death sentence may not be imposed absent findings (1) that one or more aggravating factors exist and (2) the aggravating factor or factors outweigh any mitigating factors. (Penal Code § 190.3) In Ring v. Arizona, the Supreme Court made clear that the principles of Apprendi apply to findings necessary to impose a death sentence. Accordingly, under Ring and Apprendi, it should be clear the existence of any aggravating factors relied upon to impose a death sentence must be found beyond a reasonable doubt by a unanimous jury.

The failure to require unanimity before evidence could be weighed as aggravating violated the Sixth, Eighth and Fourteenth Amendments.

The Supreme Court has pointed out that the penalty phase of a capital case "has the 'hallmarks' of a trial" on guilt or innocence." Monge v. California, 524 U.S. 721, 726 (1998); Strickland v. Washington, 466 U.S. 668, 686-687 (1984); Bullington v. Missouri, 451 U.S. 430, 439 (1981). While the unadjudicated offenses are not the only offenses

for which the defendant is being tried, that trial-within-a-trial often plays a dispositive role in determining whether death, the "penalty . . . unique 'in both its severity and its finality,'" is imposed. <u>Monge v. California</u>, at 732 (quoting <u>Gardner v. Florida</u>, 430 U.S. 349, 357 (1977).

The error is reversible per se, because it permitted the jury to return a death judgment without making the findings required by law. <u>See</u> <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 278-281 (1993); <u>United States v. Gaudin</u>, 515 U.S. 506, 522-523 (1995)(aff'g 28 F.3d at pp. 951-952).     In any event, given the difficulty of the penalty determination in this case, Respondent cannot show there is no beyond a reasonable doubt that the failure to instruct on the need for unanimity regarding aggravating circumstances did not contribute to the verdict of death. <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967); <u>Fahy v. Connecticut</u>, 375 U.S. 85, 86-87 (1963); <u>Satterwhite v. Texas</u>, 486 U.S. 253, 258-259 (1988); <u>Hitchcock v. Dugger</u>, 481 U.S. 393, 399 (1977) It cannot even be found that the error had "no effect" on the penalty verdict. <u>Caldwell v. Mississippi</u>, 472 U.S. 320, 341 (1985)  As a result, the penalty verdict must be set aside.

<u>Respondent's Answer</u>

Respondent contends this portion of the claim fails as, in his view, the California Supreme Court's denial was neither contrary to or an unreasonable application of Supreme Court precedent.  Answer, at 114.

The failure of the California Supreme Court to understand the import of these watershed new federal criminal law cases, all U.S. Supreme Court precedent, and their application to capital matters and no just California's determinate sentencing law, justifies Petitioner's contention that the California Supreme Court's decision denying him relief on this claim was indeed contrary to, as well as an unreasonable application of Supreme Court case law.

**THE ADMISSION OF EVIDENCE THAT PETITIONER WAS ARRESTED FOR POSSESSION OF A LOADED AND CONCEALED WEAPON VIOLATED THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

Before trial, the district attorney notified the defense he intended to present as evidence in aggravation that Petitioner had previously possessed a concealed and loaded firearm in a public place. (CT 231) The defense objected because the incident involved neither the use or threatened use of force or violence, nor the implied or threatened use of force or violence. (RT 219-21) The court nonetheless ruled that the evidence was admissible, stating that "someone who carries a loaded and concealed handgun is carrying a classical instrument of violence that is normally used only for criminal purposes." (RT 224) To so rule, the court concluded that the incident qualified under PC § 190.3(b) as involving an implied use or threat of force or violence. (RT 224-25)

The California Supreme Court held in _People v._

Michaels, 28 Cal.4th 486 (2002), that all incidents of illegal weapons possession were admissible as acts involving an implied threat of violence under § 190.3(b). California law, embodied in the Michaels decision and as seen in this case, now extends the scope of § 190.3(b) beyond that which is permitted under the Due Process Clause of the Fourteenth Amendment.  The California Supreme Court's expansion of the scope of evidence admissible under § 190.3(b) also aggravates the already significant risk of the arbitrary and capricious imposition of the death penalty, in violation of the Eighth Amendment.

