**PHILLIP A. TREVIÑO** [SBN 121119]
137 N. Larchmont Blvd., #801
Los Angeles, California 90004
Telephone: (213) 949-8000

Attorney for Petitioner
ERNEST DYKES

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ERNEST DYKES**, | Case No. 11-CV-04454-SI |
| Petitioner, | FIRST MOTION FOR DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES |
| v. | |
| **KEVIN CHAPPELL, Warden,** | **DEATH PENALTY CASE** |
| Respondent. | |

**FIRST MOTION FOR DISCOVERY**

Pursuant to Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts, Rule 27 and related Rules of the Federal Rules of Civil Procedure, Petitioner hereby moves this Honorable Court for an order permitting him to propound written interrogatories and to serve subpoena duces tecum to each of the following parties:

(1)  Respondent's counsel, the California Attorney General;

(2)  the Alameda County District Attorney; and

(3)  the District Attorney (or equivalent prosecuting office) for each and all of the other fifty-seven (57) California counties.

The time period at issue herein is for any offenses occurring post the U.S. Supreme Court decision in <u>Furman v. Georgia</u>, 403 U.S.

952 (1971).  Unless otherwise expressly noted, the terms at issue herein are as defined by the California Penal Code.  Petitioner notes he is amenable to reaching an agreement with Respondent and any other entities as may be lawfully able to invoke and demonstrate any demonstrable need for ongoing confidentiality of any materials responsive to his discovery requests.

    From each of the three aforementioned entities, Petitioner seeks responses to the following interrogatories:

(A) Identify by name, and docket number, each criminal defendant prosecuted for first degree murder (Cal. Penal Code §187) and where the prosecution proceeded, either solely or *inter alia* on a theory of felony-murder, and where the prosecution subsequently or *ab initio* conceded, or where it was found by the trier-of-fact (with either the court sitting without a jury or by a jury), that the defendant had no premeditation to commit murder.

(B) Identify by name, and docket number, each defendant listed in response to the prior interrogatory (A) against whom the prosecution sought a sentence of death.

(C) As to each defendant identified in response to the prior interrogatory (B), list each one as to whom after the penalty phase trial a sentence of death was returned by the jury, or by the court if sitting without a jury.

(D) Provide all working guidelines used, currently or previously, by the pertinent prosecuting agency to determine whether to seek a death sentence in any prosecution for first-degree murder.

    (E)   Such reports concerning the investigation, detection, prosecution, and punishment of all crimes, specifically including homicide prosecutions, both capital and non-capital, in their respective jurisdictions that each of the District Attorney Offices has prepared and provided to the California Attorney General consistent with that Office's authority to collect such information under section 13 of article V of the California Constitution and related authorities.[1]

**This is a first motion for discovery**

    As noted in the caption of the instant submission, Petitioner classifies this as his first motion for discovery. After careful consideration of numerous points, Petitioner has elected to proceed in a limited and conservative manner. He anticipates that the requested discovery materials will support, if not fully establish, the gravamen of Claim One of the petition, namely that his offense conduct and personal profile are such that this case falls outside the constitutionally permissible realm - as defined by the Eighth Amendment of the U.S. Constitution - of capital prosecutions within the immediate jurisdiction of Alameda County, and indeed of California at large. The inquiry does not end there, however.

    Once having established this fundamental point to this Honorable Court's satisfaction, Petitioner will then seek further leave of this Court to conduct a similar canvassing of comparable data on a national level. His information and belief at this

---

[1] See Venegas v. County of Los Angeles, 32 Cal. 4th 820, 832, 11 Cal. Rptr. 3d 692 (2004).

point is that Claim One is a cognizable federal constitutional violation that can be empirically established.  To date, Respondent's primary contrary allegation has been that there is no case law to substantiate such a constitutional violation can exist.

Petitioner disagrees, and importantly Petitioner also notes that in light of the facts of this case Respondent's position does not truly join the issue, let alone resolve the inquiry; the facts of Petitioner's case go beyond the fact patterns underlying the cases in which Respondent has so far sought refuge.

Given the nature and gravity of these points, Petitioner anticipates this matter may reach higher courts, and in order to ensure he is fully prepared to meet any and all challenges in a national arena, he needs not only the facts and empirical data requested herein to show the violation is cognizable within Alameda County and California at large, he must be able to demonstrate further that this claim sounds at the national level as well.

Petitioner recognizes, however, the substantial financial cost such an endeavor will represent, and accordingly he respectfully has elected to proceed in this cautious manner.  It is respectfully requested that Respondent and this Honorable Court recognize, however, that in no way is Petitioner renouncing the national scope of the allegations he set forth in the petition at the outset of this litigation.

