UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST EDWARD DYKES,<br><br>    Petitioner,<br><br>    v.<br><br>RON DAVIS, Warden of San Quentin State Prison,<br><br>    Respondent. | Case No.11-cv-04454-SI<br><br>**ORDER DENYING PETITIONER'S FIRST MOTION FOR DISCOVERY**<br><br>Re: Dkt. No. 82 |

Before the Court is Petitioner's First Motion for Discovery (Docket No. 79). Respondent has filed his Opposition (Docket No. 82), and Petitioner has filed a Reply (Docket No. 89) in support of the motion. For the reasons that follow, the motion will be DENIED.

**I. BACKGROUND**

In August of 1995, Petitioner was convicted in the Alameda County Superior Court on multiple counts stemming from the July 26, 1993, murder of nine-year-old Lance Clark. Docket No. 13 at ¶ 50. In addition to the first-degree murder of Lance Clark, the jury convicted Petitioner of the robbery and attempted murder of Bernice Clark, Lance's grandmother. *People v. Dykes*, 46 Cal.4th 731, 742 (2009). The jury further found true the allegations that Petitioner used a firearm

1  with respect to each count of conviction and that, as to the attempted murder and robbery counts, Bernice Clark suffered great bodily injury and was a victim over seventy years of age. *Id.* However, the jury found not true the allegation that the attempted murder of Bernice Clark was willful, deliberate, and premeditated. *Id.* Finally, the jury also found true the robbery-murder special circumstance. *Id.* After the penalty phase of trial, the jury found that Petitioner should be sentenced to death. *Id.* The trial court sentenced Petitioner accordingly, and, on automatic appeal to the California Supreme Court, Petitioner's conviction and sentence were affirmed. *Id.* On August 30, 2011, the California Supreme Court denied Petitioner's state court petition for writ of habeas corpus. Docket No. 13 at ¶ 53.

Petitioner initiated proceedings in this Court by filing his request for appointment of counsel on September 7, 2011. Docket No. 1. The Court appointed counsel and, after Petitioner was granted equitable tolling of the limitations period prescribed by 28 U.S.C. § 2244(d), Petitioner filed his federal habeas corpus petition on December 21, 2012. *See* Docket No. 13. Following the duration of two separate stays unrelated to this motion, Petitioner filed his First Motion for Discovery on June 26, 2019. Respondent filed his Opposition on June 26, 2019, and, following three extensions, Petitioner filed his Reply on November 18, 2019.

## II. STANDARD OF REVIEW

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course.'" *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rather, pursuant to Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"), discovery in habeas corpus proceedings is a matter of judicial discretion. The Rule provides, in pertinent part, as follows: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." "Good cause" under the Rule is established "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief[.]'" *Bracy*, 520 U.S. at 909 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). "[A] district court abuse[s] its discretion in not ordering Rule 6(a) discovery when

2

discovery [i]s 'essential' for the habeas petitioner to 'develop fully' his underlying claim." *Pham v. Terhune*, 400 F.3d 740, 743 (9th Cir. 2005) (quoting *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997)).

## III. DISCUSSION

### A. Petitioner's Discovery Request

Petitioner seeks leave to serve subpoenas duces tecum on the California Attorney General, the Alameda County District Attorney, and the district attorneys, or other equivalent prosecuting entities, of California's fifty-seven other counties. Docket No. 79 at 1. Petitioner's subpoenas will command the production of case information corresponding to every prosecution occurring after the Supreme Court's decision in *Furman v. Georgia*, 403 U.S. 952 (1972), in which prosecutors prosecuted a defendant for first degree murder on a theory of felony murder and in which the prosecution conceded, or the trier of fact found, that the defendant had no premeditation to commit murder. *Id.* at 1-2. The subpoenas will further instruct recipients to identify each defendant against whom the prosecution sought a sentence of death and each defendant against whom such sentence was returned. *Id.* at 2. The subpoenas will also require each recipient to provide all "working guidelines" used by the subject agency "to determine whether to seek a death sentence in any prosecution for first degree murder." *Id.* Finally, the subpoenas will command the production of "reports concerning the investigation, detection, prosecution, and punishment of all crimes" that each prosecuting agency has "prepared and provided to the California Attorney General" in compliance with the California Constitution, which authorizes the Attorney General, as the direct supervisor of every district attorney, to require that district attorneys "make reports concerning the investigation, detection, prosecution, and punishment of crime in their respective jurisdictions[.]" *Id.* at 3; Cal. Const. art. V, § 13.

