**PHILLIP A. TREVIÑO** [SBN 121119]
137 N. Larchmont Blvd., #801
Los Angeles, California 90004
Telephone: (951) 703-3000

Attorney for Petitioner
ERNEST DYKES


**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**


| | |
|---|---|
| **ERNEST DYKES,** | Case No. **11-CV-04454-SI** |
| Petitioner, | PETITIONER'S SUMMATION BRIEFING ON CLAIM TWO: INEFFECTIVE ASSISTANCE OF COUNSEL AT THE PENALTY PHASE |
| v. | |
| **RON BROOMFIELD, Warden,** | |
| Respondent. | **DEATH PENALTY CASE** |

Consistent with this Court's orders, Petitioner submits herewith his summation briefing on Claim Two of the pending petition for a writ of habeas corpus.

Petitioner incorporates in toto and by reference herein the Petition and the Traverse filed in support of the Petition. In continued reliance on those submissions, he does not reiterate the points fully argued therein, opting instead simply to address such changes in the case law as have occurred during the pendency of this matter. As will be seen, the case law upon which Petitioner relies remains good law, indeed even stronger than before.

Relief should be granted on this claim.

Respectfully submitted,

Dated: August 16, 2021          s/Phillip A. Treviño
                                Counsel for Petitioner

FACTUAL OVERVIEW

In Claim Two, Petitioner seeks relief from his sentence of death based upon the fact his trial counsel failed to investigate and to present in mitigation an array of evidence that was readily available.  One of the clearest illustrations of how strong this argument, and how weak the evidence in aggravation was, is comes from the mouth of the trial prosecutor himself.  At a pre-trial hearing, the prosecutor openly conceded that any error in admitting aggravating evidence would not withstand review because "this case doesn't have the bulk of additional aggravation[.]"  (RT 242, emphasis added)

Respondent has many responses to this argument, but he primarily disputes that the trial prosecutor conceded the case against Petitioner was weak.  This simply does not square with the plain reading of the trial transcript of the prosecution's argument.  Nor does it square with common sense based upon capital case law, and contrasted against the facts of this case.

However Respondent tries to distance himself from the trial prosecutor's statement, it remains true that the evidence in aggravation in this case was extraordinarily weak. Petitioner has no prior felony conviction, confessed to the crimes,[1] showed remorse, and the jury found he did not

---

[1]    Petitioner telephoned the police, identified himself, and asked if he had shot somebody, specifically mentioning the name of Bernice Clark. Further, he stayed on the line for 15 to 20 minutes,

(continued...)

1   premeditate first degree murder.    Petitioner does not even challenge

2   the legality of his conviction. It is only the sentence that he

3   challenges.    The death sentence in this case rests on a felony-murder

4   theory and in the absence of premeditation.

5       The single uncharged circumstance in aggravation was Petitioner's

6   prior possession of a concealed firearm. The facts surrounding that

7   episode are simple and uncontroverted. Oakland Police Officer Rand

8   Monda and his partner detained Petitioner on December 16, 1991. As

9   directed, Petitioner compliantly removed his gloves and placed them

10  on the hood of the police car. Officer Monda asked Petitioner to get

11  into the squad car, which Petitioner did. Officer Monda then retrieved

12  a gun from inside one of Petitioner's gloves, which was sitting on the

13  roof of the police car. Officer Monda testified in Petitioner's trial

14  that he recalled he had not originally even seen the gun. (RT 3777-82)

15  Petitioner did not shoot at the officer, nor did he menace him with

16  the gun. Petitioner submitted peacefully to a pat search, and

17

18          [1](...continued)

19  explained where he was, and asked to have the dispatcher send someone
    for him. (RT 2983-95) Officers Grier and Fritz were dispatched and
20  arrested minutes later. (RT 3004) Petitioner testified at trial and
    admitted he was the armed robber. (RT 3294-95) Due to his emotional
21  state, Petitioner had trouble recalling the precise sequence of the
    following events, but he admitted he discharged, perhaps accidentally,
22  the gun. (RT 3312-13) Respondent has nonetheless consistently and
    cavalierly characterized Petitioner as not having accepted
23  responsibility.    Moreover, as addressed in Claim Five of the
    Petition, Petitioner's girlfriend, Bianca Rodriguez, recalled how
24  Petitioner was depressed after the events, drinking heavily and
    reading the Bible.    Ms. Rodriguez's account of Petitioner's
25  remorseful behavior is memorialized in the trial prosecutor's notes
    of an interview he conducted with her prior to calling her as a
26  rebuttal witness.    This was also evidence that should have restrained
    the trial prosecutor's characterizations of Petitioner as lacking
27  remorse, as well as should have been introduced in evidence during the
    penalty phase trial by trial counsel.