Petitioner alleges this all violates his federal constitutional rights. Petitioner respectfully asks this Court to assess the tension between federal law and California law as stated in Michaels and as applied here. Upon doing so, and in consideration of the facts at issue herein, Petitioner respectfully submits this Court will be drawn to the conclusion it is appropriate to issue the writ.

In a capital case, the prosecution is entitled to introduce evidence regarding prior incidents involving the defendant's actual use of force or violence, or his threats to use force and violence, as well as incidents which involve an implied threat of violence.  (Pen. Code § 190.3(b))  State law makes clear evidence of threats alone are not admissible.  See People v. Boyd, 38 Cal.3d

762, 774-776 (1985).   While in certain circumstances the possession of weapons has been seen to permissibly constitute an incident involving an implied use or threat of violence or force, under Eighth Amendment jurisprudence this has not been true for all instances of illegal weapons possession.   Rather, whether illegal weapon possession constitutes an implied threat of force or violence turned on the individual circumstances of the case.   The admission of weapons possession had been admitted under § 190.2(b) when the weapons were possessed in jail or prison, e.g., People v. Hughes, 27 Cal.4th 287 (2002); People v. Quartermain, 16 Cal.4th 600, 631-32 (1997); People v. Williams, 16 Cal.4th 153, 238 (1997); People v. Ramos, 15 Cal.4th 1133 (1997); People v. Hines, 15 Cal.4th 997, 1057 (1997); and People v. Ramirez, 50 Cal.3d 1158, 1186-87 (1990).   It had also been held admissible when the evidence permitted "an inference that the defendant possessed a dangerous weapon with the purpose of using it to avoid apprehension and successfully escape the scene of a crime." People v. Smithey, 20 Cal.4th 936, 993 (1999).   See also People v. Clair, 2 Cal.4th 629, 676-77 (1992)(defendant came to crime scene equipped with screwdriver and took up knife while committing burglary, but cast it away at last minute); People v. Jackson, 13 Cal.4th 1164, 1235-36 (1996) (defendant armed himself after escaping from custody); People v. Grant, 45 Cal.3d 829, 851

(1988)(evidence that while in jail the defendant possessed a prison-made weapon and made provocative threats to deputy admissible under § 190.2(b)); cf. People v. Belmontes, 45 Cal.3d 744, 809 (1988)(defendant's prior act of motioning to a handgun at his side and stating to a friend that it was all the protection that he needed was inadmissible).

This was all true until the California Supreme Court issued its decision in People v. Michaels, 28 Cal.4th 486 (2002). There that court extended its reasoning to the mere possession of a loaded or concealed weapon. The decision is in tension with federal law as it violates the due process clause of the Fourteenth Amendment and the prohibition against the arbitrary and capricious imposition of the death penalty under the Eighth Amendment.

It bears observation that in this Nation generally an individual may lawfully possess a firearm. U.S. Const. Amend. II. Petitioner's possession of the firearm during the incident in question was unlawful simply because he was carrying a loaded and concealed weapon.[17] He did not threaten or menace anyone with the weapon, and he was not prohibited from possessing a firearm. Given the vitality

---

[17]    Demonstrating the randomness of California's death penalty scheme, if Petitioner had possessed a carry permit for the gun there would have been no violation of law for his exact same conduct. The point is even more acute when looked at from a national perspective which, at best is uneven.

of the Second Amendment, and the United States Solicitor General's position that the Second Amendment protects an individual's right to bear arms, it is doubtful that federal law can be reconciled with the premise that the mere carrying of a firearm constitutes an implied threat of force or violence.  See <u>Haney v. United States</u>, No. 01-8272, Brief in Opposition of the United States.  The fact that in California such carrying is unlawful and constitutes a misdemeanor, does not, as a matter of federal law, transform the conduct from one of innate self-protection into a threat against others.

The court erred in admitting the incident of gun possession as aggravation evidence in this case.  The incident merely involved Petitioner's possession of a loaded and concealed handgun. When stopped by police officer, Petitioner immediately relinquished the weapon by placing it on top of the police car, albeit in his glove.  Petitioner never motioned to the weapon, did not confront the police officer, did not reach for the weapon, and indeed did not threaten the officer in any way.  While possession of a loaded and concealed handgun is illegal, this conduct, by itself, does not constitute an implied threat of force, at least in the context of the other facts surrounding Petitioner's arrest and particularly not for use in a capital context as evidence in aggravation.