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF FIRST MOTION FOR DISCOVERY**

**Statement of Facts**

Petitioner was convicted of a single count of murder, and he acknowledges that his actions caused the death of Lance Clark. He has raised no issues whatsoever before this Court pertaining the guilt phase of his state court criminal trial. His challenges before this Court pertain solely to the sentence of death that has been imposed upon him.

The facts of this case are simple and tragic. On July 26, 1993, Petitioner attempted to rob Bernice Clark, his landlady, who routinely parked outside the apartment building where Petitioner lived. It was her practice to lend residents small sums of cash to enable their drug purchases. She then recovered her loans when government benefit checks arrived for the residents each month. Petition, at ¶¶54-64.

An unemployed young Black man, Petitioner made the tragic decision to rob her. He approached Mrs. Clark and demanded the cache of money he knew she carried. She recognized him, and told him to desist. He did not, brandishing the gun he carried. She grabbed the gun, and a struggle ensued. During the struggle, the gun was fired, and a single bullet was discharged. Petition, at ¶64.

The bullet passed through Mrs. Clark's throat, but she survived. However, that same bullet ricocheted inside the car and struck and killed her grandson, Lance, who was asleep in the back seat of the car. Unquestionably this was a tragedy.

Petitioner subsequently confessed to the offense. He had no prior felony convictions, but he did have a prior misdemeanor conviction for possession of a concealed firearm.[2]

The prosecution charged Petitioner with the first degree murder of Lance Clark, and proceeded in the alternative of theories of either premeditation or felony-murder. It also charged Petitioner with the attempted first-degree murder of Bernice Clark.

The jury expressly found Petitioner not guilty of the attempted murder of Bernice Clark. This is significant. This jury finding dictates the conclusion that the jury found the single bullet was traveling without malice aforethought or premeditation. In other words, the only theory on which the jury could have lawfully convicted Petitioner of the murder of Lance Clark was on a felony-murder theory.

Petitioner does not dispute that in appropriate cases the doctrine of felony-murder may properly sustain a penalty of death. The prosecution in various jurisdictions clearly proceeds on alternative theories, including both premeditation and felony-murder. It did so in this case. But the jury's express finding here that Petitioner was not guilty of the charged attempted first-degree murder of Bernice Clark, and the fact this means Lance Clark's death was solely the result of felony-murder, makes this case singular. Coupled with the fact Petitioner has no prior

---

[2] That stemmed from an incident that had occurred a year and a half earlier, on December 16, 1991. Police located a concealed firearm inside a glove that Petitioner had taken off - at the police officer's request - and left on top of the squad car. Petitioner was already handcuffed and inside the squad car when police discovered the firearm that was inside the glove. Petition, at ¶107.

felony convictions, and his eventual confession of the crime, this constellation of facts simply and categorically take this case far outside the ambit of the "worst of the worst."[3]

Respondent contends this case is death-worthy; Petitioner squarely and firmly rejects the point. Petitioner should be allowed to use discovery under the discretion of this Court to muster the proof to establish Respondent is in error. The Eighth Amendment protects Petitioner and should prevail here.

**Discussion**

The Federal Rules of Civil Procedure generally govern discovery in habeas corpus matters. As explained by the Ninth Circuit:

> Rule 6(a) of the Federal Rules Governing Section 2254 Cases allows parties to engage in discovery in the discretion of the court and "for good cause shown." The rule provides that a "party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." See Campbell v. Blodgett, 982 F.2d 1356, 1358 (9th Cir. 1993) (citation omitted) ("there simply is no federal right, constitutional or otherwise, to discovery in habeas proceedings as a general matter").

Calderon v. U.S. Dist. Ct. for N. Dist. of Cal., 98 F.3d 1102, 1104

---

[3] Petitioner has not been able to locate a single other capital case affirmed by the California Supreme Court post-*Furman* and originating in Alameda County where another capital defendant has been sentenced to death on solely a felony-murder theory.

(9th Cir. 1996).

However, the discovery rules in the Federal Rules of Civil Procedure do not apply completely and automatically to habeas corpus cases. <u>Harris v. Nelson</u>, 394 U.S. 286, 296-99, 89 S. Ct. 1082, 1089-93, 22 L. Ed. 2d 281 (1969). The presiding court has discretion to determine what discovery is appropriate in a particular case. <u>Id</u>. at 299; Rules Governing Section 2254 Cases in the United States District Courts, Rule 6.

Discovery requests must be "relevant to the claim or defense of any party . . ." Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible so long as the discovery is "reasonably calculated to lead to the discovery of admissible evidence." <u>Id</u>.