Despite the remarkable breadth and scope of his proposed subpoenas, Petitioner contends that his request is "limited and conservative." Docket No. 79 at 3. He believes the subpoenaed information "will support, if not fully establish, the gravamen of Claim One of the petition, namely that his offense conduct and personal profile are such that this case falls outside the constitutionally

3

permissible realm . . . of capital prosecutions within the immediate jurisdiction of Alameda County, and indeed of California at large." *Id.* Petitioner further advises that, once he has shown that his "offense conduct and personal profile" make him an outlier among California's death row population, he will "seek further leave of this Court to conduct a similar canvassing of comparable data on a national level." *Id.* Although Petitioner does not delineate the contours of this "canvassing . . . on a national level," the Court can reasonably infer that, minimally, Petitioner contemplates serving similar subpoenas on substantially every prosecuting agency in jurisdictions that have employed capital punishment since 1972.

### B. Application

Despite Petitioner's assurance that he is proceeding in a "limited and conservative manner" in seeking to serve subpoenas that would require essentially every prosecutor in California to cull through nearly fifty years of records and case files related to past murder prosecutions, Petitioner does not cite any precedent, even in a capital habeas corpus case, for an award of discovery of such scope and scale. However, even if it might ordinarily be a relevant consideration in ruling on a motion for discovery, the sheer magnitude of Petitioner's discovery request need not be dispositive of his motion at this time. This is so because Petitioner has not shown the requisite "good cause" to serve any subpoenas in this matter, much less those he describes in his motion.

The Court begins its analysis with Claim One of the petition because, according to Petitioner, he has shown "good cause" to serve discovery through his allegations with respect only to that claim. *See* Docket No. 79 at 9. Claim One presents Petitioner's claim that his death sentence is unconstitutional because California's capital sentencing scheme is fundamentally flawed in myriad respects, most of which are presented as discrete sub-claims in the petition. *See* Docket No. 13 at ¶¶ 112-202. While most of the "fundamental flaws" identified by Petitioner in Claim One have no apparent relevance to his discovery request, Petitioner maintains that he has nevertheless shown "good cause" because he has alleged in the petition "that his death sentence is in violation of the Eighth Amendment to the U.S. Constitution in that it is disproportionate to the crime committed[,]" and, more generally, that, "as administered in the State of California, the death penalty is a violation

4

of the Eighth Amendment." Docket No. 79 at 9. He further maintains that the portions of Claim One relevant to his discovery request "were raised before the California Supreme Court in Petitioner's direct appeal and state habeas[.]" *Id.*

Petitioner indeed presents a discrete sub-claim in Claim One under the heading "THE DEATH PENALTY IS DISPROPORTIONATE TO PETITIONER'S CULPABILITY AND THEREFORE VIOLATES THE EIGHTH AMENDMENT." *See* Docket No. 13 at ¶¶ 169-73. In this sub-claim, he alleges that his sentence is disproportionate to his crime because, given the jury's finding that his attempt to murder Bernice Clark was not willful, deliberate, and premeditated, and given further that the bullet that struck, but did not kill, Bernice Clark was the lone bullet that fatally struck Lance Clark, Petitioner could not have murdered Lance Clark with willfulness, deliberation, or premeditation. *Id.* Petitioner alleges that this supposedly diminished culpability, joined with his age at the time of the offense, nineteen, and lack of any serious prior criminal history renders his sentence "plain and simply disproportionate" for purposes of the Eighth Amendment. *Id.* Respondent concedes that Petitioner indeed presented this claim on direct appeal of his conviction and sentence in the California Supreme Court, which rejected the claim on its merits. Docket No. 18 at 28 (citing *Dykes*, 46 Cal. 4th at 818-19).