28                              Page -3-

1  compliantly took off his gloves when asked to do so. Petitioner was
2  handcuffed and taken to jail, all without any resistance. (RT 3783-85)
3  This was the sole evidence in aggravation offered against Petitioner
4  in his penalty phase trial.

5      This case is simply not one of "the worst of the worst" for which
6  our jurisprudence reserves capital punishment. Petitioner is not one
7  of  "those offenders who commit "a narrow category of the most serious
8  crimes" and whose extreme culpability makes them "the most deserving
9  of execution." <u>Atkins v. Virginia</u>, 536 U.S. 304, 319 (2002).

10     Each and all of these are reasons why trial counsel's
11 unprofessional failure to identify, collect, and offer in evidence the
12 extensive available mitigating evidence were prejudicial to
13 Petitioner.   The death sentence is a result of a constitutional
14 failure. It should be vacated.

15

16               THE GOVERNING CASE LAW

17     The authorities cited in support of Claim Two in the Petition
18 remain controlling.   Further, there are now even more cases still
19 that compel the same conclusion as urged in the Petition: trial
20 counsel's failings constitute a constitutional breakdown.   Petitioner
21 was deprived of effective assistance of counsel at his sentencing
22 proceeding.

23     For example, in <u>White v. Ryan</u>, 895 F.3d 641 (9th Cir. 2018), the
24 Ninth Circuit reversed the district court's judgment which had denied
25 the petitioner's habeas corpus claim of ineffective assistance of
26 counsel at resentencing.

27       "Worse still, counsel utterly failed to investigate (the

28

petitioner's) background for mitigating circumstances. Had he done so, counsel would have found abundant and readily available evidence that White was suffering from serious mental illness as well as Graves' disease and its attendant neuropsychological effects. White also struggled with low intellectual functioning and had a troubled and abusive childhood. None of this background evidence was presented at his resentencing hearing.

White, at 645.    Discussing the facts, the Circuit held:

White's counsel performed deficiently by failing to challenge evidence that White committed the murder for pecuniary gain, and by failing to conduct an adequate investigation of mitigating factors, including the unreasonable decision not to hire any experts to assist with the penalty phase. Reviewing de novo, we conclude that but for counsel's errors, it is reasonably likely that the result would have been different.

Id. at 645-46.

The Circuit reviewed in detail the numerous areas of potentially mitigating evidence that trial counsel failed to identify and muster for the sentencing phase, including the trial prosecutors' own views that a death sentence was not truly appropriate in White's case.

Notably, AEDPA (the Antiterrorism and Effective Death Penalty Act) applied to the matter, and the Circuit understandably observed that it could not grant relief on the ineffective assistance of counsel claim unless the lower state court's adjudication of the claim

"was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or

"was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," <u>id</u>. § 2254(d)(2). In making this determination, we look to the last reasoned state court decision to address the claim. <u>Id</u>. at 665.   AEDPA applies here as well, and yet just as in <u>White</u> it should not present any barrier to Petitioner obtaining relief.

"In assessing prejudice [under <u>Strickland</u>], we reweigh the evidence in aggravation against the totality of available mitigating evidence." <u>Wiggins</u>, 539 U.S. at 534. Prejudice requires "a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." <u>Strickland</u>, 466 U.S. at 695. A "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694. <u>White</u>, at 670.

In <u>White</u>, as here, the evidence in aggravation was relatively slight. Relatively slight, yet in <u>White</u> it was still more troublesome than Petitioner's simple possession of a firearm.

"On the other side of the ledger, the weight of evidence in aggravation is not as substantial as the sentencing judge thought." <u>Porter</u>, 558 U.S. at 41. There was only one aggravating factor — that White committed the murder for pecuniary gain. Even without [trial counsel] attempting to rebut this finding, two out of the five justices on the Arizona Supreme Court in <u>White II</u> felt that it was insufficient to warrant death. "[A]

verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." <u>Strickland</u>, 466 U.S. at 696. <u>White</u>, at 672.

In the same way that the Circuit found relief was warranted in <u>White</u>, this Court should find that relief is warranted here. There is no true justification for trial counsel's dismal failures to present in his client's sentencing proceeding the extensive available evidence in mitigation.

Another post-petition decision is <u>Doe v. Ayer</u>, 782 F.3d 425 (9th Cir. 2015). Notably the trial in <u>Doe</u> occurred in 1987, while Petitioner's trial occurred in 1993. Already six years earlier, when Doe's trial occurred, the following professional standards articulated by the American Bar Association were already in effect. The Circuit discussed the importance of these standards as it assessed Doe's trial counsel's performance.

At the time of Doe's trial in 1987, the prevailing professional norms, as outlined by the ABA Standards, required that a lawyer "conduct a prompt investigation of the circumstances of the case and . . . explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction," and "called for [trial] counsel to cover several broad categories of mitigating evidence." Id. at 7, 11 (citation omitted). The commentary to the standards made clear that "information concerning the defendant's background, education, employment record, mental and emotional stability, family relationships, and the like, will be relevant . . . ." <u>Id</u>. at

7—8.

Id. at 434-35.    The Circuit went on to write how and why it fully understood and embraced the fact the standards of professional conduct are so high in capital cases.

"[D]eath is different[.]" Ring v. Arizona, 536 U.S. 584, 587, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002). So too are the lengths to which defense counsel must go in investigating a capital case. "The imperative to cast a wide net for all relevant mitigating evidence is heightened at a capital sentencing hearing because the Constitution prohibits imposition of the death penalty without adequate consideration of factors which might evoke mercy." Frierson, 463 F.3d at 989 (citation and internal quotation marks omitted). "Although counsel's duty to seek out evidence of mitigation is not limitless, the Supreme Court has recognized that the failure to pursue avenues of readily available information — such as school records, juvenile court and probation reports, and hospital records — may constitute deficient performance." Id. (citing Rompilla v. Beard, 545 U.S. 374, 381—83, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005)).

Although defense counsel may choose to ignore manifestly unfruitful lines of inquiry, a lawyer has not fulfilled his duties to his client if he ceases investigating because his client has not been forthcoming about his background or because counsel has acquired some relevant information. Rather, if what counsel knows or should know suggests that further investigation might yield more mitigating evidence, counsel must conduct that

1    investigation. <u>See</u> <u>Douglas v. Woodford</u>, 316 F.3d 1079, 1088—89

2    (9th Cir. 2003). "The presence of certain elements in a capital

3    defendant's background, such as a family history of alcoholism,

4    abuse, and emotional problems, triggers a duty to conduct

5    further inquiry before choosing to cease investigating." <u>Earp v.</u>

6    <u>Ornoski</u>, 431 F.3d 1158, 1175—76 (9th Cir. 2005).

7    <u>Doe</u>, at 435.

8         <u>Strickland</u> tells us that "strategic choices made after less

9    than complete investigation are reasonable precisely to the

10   extent that reasonable professional judgments support the

11   limitations on investigation.

12   <u>Doe</u>, at 444. In Petitioner's case there is no true or justifiable

13   reason for trial counsel's failures. They were simply that: a failure

14   of a professional nature that resulted in a federal constitutional

15   deficiency in the proceedings.

16        "[D]efense counsel failed to make a reasonable investigation

17   into potential mitigating evidence. Therefore, his decision not

18   to put on a mitigation case cannot be considered to be the

19   product of a strategic choice. An uninformed strategy is not a

20   reasoned strategy. It is, in fact, no strategy at all." <u>Correll</u>,

21   539 F.3d at 949.

22   <u>Doe</u>, at 444.

23        Because death sentences in California must be imposed by a

24   unanimous jury, we must find prejudice if there is a "reasonable

25   probability that at least one juror would have" voted for life.

26   <u>Id</u>. at 537; Cal. Penal Code section 190.4(b). We hold that there

27   is a substantial probability that there would have been a

28

1      different result at the penalty phase had counsel's performance
2      during that phase of the trial not been ineffective.
3 <u>Doe</u>, at 446.

4      These are all weighty concerns, and even more so in Petitioner's
5 case. As noted earlier, the aggravating evidence in Petitioner's
6 sentencing trial was, like in <u>Doe</u>, "fairly minimal." <u>Doe</u>, at 446.
7 In Doe's case, however, the evidence included that the petitioner had
8 robbed two women at gunpoint, and in doing so had pointed a gun at one
9 of the women. <u>Id</u>. Doe's sentencing jury also learned that Doe had been
10 arrested on suspicion of a residential burglary. <u>Id</u>. at 447.    The
11 Ninth Circuit noted in <u>Doe</u> that:

12      This penalty-phase aggravating evidence is a far cry from that
13      which the Supreme Court deemed "extensive" in <u>Pinholster</u>, 131 S.
14      Ct. at 1408.
15 <u>Doe</u>, at 447.

16      Doe's criminal record was also relatively minor.

17      Doe's criminal record — the only aggravating evidence
18      presented by the state at the penalty phase — was light compared
19      to those of many capital defendants; his only previous
20      conviction was for an armed robbery, in which no one was
21      injured, committed when he was a juvenile.
22 <u>Doe</u>, at 447.

23      Petitioner's criminal record is even lighter. In the same way
24 that the Circuit granted relief to Doe based upon his trial counsel's
25 failure to explore, identify, and introduce evidence in mitigation of
26 sentence, so too should this Court grant relief to Petitioner.

27      <u>Bemore v. Chappell</u>, 788 F.3d 1151 (9th Cir. 2015), is another

28

post-AEDPA case in which the Circuit granted penalty phase relief due to trial counsel's failure to investigate and present available evidence in mitigation. In <u>Bemore</u>, the Circuit again used the ABA Standards for professional conduct to guide its analysis, finding trial counsel's failures did not comply.

In <u>Bemore</u>, the evidence in aggravation was far more egregious than as against Petitioner. Bemore had two prior unadjudicated offenses: one was a rape; the other an altercation during which the petitioner pointed a gun at the victim, and then hit him over the head with a wine bottle. Contrast these two prior offenses with Petitioner's uneventful possession of a firearm, and his ensuing peaceful surrender to police.

> Bemore was charged in 1985 and tried in 1989. During that period, "the prevailing professional norms, as outlined by the ABA Standards, required that a lawyer 'conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case . . . .'" <u>Doe v. Ayers</u>, 782 F.3d 425, 434 (9th Cir. 2015) (quoting <u>Van Hook</u>, 588 U.S. at 7, 11) (internal alterations omitted).

<u>Bemore</u>, 788 F.3d at 1163.   As noted earlier, and as the Circuit has repeated, the ABA Standards require more. Petitioner should have received effective assistance from his counsel at his capital sentencing trial. He did not.

In <u>Wharton v. Chappell</u>, 765 F.3d 953 (9th Cir. 2014) the Ninth Circuit did not grant relief simply because the record below was underdeveloped as to whether there was error. Even so, the Circuit was troubled enough by trial counsel's professional failings as to

remanded the matter to the district court for it to make factual findings.

> "To perform effectively in the penalty phase of a capital case, counsel must conduct sufficient investigation and engage in sufficient preparation to be able to present and explain the significance of all the available mitigating evidence." <u>Correll v. Ryan</u>, 539 F.3d 938, 942 (9th Cir. 2008) (internal quotation marks and alterations omitted). Duval had "an obligation to present and explain to the jury all available mitigating evidence." <u>Hamilton</u>, 583 F.3d at 1113. He also "had a duty to conduct 'a thorough investigation of the defendant's background.'" Id. (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 396, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). "It is imperative that all relevant mitigating information be unearthed for consideration at the capital sentencing phase." <u>Caro v. Calderon ("Caro I")</u>, 165 F.3d 1223, 1227 (9th Cir. 1999). "To that end, trial counsel must inquire into a defendant's social background, family abuse, mental impairment, physical health history, and substance abuse history; obtain and examine mental and physical health records, school records, and criminal records; consult with appropriate medical experts; and pursue relevant leads." <u>Hamilton</u>, 583 F.3d at 1113 (citations, internal quotation marks, and alteration omitted).

<u>Wharton</u>, 765 F.3d at 970.

In deference to these considerations, and showing the Circuit's commitment to their importance, the Circuit vacated that portion of the district court's order that denied relief on the ineffective

assistance of counsel claim as to the penalty phase, and remanded it
for factual development.  <u>Wharton</u>, at 981.

## CONCLUSION

The socio-economic deprivations of Petitioner's upbringing, his
neurological impairments, his bipolar disorder, his attention deficit
disorder, his learning disabilities and subnormal intellectual
functioning, as well as his family's mental health history including
schizophrenia, even his drunken and abusive stepfather, these were all
among the many facets of Petitioner's background that trial counsel
could have - and should have - presented to the sentencing jury.

There was no true justification for trial counsel's failure to
do so. His failures were simply and plainly ineffective assistance of
counsel.

Relief should be granted on this claim.

Respectfully submitted,

Dated: August 16, 2021          s/Phillip A. Treviño