The prosecutor relied heavily on Petitioner's prior

arrest involving this conduct to argue that he was a dangerous individual for whom lenient treatment had failed.  (RT 3887)   In particular, the prosecutor argued that even after he had been arrested for possession of a gun, Petitioner went out and got another one with deadly results.   The prosecutor used Petitioner's prior offense to argue that he was "well down the road of criminal age."  (RT 3887) Yet there was no other evidence before the jury of Petitioner engaging in other prior criminal conduct. The admission of this evidence was powerful and prejudicial.

Additionally, there is evidence that the jury directly relied on the prior offense in deciding to sentence Petitioner to death.   One juror cited directly to Petitioner's prior arrest for possessing the gun as reason enough to impose the death penalty.  (CT 676-77) Other jurors admitted that they believed that Petitioner had a more extensive criminal history than was presented at trial and based their penalty decision on this belief. See e.g., CT 666, 708-12, 721.

Even the trial judge cited this incident as a reason not to modify and reduce the sentence.  (CT 778-80)   The evidence regarding the possession of the handgun served to inflame the emotions of the jury resulting in the belief that Petitioner was a threat to society.

The admission of this evidence was particularly harmful to Petitioner because the case in aggravation

against him was not overwhelming.  Petitioner had no
other prior adult criminal history and if this incident
had not been admitted, the prosecutor would not have been
able to make the strident argument that Petitioner was a
man on whom leniency had been tried and failed.
Moreover, the circumstances of the offense were not so
unusually heinous that the death penalty was a foregone
conclusion.  This was after all a homicide that occurred
in the context of a robbery gone wrong, and where the
jury did not even find Petitioner to have acted with
premeditation.  It was undisputed that Petitioner did not
intend to kill Lance Clark, and the jury concluded that
he did not premeditate the attempted murder of Mrs.
Clark. Even the length of jury deliberations regarding
the penalty supports the premise that the introduction of
this evidence was not harmless.  People v. Cardenas, 31
Cal.3d 897, 907 (1982)(12 hours); People v. Rucker, 26
Cal.3d 368, 391 (1980)(9 hours); People v. Woodard, 23
Cal.3d 329, 341 (1979)(6 hours).

Given the nature and circumstances of the offense and
the lack of  other evidence in aggravation, the erroneous
admission of the gun incident was serious error and
justifies issuance of the writ.

Respondent's Answer

Respondent misreads Petitioner's analysis of
California state law as meaning this claim is premised
upon an error of state law, a premise that Petitioner

1  agrees is prohibited by Estelle v. McGuire, 502 U.S. 62,

2  67 (1991).

3     Petitioner's discussion of California state law is to

4  provided to show the background against which the

5  unlawful denial of a liberty interest is to be evaluated.

6   And admission of this evidence was not merely an

7  evidentiary misstep, in the overall context of this

8  prosecution, on this minimal quantum of proof and

9  otherwise lack of evidence in aggravation, this

10 evidentiary ruling did amount to a federally prohibited

11 denial of a state created liberty interest.

12    For this reason, Petitioner avers anew that the

13 California Supreme Court's ruling denying relief does

14 indeed constitute a ruling that is contrary to or

15 unreasonable application of Supreme Court case law.

16    Relief should be granted.

17

18 **Claim Six**

19    This claim avers as follows.

20 **THE JURY SPECULATED REGARDING MATTERS ABOUT WHICH**
**EVIDENCE HAD NOT BEEN PRESENTED BECAUSE THE TRIAL COURT**
21 **REFUSED TO INSTRUCT IT NOT TO DO SO.**

22    Prior to submitting the penalty phase case to the

23 jury, defense counsel requested modifications to

24 instructions, to wit:

25     I do have a request, on page 2, the third

26     paragraph reads, "you must neither be influenced

27     by bias nor prejudice against the defendant, nor

28                    Page -98-

swayed by public opinion or public feelings.
Both the defendant" - "the people and the
defendant have a right to expect that you will
consider all of the evidence, follow the law,
exercise your discretion conscientiously, and
reach a just verdict."

I would like to add a sentences [sic] to
that, probably between public feeling and both,
that you are to reach your verdict based upon the
evidence, and should not either speculate, you
know, not be subject to either speculation or
conjecture, 'cause clearly it's the law in the
state of California that they can't speculate or
conject, but are only supposed to use the
evidence as it's been presented to them.  That
was - conjecture, for some reason, got left out
of this instruction when they went over to
capital.  And I believe that to be a fair
statement of the law.

(RT 3863-64)

The court expressed concern that such an instruction
might conflict with part of No. 8.88 which permits the
jury to assign "whatever moral or sympathetic value you
deem appropriate to each and all of the various factors."
Petitioner's counsel disagreed, persisting in the
request.  (RT 3865)  He explained:

"All I'm telling them is that they have to

operate on evidence, they can't operate on mere
conjecture or guessnot or whatnot, they have to
deal with evidence.

Then the next section tells them how to
consider the evidence, they may assign to it
whatever moral or sympathetic value they want
to."

(RT 3866)

The court rejected Petitioner's request and gave the
instructions as worded.  (RT 3867)

After the court addressed some other matters, defense
counsel renewed his request, asking the court to give a
special instruction telling the jury they are not allowed
to decide the case by "either speculation or conjecture.
I feel very strongly that this is a principle which is,
in fact, embodied in the California law."  (RT 3870)  The
court denied the request.  Id.  The trial court erred
under both federal and state law.  Petitioner's
subsequent death sentence is a violation of federal
constitutional and this Court should grant the writ of
habeas corpus requested herein.

It is a fundamental principle of law that jury
decisions are to be based on the evidence presented to
it, not on speculation or conjecture regarding matters
outside the record.  This is particularly true in capital
cases.  Although juries are permitted to consider almost
any matter in mitigation, and are free to assign whatever

moral weight to a particular matter they see fit, juries are precluded from exploring matters outside the evidence presented to it.[18]

The Supreme Court has outlined procedures designed to preclude sentencers from being given "unbridled discretion in determining the fates of those charged with capital offenses." California v. Brown, supra, 479 U.S. at 541. Thus, a jury instruction directing jurors not to speculate or to make the penalty determination based on speculation or conjecture is a correct statement of the law. Such an instruction is appropriate because it reminds the jury that it is not to speculate regarding matters such as whether the defendant has a more extensive criminal record than was presented at trial, or any other matters regarding the defendant's character as to which evidence was not presented.

In this case we now know the jury speculated that Petitioner had an additional and more extensive criminal record than was presented in evidence, as well as that a sentence of life without possibility of parole did not

_____

[18]    For example, in California juries are routinely instructed not to conduct experiments relating to evidence and are forbidden from visiting crime scenes on their own. CALJIC 1.03.    Jurors are precluded from consulting with outside experts, People v. Honeycutt, 20 Cal.3d 150, 157-58 (1977), and may not consult outside source materials such as dictionaries to learn the definition of particular legal terms.    People v. Karis, 46 Cal.3d 612, 642 (1988).    See generally    In    re    Malone,    12    Cal.4th    935,    963-64 (1996)(presumption    of    prejudice    when    juror    commits misconduct by going outside the evidence presented).

really mean Petitioner would stay in prison.  Even at the time of trial we also had reason to know the jury was being invited by the prosecution to speculate as to Petitioner's upbringing and the nature and character of his family and support systems. This all renders the ensuing death sentence a violation of Eighth Amendment principles.

The trial court's decision was not even consistent with prior California Supreme Court decisions. In <u>People v. Mickey</u>, 54 Cal.3d 612, 695, (1991), <u>cert</u>. <u>denied</u>, 506 U.S. 819 (1992),  the state court upheld an instruction similar to the one requested here.  There, the trial court had instructed: "You may consider pity, sympathy or mercy in deciding the appropriate punishment; however, you should not be governed by mere  conjecture, prejudice or public opinion."  <u>Accord</u> <u>People v. Gonzalez</u>, 51 Cal.3d 1179, 1225 (1990), <u>cert</u>. <u>denied</u>, 502 U.S. 835 (1991) The instruction requested here did not even call for the jury to consider pity or sympathy, rather it merely asked the jury not to speculate regarding matters outside the record.  Thus, the instruction was an accurate statement of state law and should have been given by the trial court.

The error was significant as this record discloses jurors did in fact speculate about matters outside the record.  Post verdict interviews with jurors confirm that several jurors opined their suspicion that Petitioner had

a lengthy juvenile criminal history.   For example, juror

FC admitted in post-verdict interviews that she believed

and told other jurors that Petitioner likely had a

lengthy juvenile record, and that he had not just started

committing crimes. (CT 666-67, 722-27)   While during voir

dire, juror FC denied working for a lawyer with any

criminal practice; during deliberations, she informed

jurors that while working for a Fresno lawyer, she had

seen many people be sentenced to life without possibility

of parole and then be released.   (CT 722-27)   She did not

want to see Petitioner get out of prison.   The foreman of

the jury, RM, confirmed in a post-trial interview that

the jury speculated about Petitioner's probable

additional criminal history.   (CT 708-12)   He personally

stated that he did not believe the jurors had gotten the

full story regarding Petitioner's past criminal history.

(CT 676)   Similarly, juror Sandra Lucas "had the

impression this was not [Petitioner's] first crime. (CT

681-82, 717-21)

The speculation engaged in by these jurors, and the

speculation very likely engaged in by other jurors,

undoubtedly was evaluated in their decision to sentence

Petitioner to death.

The record presented to the state court established

the jury in fact speculated.   The trial court's refusal

to provide the requested instruction was prejudicial and

the writ should issue.

Respondent's Answer

Respondent essentially satisfies himself with an analysis that the trial court instructed the jury correctly, or in the alternative that no state error resulted from the trial court's refusal to instruct the jury as requested by trial counsel.    Answer, at 119-23. The California Supreme Court's ruling follows the same lines.

The problem, however, as the record before this Court shows, is that the instructions given to the jury failed to guide it appropriately when it considered extraneous material.    And the proof was before the state court, as it is also before this Court, that the sentencing jury did precisely this.

So even assuming arguendo Respondent's argument may have had some prima facie validity at the time the jury was instructed, we know the actual record that was presented to the California Supreme Court shows that error resulted in this matter, error that could have been avoided or cured if the requested instruction had been given.

On the evidentiary record already presented to the state court, and as will be amplified upon and presented to this Court if Petitioner is granted the discovery and evidentiary hearing this claim merits, will show that indeed the California Supreme Court's ruling denying relief on this claim is contrary to and an unreasonable

application of Supreme Court precedent.  Indeed, the decision is also erroneous since it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner should be granted discovery and an evidentiary hearing on this claim by this Court, at the conclusion of which it will be clear this claim properly merits federal habeas relief.

**Claim Seven**

This claim avers as follows.

**THE METHOD OF EXECUTION EMPLOYED IN CALIFORNIA VIOLATES THE FOURTEENTH AMENDMENT GUARANTEE OF PROCEDURAL DUE PROCESS AND THE EIGHTH AMENDMENT'S PROHIBITION UPON CRUEL AND UNUSUAL PUNISHMENT.**

In 1992, California added as an alternative means of execution "intravenous injection of a substance or substances in a lethal quantity sufficient to cause death by standards established under the direction of the Department of Corrections." Penal Code § 3604(a).  The 1992 legislation allowed the inmate to select either lethal gas or lethal injection, and provided that if the inmate made no selection, execution would be by lethal gas.  Previously, the only method of execution was lethal gas.

California's execution procedures violate the federal constitution in two respects.  First, the state has failed to comply with the statutory requirement that

standards for lethal injection be established by the Department of Corrections.  Pen. Code § 3604(a).  Second, Petitioner submits that both of the statutory methods of execution constitute cruel and unusual punishment in violation of Petitioner's rights under the Eighth Amendment.

**THE DEPARTMENT OF CORRECTIONS' FAILURE TO ADOPT THE REGULATIONS MANDATED BY PENAL CODE § 3604 VIOLATES PETITIONER'S RIGHT TO PROCEDURAL DUE PROCESS.**

The Fourteenth Amendment guarantees that no person will be deprived of life, liberty, or property without due process of law.  U.S. Const., Amend. XIV.  To establish a violation of the right to procedural due process, the complaining party must show: (1) a constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation.  <u>Bank of Jackson County v. Cherry</u>, 980 F.2d 1362, 1366 (11th Cir. 1993).  An inmate facing execution has a constitutionally protected interest in life that is not extinguished by his judgment and sentence.  <u>Ohio Adult Parole Authority v. Woodward</u>, 523 U.S. 272, 281, 288 (1998)

The state of California intends to deprive Petitioner of life and must accordingly do so in accordance with procedures which accord with the requirements of due process.  As the following discussion demonstrates, the

procedures adopted by the state were and are
constitutionally inadequate.

When a statute requires a regulatory agency to adopt
standards to guide the performance of specified actions,
the agency's failure to adopt such standards or to comply
with the procedures required for adoption of standards
prior to taking those actions violates the guarantee of
procedural due process.  See e.g. Marshall v. Union Oil,
616 F.2d 1113, 1116 (9th Cir. 1980).  In California, all
regulations and other standards of general application
employed by a governmental agency must be adopted
pursuant to the procedures set forth in the state
Administrative Procedures Act (hereinafter, "the Act."
Gov't Code § 11342(g).  The Act mandates that rigorous
procedures be observed prior to the adoption of
regulations, including public notice and hearings, legal
review, and a public comment period, followed by filing
of the regulation with the Secretary of State.  See e.g.
Gov't Code § 11346.4 et seq.  Rules adopted without
complying with the Act are invalid and may not be
enforced.  Gov't Code § 11340.5.

To Petitioner's knowledge, the Department of
Corrections has not complied with the mandate of section
3604(a) to establish standards for the administration of
lethal injections or with the provisions of the
Administrative Procedures Act.  The only regulation in
the California Code of Regulations which even mentions

the words "lethal injection" is 15 C.C.R. § 3349.   This
section merely sets forth the procedures and departmental
forms required for a Death Row inmate's request for
either lethal injection or lethal gas and therefore does
not comply with the requirements of § 3604(a).   The only
other information dealing with the subject which is
available from the Department of Corrections is a brief
document, dated March, 1996, which merely provides a
vague description of the Department's lethal injection
procedures.   The document, apparently a press release,
neither states the source of the information it contains
nor refers to any official regulations or rules.   In
pertinent part, this document states as follows:

> "The inmate is connected to a cardiac
> monitor which is connected to a printer outside
> the execution chamber. An IV is started in two
> usable veins and a flow of normal saline solution
> is administered at a slow rate. [One line is held
> in reserve in case of a blockage or malfunction
> in the other.] The door is closed. The warden
> issues the execution order.
>
> In advance of the execution, syringes containing the
following are prepared:
>
> - 5.0 grams of sodium pentothal in 20-25 cc of
diluent
> - 50 cc of pancuronium bromide
> - 50 cc of potassium chloride

Each chemical is lethal in the amounts administered.

At the warden's signal, sodium pentothal is administered, then the line is flushed with sterile normal saline solution. This is followed by pancuronium bromide, a saline flush, and finally, potassium chloride. As required by the California Penal Code, a physician is present to declare when death occurs." http://www.cdc.state.ca.us/issues/capital/capital4.htm; See Appendix 124, In re Carpenter, Petition for Habeas Corpus, S083246.

This document does not comply with the provisions of the Administrative Procedures Act. No notice appears to have been given to the public prior to its adoption, nor is Petitioner aware that any hearing or public comment period preceded its adoption either. The document does not appear to have been published or filed with the Secretary of State, nor does it appear to have been vetted by the Office of Administrative Law. In addition, the document itself does not even purport to be a regulation. By its own terms, it does not prescribe the procedures that must be used during an execution, but rather appears to describe for the press or public in general terms the procedures the department uses.

The foregoing document also fails to establish coherent standards for administering lethal injections. The document is extremely vague and general in its description. For example, it is not clear from the

document how far "in advance of the execution" the drugs
are prepared.  No physical restraints are described.  It
is not clear how many people are present, who these
people are, what qualifications they must have, or what
training they must have undergone.

Most significantly, the document does not define a
set of procedures that will ensure that a condemned
prisoner will be free from unnecessary suffering.  The
document's failure to prescribe even a minimal level of
training for the personnel involved in administering the
lethal injection raises a substantial and unnecessary
risk that the subject will undergo extreme pain and
suffering before and during his execution.  If
inadequately trained personnel improperly insert the
catheter, the chemicals may be inserted into Petitioner's
muscle or other tissue rather than directly into his
bloodstream, causing extreme pain in the form of a severe
burning sensation.  Furthermore, a failure to inject the
chemicals directly into the bloodstream will cause the
chemicals to be absorbed far more slowly, and the
intended effects will not occur. Improper insertion of
the catheter could also result in its failing out of the
vein, resulting in a failure to inject the intended dose.
There also is the risk that the catheter will rupture or
leak as pressure builds up during the administration of
the chemicals unless the catheter has adequate strength
and all the joints and connections are adequately

Page  -110-

reinforced.

The document does not mandate that a physician or other trained medical expert be present to render treatment or assistance to a prisoner in the event of an emergency; instead, the document mandates only that a physician be present to declare death.  In fact, medical doctors are prohibited from participating in executions pursuant to the ethical principles set forth in the Hippocratic Oath.  The American Nurses Association also forbids members from participating in executions.  This increases the chances of improper administration which could result in pain, an air embolism, the clotting of the catheter which would prevent injection, and heart failure.  Furthermore, the document sets out specific dosages of three drugs to be administered to all subjects, but different dosages affect different people in different ways, depending upon individual body weight, metabolism, and other medical conditions.  Accordingly, there is a risk that the listed dosages may be inadequate for the purposes for which they were selected, may result in unanticipated or inappropriate effects in a particular individual for medical or other reasons, and may inflict unnecessarily extreme pain and suffering.

The document also does not outline the proper guidelines for the storage or the handling of the chemicals involved. Improperly stored and/or handled chemicals may cause unnecessary suffering.  Sodium

pentothal wears off quickly; and if not enough is given, it may paralyze the muscles of the prisoner and render him incapable of breathing while still conscious, causing panic and an excruciatingly arduous death.

Plainly the procedures outlined in the document discussed above were not properly adopted as required by the statute and the Administrative Procedures Act.  They are constitutionally inadequate under the Fourteenth Amendment as a violation of Petitioner's right to procedural due process and also may not be enforced under state law. Gov't Code § 11340.5.

**CALIFORNIA'S LETHAL INJECTION PROCEDURE VIOLATES THE EIGHT AMENDMENT PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENTS.**

California's lethal injection also procedures violate the Eighth Amendment ban on cruel and unusual punishments.  The Eighth Amendment proscribes punishment that would inflict torture or a lingering death or involve the wanton infliction of pain.  In re Kemmler, 136 U.S. 436, 447 (1890); Gregg v. Georgia, 428 U.S. 153, 173 (1976); Hudson v. McMillian, 503 U.S. 1 (1992).   The Amendment embodies concepts of dignity, civilized standards, humanity and decency against which courts must evaluate penal measures. Estelle v. Gamble, 429 U.S. 97 (1976). It prohibits punishments that are incompatible with "evolving standards of decency that mark the progress of a maturing society." Trop v. Dulles, 356

U.S. 86, 101 (1958).  To discern the "evolving standards of decency," courts look to objective evidence of how society views a punishment today. <u>Coker v. Georgia</u>, 433 U.S. 584, 593-597 (1977); <u>Enmund v. Florida</u>, 458 U.S. 782, 788-796 (1982).  In essence, "no court would approve any method of implementation of the death sentence found to involve cruelty in light of presently available alternatives." <u>Furman v. Georgia</u>, 408 U.S. 238, 430 (1972).

Death by lethal gas has been ruled cruel and unusual punishment. <u>Fierro v. Gomez</u>, 865 F.Supp.1387 (N.D. Cal. 1994), aff'd, 77 F.3d 301, 309, vacated & remanded, 519 U.S. 918 (1996).  On October 15, 1996, the judgment of the Ninth Circuit was vacated in light of amendments to § 3604. <u>Gomez v. Fierro</u>, 519 U.S. 918 (1996).  In 1996, section 3604 was again amended, to provide that in default of an election by the inmate, the execution would be by lethal injection. However, lethal injection also results in precisely the kind of painful, agonizing, and lingering death which the Eighth Amendment prohibits. It should also be declared unconstitutional and the writ should issue.

The risk of prolonged administration of the lethal injection is increased by California's lack of comprehensive standards in defining the procedures. In <u>McKenzie v. Day</u>, 57 F.3d 1461, 1469 (9th Cir 1995), the Ninth Circuit held that execution by lethal injection

under the procedures which had been defined in Montana
was constitutional. The Court of Appeals explained that
those procedures passed constitutional muster because
they were "reasonably calculated to ensure a swift,
painless death." Id. Such a statement cannot be made
about the procedures in California. A swift, painless
death cannot be ensured without standards in place to
ensure that the lethal chemicals will be administered to
Petitioner in a competent, professional manner by someone
adequately trained to do so.

Similarly, in LaGrand v. Lewis, 883 F.Supp. 469
(D.Ariz. 1995), aff'd, 133 F.3d 1253 (9th Cir. 1998), the
district court upheld the written Internal Management
Procedures prescribing standards for the administration
of lethal injection because "they clearly indicate that
executions are to be conducted under the direction of the
ASPC-Florence Facility Health Administrator,
knowledgeable personnel are to be used, and the presence
of a physician is required." Such procedures are not
found in the California Code of Regulations or in the
document released by the California Department of
Corrections.

California's use of lethal injection in the
administration of the death penalty fails to protect
condemned prisoners from unnecessary pain and suffering,
violating the Eighth Amendment of the Constitution.
Accordingly, Petitioner's death sentence must be vacated,

Page -114-

the judgment must not be carried out.

Respondent's Answer

Respondent sees this as a claim that has been resolved, because in Respondent's view the problems alleged herein have all been resolved and their resolution is a matter of public knowledge. Respondent fails to understand the true gravamen of this claim.

Respondent may believe the promulgation of revised procedures has mooted out this claim. Petitioner disagrees.

Even more public and widespread than the amended procedures Respondent believes may have corrected any basis for a complaint are the media attention and international focus on the further deficiencies in execution protocols in the United States and California.

There is little point to an amendment to account for these changes, no matter how widespread the media attention. As the Answer in this case, and capital litigation in the federal courts in California generally readily show, any such modification would instantly meet with an objection of failure to exhaust. Rather than run that gamut, Petitioner is content to persist with the claim as presently exhausted, continue to pursue it despite any perception by the state court that it may be premature, in order to ensure that an appropriate place holder is there to avert the risk of some greater danger.

When the parties do agree this claim is fully ripe

for presentation, some amendments may become appropriate, but until then Petitioner respectfully rejects Respondent's urging that this claim is erroneous. By lethal injection, by expired or no longer available prescription medications, or any other such means as may become Respondent's approach to capital executions, Petitioner's fundamental point remains valid: California should properly be enjoined from executing Petitioner in a manner inconsistent with federal law.

**Claim Eight**

This claim has effectively been stayed, by operation of this Court's order of December 16, 2016.

### CONCLUSION

For the foregoing reasons and authorities cited, and respectfully incorporating herein by reference in toto the Petition filed in this matter, Petitioner prays that this Court:

Issue a Writ of Habeas Corpus to have Petitioner brought before this Court to be relieved of his unconstitutional and illegal sentence of death;

Grant Petitioner authority to obtain subpoenas without fee for witnesses and documents necessary to prove the facts alleged in the Petition and any amendments thereto;

Permit Petitioner to take discovery pursuant to the

Federal Rules of Civil Procedure and Rule 6 of the Rules

Governing Section 28 U.S.C. 2254 Proceedings;

Permit Petitioner a reasonable opportunity within which to amend his Petition to include such additional claims as may appear warranted during these proceedings and to fully investigate and develop the facts and law of any such claims;

Conduct an evidentiary hearing at which proof may be offered concerning the allegations in the Petition and any and all amendments thereto;

Once the parties and the Court have assembled the relevant records, evidence, and other fact-oriented materials, permit Petitioner leave of court to file a legal memorandum or brief in support of claims in the Petition and in opposition to any defenses raised by Respondent;

Upon final review of the Petition, order that Petitioner's judgment of death be set aside; and,

Provide such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Dated: May 31, 2017          s/Phillip A. Treviño

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28