Rule 6 is intended to facilitate the development and litigation of claims that are the focus of the Court's inquiry. <u>See</u> <u>Harris v. Nelson</u>, 394 U.S. 286, 300, 89 S. Ct. 1082, 1091, 22 L. Ed. 2d 281 (1969) ("[W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.").

Indeed, the Supreme Court has suggested that district judges consider ordering discovery before deciding whether an evidentiary hearing is appropriate in order to determine whether there is a factual basis for petitioner's claims. <u>See</u> <u>Blackledge v. Allison</u> 431 U.S. 63, 82-83 (1977) (upon remand a full evidentiary hearing may not be required, but discovery may be ordered because a habeas petitioner "is entitled to careful consideration and plenary processing of his

claim, including full opportunity for presentation of the relevant facts.")

A habeas petitioner is entitled to discovery upon a showing of "good cause" under Rule 6(a) of the Rules Governing Habeas Petitions under 2254.[4] Good cause is established where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, by able to demonstrate that he is . . . entitled to relief. Bracy v. Gramley, 520 U.S. 899, 908-09 (1997).

Petitioner has made the requisite showing through his allegations in Claim One of the petition. In the petition, Petitioner has alleged that his sentence of death is in violation of the Eighth Amendment to the U.S. Constitution in that it is disproportionate to the crime committed. Petition, Claim One at 55 et seq.

He has further alleged that as administered in the State of California, the death penalty is a violation of the Eighth Amendment. Id.

These claims were raised before the California Supreme Court in Petitioner's direct appeal and state habeas;[5] Respondent has conceded they are fully exhausted.[6]

Accordingly, they have been properly preserved and are provident

---

[4] It bears mention that Rule 6 of the Rules Governing Habeas Cases was not affected by the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Rule 6 continues to function as it always has prior to the enactment of AEDPA.

[5] See direct appeal to the California Supreme Court, these allegations were set forth in Claims XII, XV, XVI, XVII, XVIII, XIX, XXIII, XXIV, XXV, and XXVIII. In addition, the claim was pursued in state habeas as Claim 24.

[6] Respondent's answer to petition, filed 12/13/13, at 19.

before this Court.

There was no evidentiary hearing convened before the California Supreme Court on these - or any of Petitioner's numerous other claims - in his prior state court habeas proceeding.

As such, it bears quick iteration that AEDPA does not operate to impose any pertinent limitation here. 28 U.S.C. 2254 permits a habeas petitioner to proceed where the lower state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." Id.  This exception applies here.

It has been a fundamental principle of Supreme Court capital jurisprudence for many years that death is reserved for "the worst o the worst."  Roper v. Simmons, 543 U.S. 551, 568 (2005).  This core principle goes back to Furman v. Georgia, 408 U.S. 238 (1972), which invalidated all capital judgments then extant in the United States due to a systemic failure to adhere to this principle.  Accord Godfrey v. Georgia, 446 U.S. 420, 427 (1980)(plur. opn.).

The California Supreme Court decision denying relief here violated the fundamental premise of Furman and its extensive progeny. Petitioner should be allowed to demonstrate through the requested discovery the truth, and strength, of this premise.

**Cullen v. Pinholster has no bearing here**

A procedural hurdle that Respondent routinely asserts today in federal capital habeas matters is Cullen v. Pinholster, 131 S.Ct. 1388 (2011).  Pinholster has no bearing here.  Petitioner does not seek to develop or introduce facts unique to him or his case, something that Pinholster might prohibit.  Rather he seeks to develop a legal

question, anchored in the facts already and always known to the California courts below when the lower courts assessed the lawfulness of the capital judgment rendered in this matter.

It also bears noting that in her dissenting opinion in Cullen v. Pinholser, Justice Sotomayor recognized that when conducting discovery in federal court a habeas petitioner might well uncover evidence that would lead to an altogether new claim that was cognizable in habeas.

> Of course, §2254(d)(1) only applies when a state court has adjudicated a claim on the merits. There may be situations in which new evidence supporting a claim adjudicated on the merits give rise to an altogether different claim. The majority opinion does not foreclose this possibility. I assume that the majority does not intend to suggest that review is limited to the state-court record when a petitioner's inability to develop the facts supporting his claim was the fault of the state court itself.

563 U.S. ___, 131 S.Ct. 1388, 1417 n.5, 179 L.Ed.2d 557 (2011).

The majority agreed with her on this point. "Though we do not decide where to draw the line between new claims and claims adjudicated on the merits, Justice Sotomayor's hypothetical involving new evidence of withheld exculpatory witness statements may well present a new claim. Id. at 1401 n. 10 (citations omitted).

A district court abuses its discretion if it denies discovery that is indispensable to a "fair, rounded, development of the material facts." McDaniel v. United States District Court, 127 F.3d 886, 888 (9th Cir. 1997). This is consistent with the holding in Pham v.

Terhune, 400 F.3d 740, 743 (9th Cir. 2005)(quoting Jones v. Wood, 114 F.3d 1002, 1009 (9th Cir. 1997).[7]

District courts have discretion to fashion their own discovery procedures when the same appears warranted. O'Neal v. McAninch, 513 U.S. 432 (1995).

In Harris v. Nelson, 394 U.S. 286 (1969), the Court considered whether in a section 2254 case a district court could authorize a habeas petitioner to submit a set of interrogatories to the prosecution. Notably, at that time Rule 11 (now Rule 12)[8] had not even been adopted. The Supreme Court held in Harris that a district court could indeed authorize the use of suitable discovery procedures when confronted by a prima facie claim for relief cognizable under 2254.

Moreover, the state has an ongoing duty to disclose information that is potentially exculpatory—or to take appropriate curative action upon learning of such information—which extends beyond trial and sentencing, and which encompasses information that comes into the state's possession after trial. See District Attorney's Office for the Third Judicial Dist. v. Osborne, 557 U.S. 52, 72, 129 S. Ct. 2308, 2322, 174 L. Ed. 2d 29 (2009) (noting right in federal habeas, upon showing of "good cause," to discovery of evidence of innocence);

---

[7] The question of discovery should not be conflated with the separate determination of whether an evidentiary hearing will be conducted. "Discovery is available to habeas petitioners at the discretion of the district court . . . regardless of whether there is to be an evidentiary hearing." Jones v. Wood, 114 F.3d 1002, 1009 (9th Cir. 1997); Wilson v. Weigel, 387 F.2d 632, 634 (9th Cir. 1967).

[8] Rule 11 (now Rule 12) was first adopted in 1976.

Imbler v. Pachtman, 424 U.S. 409, 427 n.25, 96 S. Ct. 984, 993 n.25, 47 L. Ed. 2d 128 (1976) (ethical obligation to disclose after-acquired information); Thomas v. Goldsmith, 979 F.2d 746, 749-50 (9th Cir. 1992) (state official has a duty to disclose exculpatory physical evidence in support of federal habeas Petitioner's showing of factual innocence); People v. Garcia, 17 Cal. App. 4th 1169, 1179-81, 22 Cal. Rptr. 2d 545, 550-52 (1993) (California Attorney General and San Diego County District Attorney violated due process by failing to disclose impeaching information about key prosecution expert learned six months after defendant's sentencing).

The discovery for which Petitioner seeks authorization consists of documents and data to be obtained, at least in part, from third parties who are not represented by Respondent. Under the clear and literal language of Rule 45, Rules of Civil Procedure, the entity or individual on whom a discovery request is served is the proper entity or individual to file written objections and move to quash the request on the grounds of privilege (or other protections) or undue burdens. Fed. R. Civ. P. 45(c) (2) (b), (3) (A)(iii), (3) (A) (iv). Consequently, Petitioner notes preemptively that Respondent has no standing to raise any such objections on behalf of any third parties.

Once Petitioner propounds the discovery requests, the third parties on whom they are served and who consequently have standing to raise privilege and hardship issues, may do so, if warranted. See In re Grand Jury Subpoenas Dated December 10, 1987, 926 F.2d 847, 852 (9th Cir. 1991) (party lacks standing to challenge subpoenas not directed to him); United States v. Schlette, 842 F.2d 1574, 1584 n.5 (9th Cir. 1988); United States v. Tomison, 969 F. Supp. 587, 591-92

(E.D. Cal. 1997).

Based upon the foregoing, and the record before this Court, Petitioner respectfully seeks leave of this Honorable Court to conduct the requested discovery.

## CONCLUSION

Petitioner seeks leave of this Court to conduct important discovery. The discovery sought is reasonable and narrowly tailored to claims set forth in the Petition.

The information sought is either admissible in itself or likely to lead to the discovery of admissible evidence. The discovery also will help the parties and this Court determine whether there are genuine issues of material fact in dispute, and identify claims that should be scheduled for an evidentiary hearing. Petitioner has made a substantial showing that he is entitled to the requested discovery.

Finally, at issue is the fundamental precept underlying all capital jurisprudence since <u>Furman</u>: whether this case presents one of the "worst of the worst," an individual whom the prosecution should be allowed to kill.  Petitioner contends he is not properly so designated, and that the judgment below is infirm.  The requested discovery is necessary for him to be able to prove his claims.

Respectfully submitted,

Dated: May 15, 2019        s/Phillip A. Treviño