Taking Petitioner at his word that his discovery request pertains to this part of Claim One, and that such claim was exhausted in the state courts and denied on the merits by the California Supreme Court, then Petitioner's request for discovery is foreclosed by governing law. In reviewing a properly exhausted habeas corpus claim decided on the merits in the state court, this Court is constrained to grant the writ only where the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2). The Supreme Court has held that "review under § 2254(d)(1) [pertaining to the state's court's application of clearly established federal law] is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). In other words, in the Court's initial inquiry pursuant

5

to § 2254(d)(1), "the record under review is limited to the record in existence at the same time [the state court resolved the claim] *i.e.*, the record before the state court." *Id.* at 182.[1] Accordingly, before Petitioner may expand upon the state court record through process such as discovery or an evidentiary hearing in this Court, he must first demonstrate that the California Supreme Court's denial of his claim on the merits was "contrary to, or involved an unreasonable application of," United States Supreme Court precedent. Until he makes this requisite showing, he cannot show "good cause" for his requested discovery. *See, e.g., Bemore v. Chappell*, 788 F.3d 1151, 1177 (9th Cir. 2015) (citation omitted) ("As Bemore has not shown that it was unreasonable or contrary to clearly established federal law for the state court to conclude that, taking the factual allegations in his habeas petition to be true, he was not entitled to relief[,] . . . further discovery is not warranted, and the district court did not abuse its discretion in denying the motion."); *Runningeagle v. Ryan*, 686 F.3d 758, 773 (9th Cir. 2012) (applying *Pinholster* and concluding that habeas petitioner "is not entitled to an evidentiary hearing or additional discovery in federal court because his claim is governed by 28 U.S.C. § 2254(d)(1)").

Petitioner's contention that he is entitled to discovery despite the strictures of § 2254(d)(1) and (2), as made clear by *Pinholster*, is unavailing. He first appears to argue that § 2254(d) "does not operate to impose any pertinent limitation here" because, he believes, the California Supreme Court's decision is "'contrary to, or involved an unreasonable application of, clearly established federal law[.]'" Docket No. 79 at 10 (quoting § 2254(d)(1)). Of course, this is the central question posed by the petition. The Court will not decide Claim One, prior to full briefing by the parties, in the context of deciding Petitioner's discovery motion. Petitioner also argues that *Pinsholster*'s "procedural hurdle" has "no bearing" because he "does not seek to develop or introduce facts unique to him or his case, something that *Pinholster* might prohibit. Rather[,] he seeks to develop a legal

---

[1] *Pinholster*'s holding relates to review pursuant to § 2254(d)(1). To the extent that Petitioner may also be arguing that, pursuant to § 2254(d)(2), the California Supreme Court's merits adjudication was based upon an unreasonable determination of the facts in light of the evidence before that court, it remains that he cannot show good cause for discovery. The statutory text makes clear that this Court's review of the state court's merits adjudication pursuant to § 2254(d)(2) is similarly constricted by the state court record existing at the time of the state court's merits adjudication. *See Pinholster*, 563 U.S. at 185 n.7 (noting that § 2254(d)(2)'s express terms simply provide "additional clarity . . . on this point").

6

question, anchored in the facts already and always known to the California courts below when the lower courts assessed the lawfulness of the capital judgment rendered in this matter." Docket No. 79 at 10-11. To the extent Petitioner is not here confessing to, essentially, seeking to discover information that would support a wholly new and unexhausted claim premised on the "legal question" he aims to develop, Petitioner cites no authority for this curious interpretation of *Pinholster*'s straightforward rule. *Pinholster* is clear that, if Petitioner purports to show that the California Supreme Court's adjudication of some part of Claim One was contrary to, or involved an unreasonable application of, clearly established federal law, then he must do so on the record that was before the state court at the time it rendered its decision. 563 U.S. at 181-82. There is no authority known to the Court that would dispense with this rule merely because the information sought through discovery does not pertain specifically to the petitioner seeking leave to supplement the state court record existing at the time of the state court's decision. Petitioner's planned statewide, and eventual nationwide, "canvassing" of prosecutorial agencies, even if relevant to the ultimate merit of some properly pleaded and exhausted aspect of Claim One, is irrelevant to the showing Petitioner must first make under § 2254(d)(1) or (2) with respect to the California Supreme Court's decision.

Accordingly, Petitioner has failed to demonstrate "good cause" for the discovery he seeks at this time. If, after briefing in due course by the parties, the Court determines that, in relevant part, the California Supreme Court's adjudication of Claim One was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was based upon an unreasonable determination of the facts in light of the evidence before that Court, then Petitioner ay renew his discovery request.

///

///

## IV. CONCLUSION

For all of the foregoing reasons, Petitioner's First Motion for Discovery (Docket No. 79) is DENIED.

**IT IS SO ORDERED.**

Dated: February 20, 2020

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE