**PHILLIP A. TREVIÑO** [SBN 121119]
137 N. Larchmont Blvd., #801
Los Angeles, California 90004
Telephone: (951) 703-3000

Attorney for Petitioner
ERNEST DYKES

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ERNEST DYKES**, | Case No. 11-CV-04454-SI |
| Petitioner, | PETITIONER'S SUMMATION BRIEFING ON CLAIM THREE: TWO CRITICAL SENTENCING JURY FAILURES - VIOLATION OF DOUBLE JEOPARDY, AND CONSIDERATION OF EXTRINSIC EVIDENCE |
| v. | |
| **RON BROOMFIELD, Warden,** | |
| Respondent. | |
| | **DEATH PENALTY CASE** |

Consistent with this Court's orders, Petitioner respectfully submits herewith his summation briefing on Claim Three of the pending petition for a writ of habeas corpus.

Petitioner hereby incorporates in toto and by reference the Petition and the Traverse filed in support of the Petition. In continued reliance on those submissions, he does not reiterate the points fully argued therein, opting instead simply to address such changes in the case law as have occurred during the pendency of this matter.  As will be seen, the case law upon which Petitioner relies remains good law, indeed even stronger than before.

Relief should be granted on this claim.

Respectfully submitted,

Dated: November 15, 2021     s/Phillip A. Treviño
                             Counsel for Petitioner

**FACTUAL OVERVIEW**

In Claim Three, Petitioner seeks relief from his sentence of death based upon two different types of jury misconduct. The jury violated his federal constitutional rights by putting Petitioner in double jeopardy during the sentencing trial when - consistent with an instruction given by the trial judge over Petitioner's objection - it considered conduct of which it had already acquitted him; and, then it further violated his federal constitutional rights when it considered extrinsic evidence.

**Subpart one    The jury put Petitioner in jeopardy for a crime of which he had already been acquitted**

The only rational interpretation of the jury's findings during the guilt phase is that the jury found Petitioner did not have the requisite intent to commit murder in first-degree when he shot Bernice Clark. (CT 526)  Accordingly, the only viable theory on which the jury could have convicted Petitioner of the first-degree murder of Lance Clark was one of felony-murder.[1] These findings were memorialized and made public in open court via the jury's verdicts, signed by the foreperson and read aloud in court on August 2, 1995. (CT 528-32)

Nonetheless, during the penalty phase trial, almost three weeks later on August 22, 1995, when the same jury asked whether it could consider Lance Clark's murder as "willful, premeditated and

---

[1] Petitioner has not challenged the lawfulness of his conviction of first degree murder based upon the felony-murder doctrine consistent with California state law.

deliberate" (RT 4015)[2] the trial court allowed the jury to consider this in aggravation of sentence. (RT 4016; CT 635-36).

**Subpart two     The jury considered extrinsic evidence in violation of federal and state law**

Post-trial various jurors submitted to interviews. Based upon those interviews, Petitioner moved the trial court for a new trial. In support of his motion, Petitioner submitted the defense investigator's memoranda of the interviews given by the jurors.

The trial court concluded that the statements given by the jurors were incompetent to impeach the verdict because they concerned the jurors' reasoning process. (CT 757-59)

Further, in contravention of what trial counsel had been advised the court would do, the court declined to consider the investigator's reports of these interviews based upon its view that they constituted inadmissible hearsay. (RT 4105)

This was all in violation of both state and federal law, as was the trial court's ensuing order denying the motion for a new trial. People v. Jones, 17 Cal.4th 279, 317 (1998); Mattox v. United States, 146 U.S. 140, 150 (1892).

**GOVERNING CASE LAW**

**Analysis of Subclaim one**

The authorities cited in support of both parts of Claim Three in

---

[2] "RT" refers to the Reporter's Transcript from the California Superior Court proceedings. "CT" refers to the Clerk's Transcript from the same proceedings.

the Petition remain controlling. Further, there are now even more cases still that compel the same conclusion as urged in the Petition.

The first argument pertains to the jury's consideration of first degree murder with malice aforethought as a predicate for a sentence of death. This theory was rejected by the jury when it found that Petitioner did not have first degree intent when the firearm was discharged.

As Petitioner has put before this Court, this amounts to a violation of double jeopardy, and accordingly the ensuing sentence of death is a violation of the federal constitution. The Fifth and Fourteenth Amendments to the U.S. Constitution prohibit double jeopardy, and this violation further offends the Eight Amendment of the U.S. Constitution.

<u>Ashe v. Swenson</u>, 397 U.S. 436 (1970) remains bedrock constitutional law. The principles of estoppel apply to criminal proceedings, and are applicable to the states under the Fourteenth Amendment. <u>Id</u>. at 442.

In <u>Ashe</u>, the Supreme Court reviewed lower court decisions denying relief in habeas. The petition alleged that double jeopardy should have attached to bar his second criminal trial and an ensuing conviction for robbery.

In that matter, three or four men robbed six poker players. <u>Id</u>. at 437. In the first trial, Ashe was charged with having robbed one of the men, Knight. Knight testified that he had been robbed. The trial court instructed the jury that if it found Ashe had participated in the robbery, even if he had not personally robbed Knight, he could be found guilty of the robbery. Ashe was acquitted of the Knight

robbery count, with the jury finding he was "not guilty due to insufficient evidence." Id. at 437-38.

He was nevertheless tried anew for robbing one of the other victims, and based on the same nexus of events, over his objection. This time he was convicted of robbing a different one the poker players, Mr. Roberts.  Id. at 439-40.

Reversing the lower courts' decisions, the Supreme Court found that the only rationally conceivable issue in dispute in the first trial was whether Ashe was one of the robbers. Since the jury had concluded he was not, the Supreme Court concluded it was impermissible for him to be put in jeopardy and tried a second time.

Explaining its ruling, the Supreme Court expressly held that collateral estoppel, grounded in the Fifth Amendment's guarantee against double jeopardy, operated to render the second prosecution unconstitutional.

> In Benton v. Maryland, 395 U.S. 784, the Court held
> that the Fifth Amendment guarantee against double jeopardy
> is enforceable against the States through the Fourteenth
> Amendment.

Ashe, at 437.  As the Court explained, this results from the operation of collateral estoppel, which implicates a matter of constitutional fact that must be decided through an examination of the entire record.

> The question is no longer whether  collateral estoppel is
> a requirement of due process, but whether it is a part of
> the Fifth Amendment's guarantee against double jeopardy.
> And if collateral estoppel is embodied in that guarantee,

> then its applicability in a particular case is no longer a matter to be left for state court determination within the broad bounds of "fundamental fairness," but a matter of constitutional fact we must decide through an examination of the entire record. Cf. New York Times Co. v. Sullivan, 376 U.S. 254, 285; Niemotko v. Maryland, 340 U.S. 268, 271; Watts v. Indiana, 338 U.S. 49, 51; Chambers v. Florida, 309 U.S. 227, 229; Norris v. Alabama, 294 U.S. 587, 590.

Ashe, at 442-43.

Patiently explaining the importance and operation of collateral estoppel, the Ashe Court wrote as follows:

> the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality.

Ashe, at 444.

Here, it is unambiguous that at the end of the guilt phase the jury found that Petitioner did not have the intent to commit first degree murder when the firearm was discharged. The record establishes that the firearm was only discharged a single time. (RT 2666-70, 2688-89, 2933) That finding was memorialized in the guilt phase jury's verdict. It cannot lawfully be revisited under principles of double jeopardy or collateral estoppel. And yet during the sentencing trial the trial court allowed the jury to consider this precise legal theory as a factor in aggravation. This was a fundamental violation of federal law, under the Fifth, Eighth, and Fourteenth Amendments. Petitioner stands aggrieved

and relief should be granted by this Court.

In the many years following, the Supreme Court has not shied away from this decision. Bravo-Fernandez v. United States, 137 S.Ct. 352, 359, 196 L.Ed.2d 242, 249, 2016 U.S. LEXIS 7269, 85 U.S.L.W. 4003, 2016 WL 6952648 (2016).

In Bravo-Fernandez, the Court began its analysis by reiterating the Ashe standard.

> In criminal prosecutions, as in civil litigation, the issue-preclusion principle means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U. S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970).

Bravo-Fernandez, at 356. This makes clear that the Ashe analysis remains in full vigor and force.

In Bravo-Fernandez, the Court was confronted with a situation different from that reviewed in Ashe, however. In Bravo-Fernandez, the jury had returned inconsistent verdicts, so the import of the jury's original finding was unclear.  It was this inconsistency that ultimately rendered double jeopardy unavailing to the defendants in Bravo-Fernandez. Id.

Here, there is no such inconsistency.  The plain and rational reading of the record before this Honorable Court makes clear that the jury found the discharge of the weapon was not deliberate, and more specifically that Petitioner did not have the intent to commit first degree murder when it was discharged. Fully consistent with

1 this verdict is only rational and logical conclusion: the jury
2 operated on a theory of felony-murder, which the prosecution had
3 expressly advanced,³ to justify its finding that Petitioner was
4 guilty of murdering Lance Clark. This is a simple and uncomplicated
5 fact pattern.  It is does not present the ambiguities,
6 inconsistencies, or vagaries that were present in Bravo-Fernandez.⁴

> Our decision in Ashe explained that issue preclusion
> in criminal cases must be applied with "realism and
> rationality." Id., at 444, 90 S. Ct. 1189, 25 L. Ed. 2d
> 469. To identify what a jury in a previous trial
> necessarily decided, we instructed, a court must "examine
> the record of a prior proceeding, taking into account the
> pleadings, evidence, charge, and other relevant matter."
> Ibid. (quoting Mayers & Yarbrough, Bis Vexari: New Trials
> and Successive Prosecutions, 74 Harv. L. Rev. 1, 38
> (1960)). This inquiry, we explained, "must be set in a
> practical frame and viewed with an eye to all the
> circumstances of the proceedings." 397 U. S., at 444, 90
> S. Ct. 1189, 25 L. Ed. 2d 469 (quoting Sealfon v. United
> States, 332 U. S. 575, 579, 68 S. Ct. 237, 92 L. Ed. 180

---

    ³ The prosecution's arguments in support of a verdict based upon a theory of felony-murder can be found in the closing arguments of the prosecution. (RT 3443-45; 3461-62, 3496)  Indeed, the defense conceded in closing argument that Petitioner was guilty of first-degree murder on a felony-murder theory. (RT 3468, 3474-75)

    ⁴ It is worth noting that a further complication in Bravo-Fernandez is that the double jeopardy claim resulted from an appellate court's decision to invalidate part of the original judgment.  That complication is simply not present here. "The general rule is that the [Double Jeopardy] Clause dot not bar reprosecution" when a conviction is overturned on appeal. Id. at 363. (citation omitted)

(1948)).

Bravo-Fernandez, at 359.[5]

Here the jury's finding that Petitioner was not guilty of the attempted first degree murder of Bernice Clark was not the result of compromise, compassion, lenity, or misunderstanding of the law. It was a rational and reasoned interpretation of the testimony and evidence the jury received during the guilt phase trial.[6] Respondent's multitude of efforts to convert this case into a labyrinth of legal chaos will not change the four corners of the record.

It might seem that Schiro v. Farley, 510 U.S. 222, 232 (1994), would operate to preclude relief on this claim. Such a result would be based upon an incomplete review of the prevailing case law.

In Schiro the Supreme Court confronted a capital judgment where the petitioner urged double jeopardy principles precluded his being sentenced to death based upon circumstances reasonably similar to those here. The petitioner had been prosecuted on alternative theories of either a knowing or intentional killing of a human being, or a killing that occurred during the course of one

---

[5] See also Yeager v. United States, 557 U.S. 110, 119 (2009). (In Ashe, we squarely held that the Double Jeopardy Clause precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial.)

[6] Since the record shows there was a single, and accidental discharge of the gun, as the lone bullet traveled only one mental state could accompany it. If that bullet did not carry premeditation as to Bernice Clark, then after hitting her and moving on to Lance Clark, by operation of simple logic it could not have subsequently acquired a different state of mind before hitting Lance.

of several enumerated felonies. Id. at 225.

The jury found Schiro guilty of felony-murder, but returned no findings on the alternative theories upon which the trial court had instructed it. Id. at 225-26.  Of course, this is different from what the jury did in this matter: here the jury made an express finding that Petitioner was not guilty of attempted first degree murder of Bernice Clark. (CT 526)

Further, during ensuing collateral reviewing proceedings, the Indiana State Supreme Court rejected Schiro's argument that "the jury's failure to convict him on the first murder count operated as an acquittal of intentional murder" and it found that accordingly the Double Jeopardy clause was not offended by the trial court's ensuing decision to use the intentional murder aggravating circumstance for sentencing purposes. Id. at 227.  It is clear that the Indiana State Court found important that the record was ambiguous as to what, if any views, the jurors may have had as Schiro's state of mind.  The same is not true here as to Petitioner's state of mind. There can be no such uncertainty as to how the guilt phase jury viewed Petitioner's state of mind.

During subsequent federal habeas corpus proceedings, in Schiro Seventh Circuit accepted the Indiana Supreme Court's conclusion that the jury had not made a finding of not guilty on the Count One murder charge, holding that accordingly collateral estoppel was not implicated since "the defendant must show that the jury's verdict actually and necessarily determined the issue he seeks to foreclose."  Schiro v. Clark, 963 F.2d 962, 970 (7th Cir. 1992).

As this foregoing makes clear, there are substantial

differences in the record that was before the U.S. Supreme Court in Schiro and the fact pattern now before this Court.

There is another, important, twist presented by Schiro that merits discussion before and consideration by this Court. The majority in Schiro did hold that the sentencing phase of a single prosecution is not a successive prosecution for purposes of the Double Jeopardy Clause. Id. at 230. The majority went on to state that Bullington v. Missouri, 451 U.S. 430 (1981), was not to the contrary. Id. at 231.[7]

In doing so, the Schiro Court reasoned that the prosecution was simply entitled to "one fair opportunity" to prosecute a defendant, both in a guilt phase and also during an ensuing sentencing proceeding. Id. at 231-32. (emphasis added)  Given the Schiro Court's ultimate justification for its ruling, namely that the petitioner had not met his burden of proving the issue was truly decided, it majority's invocation and ostensible repudiation of Bullington is nothing more than dicta. The outcome for the majority clearly would have been unchanged even if it had not addressed Bullington. As such, Bullington should remain persuasive, even decisive, for this matter since here there is no ambiguity presented by the record below such as was present in the Schiro record.

In sum, the Schiro Court placed great weight, voire its entire analysis, on the view that the record before it was ambiguous as to

---

[7] Justice Blackmun dissented expressly on this point, as well as on the other points expressed in Justice Sevens' dissent. Id. at 237.

whether the jury made any finding whatsoever as to the defendant's intent to kill.  Accordingly, and after finding that Schiro had not met his "burden . . . to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in his favor," the Schiro Court found no relief was warranted. Id. at 236.

The situation here simply does not permit the same muddling of the facts or findings of the trial jury.

While the Schiro Court did dismiss Bullington in dicta, the Bullington Court had been quite thorough and thoughtful in its own analysis. Petitioner respectfully submits the analysis and holding in Bullington should continue to control in this matter, notwithstanding Schiro.

In Bullington v. Missouri, 451 U.S. 430 (1981), the jury had returned a verdict finding Bullington guilty of capital murder. The following day, the trial court convened the jury for the sentencing hearing, and at the conclusion of that proceeding the jury fixed Bullington's sentence at life imprisonment. Id. at 435-36. Due to an intervening change in the governing case law,[8] Bullington was subsequently granted a new trial. When the prosecution announced it would again seek the death penalty during the retrial, he objected.

The Supreme Court analyzed the ensuing legal proceedings presented on the record before it, noting as follows.

> Missouri law provides two, and only two, possible
> sentences for a defendant convicted of capital murder: 2

---

[8] The change was triggered by the decision in Duren v. Missouri, 439 U.S. 357 (1979), wherein the Supreme Court held that a provision which allowed women to claim automatic exemption from jury service was unconstitutional. Bullington, at 436.

(a) death, or (b) life imprisonment without eligibility for probation or parole for 50 years. Mo. Rev. Stat. § 565.008.1 (1978).

Like most death penalty legislation enacted after this Court's decision in <u>Furman v. Georgia</u>, 408 U.S. 238 (1972), the Missouri statutes contain substantive standards to guide the discretion of the sentencer. The statutes also afford procedural safeguards to the convicted defendant. Section 565.006 provides that the trial court shall conduct a separate presentence hearing for the defendant who is convicted by a jury of capital murder.  The hearing must be held before the same jury that found the defendant guilty, and "additional evidence in extenuation, mitigation, and aggravation of punishment" shall be heard. "Only such evidence in aggravation as the prosecution has made known to the defendant prior to his trial shall be admissible." The jury must consider whether the evidence shows that there exist any of the 10 aggravating circumstances or the 7 mitigating circumstances specified by the statute, see §§ 565.012.2 and 565.012.3; whether any other mitigating or aggravating circumstances authorized by law exist; whether any aggravating circumstances that do exist are sufficient to warrant the imposition of the death penalty; and whether any mitigating circumstances that exist outweigh the aggravating circumstances.
§ 565.012.1. A jury that imposes the death penalty must

    designate in writing the aggravating circumstance or
circumstances that it finds beyond a reasonable doubt.
§ 565.012.4. It also must be convinced beyond a
reasonable doubt that any aggravating circumstance or
circumstances that it finds to exist are sufficient to
warrant the imposition of the death penalty. Missouri
Approved Instructions -- Criminal (MAI-Cr) § 15.42
(1979). A Missouri jury is instructed that it is not
compelled to impose the death penalty, even if it decides
that a sufficient aggravating circumstance or
circumstances exist and that it or they are not
outweighed by any mitigating circumstance or
circumstances. MAI-Cr. § 15.46. A jury's decision to
impose the death penalty must be unanimous. If the jury
is unable to agree, the defendant receives the
alternative sentence of life imprisonment described
above. § 565.006.2; MAI-Cr. § 15.48.

Bullington, 451 U.S. at 432-35 (footnotes omitted)

    The procedure that resulted in the imposition of the sentence of life imprisonment upon petitioner Bullington at his first trial, however, differs significantly from those employed in any of the Court's cases where the Double Jeopardy Clause has been held inapplicable to sentencing. The jury in this case was not given unbounded discretion to select an appropriate punishment from a wide range authorized by statute. Rather, a separate hearing was required and was held, and the jury was

presented both a choice between two alternatives and standards to guide the making of that choice. Nor did the prosecution simply recommend what it felt to be an appropriate punishment. It undertook the burden of establishing certain facts beyond a reasonable doubt in its quest to obtain the harsher of the two alternative verdicts. The presentence hearing resembled and, indeed, in all relevant respects was like the immediately preceding trial on the issue of guilt or innocence. It was itself a trial on the issue of punishment so precisely defined by the Missouri statutes.

In contrast, the sentencing procedures considered in the Court's previous cases did not have the hallmarks of the trial on guilt or innocence. In Pearce, Chaffin, and Stroud, there was no separate sentencing proceeding at which the prosecution was required to prove -- beyond a reasonable doubt or otherwise -- additional facts in order to justify the particular sentence. In each of those cases, moreover, the sentencer's discretion was essentially unfettered. In Stroud, no standards had been enacted to guide the jury's discretion.  In Pearce, the judge had a wide range of punishments from which to choose with no explicit standards imposed to guide him. And in Chaffin, the discretion given to the jury was extremely broad. That defendant, convicted in Georgia of robbery, could have been sentenced to death, to life imprisonment, or to a prison term of between 4 and 20

years. 412 U.S., at 18, and n. 1. The statute contained no standards to guide the jury's exercise of its discretion.

Bullington, at 438-40 (footnotes omitted)[9]

The Bullington Court went on, reasoning that "[a] verdict of acquittal on the issue of guilt or innocence is, of course, absolutely final." Id. at 445.    The Court further noted that the "embarrassment, expense and ordeal, and the anxiety and insecurity faced by a defendant at the penalty phase of a Missouri capital murder trial surely are at least equivalent to that faced by any defendant at the guilt phase of a criminal trial. . . Having received one fair opportunity to offer whatever proof it could assemble, . . . the State is not entitled to another." Id. at 445-46 (internal quotations and citation omitted).

With all due respect to the Schiro Court, the decision in Bullington should remain the true considered decision on point and should control this Court's determination in this matter.[10]    Yes, the Schiro Court dismissed the Bullington decision, but it did so summarily, and without reason or even an attempt at justifying its disregard for the precedent.[11]    Further, it did not even base its

---

[9] Cf. Monge v. California, 524 U.S. 721 (1998)(double jeopardy clause does not apply to noncapital sentencing proceedings).

[10] If this Honorable Court should find it is bound by the dicta in Schiro, Petitioner will and hereby does respectfully take exception so as to ensure further appropriate review.

[11] The Supreme Court has itself previously declined to follow dicta delivered in its own decisions. Milkovich v. Lorain Journal Co., 497 U.S. 1, 18 (1990).

decision on any fact or legal precept inconsistent with <u>Bullington</u>, suggesting there was no true obstacle to its remaining valid and guiding precedent. The decision in <u>Schiro</u> was based upon the simple fact that the jury there had not returned a finding of acquittal, and that accordingly Schiro had not carried his burden of showing the operative factual issue to have been determined. The simple reality is the <u>Schiro</u> decision did not turn on whether the proceeding was a bifurcated capital trial.

Here the jury returned an uncomplicated and unambiguous finding that Petitioner was not guilty of attempting to murder Bernice Clark. The jury verdict, returned on August 2, 1995, and filed by th Clerk of Court that same day, reads as follows in pertinent part:

> We, the jury . . . find the defendant, **ERNEST EDWARD DYKES**, **GUILTY** of a felony, to wit, **ATTEMPTED MURDER** , , , [of] **BERNICE CLARK**, as charged in Count Two of the information.
>
> We further find that the attempted murder alleged above **WAS NOT** wilful, deliberate and premeditated.

(CR 526)

In conclusion, the factual record here is compelling in ways that neither <u>Schiro</u> or even <u>Bullington</u> were. The jury clearly returned a not guilty verdict as to attempted first degree murder of Bernice Clark. This meant that the only viable lawful basis for its verdict that Petitioner was guilty of murdering Lance Clark was the felony-murder doctrine.

It was unlawful for the trial court to allow the jury

nevertheless to resuscitate a legal theory it had already itself rejected in assessing what penalty to impose. The principles of double jeopardy were properly invoked before the trial court, and Petitioner should have been spared this.  Relief is warranted under the Double Jeopardy Clause, consistent with the principles of the Fifth, Eighth, and Fourteenth Amendments.

**Analysis of Subclaim Two**

In support of this subclaim, Petitioner has previously cited Mattox v. United States, 146 U.S. 140, 150 (1892). Therein the Supreme Court discussed the relatively limited circumstances under which such evidence could be received.  As Petitioner contended, his proffered evidence satisfied the test articulated in Mattox and related authorities.

However, more recently in Pena-Rodriguez v. Colorado, 137 S.Ct. 855 (2017), the Supreme Court has strengthened Petitioner's claim, and effectively expanded the circumstances under which evidence of juror misconduct may be considered by a reviewing court.[12]

There are numerous aspects of the misconduct revealed by the post-trial defense investigation which suggest racial bias was at work. The jurors' unfounded speculations that Petitioner must have had a more significant criminal record than the jury was told; the perception that the young Black men in the courtroom were necessarily Petitioner's friends; and the further speculation that

---

[12] Petitioner anticipates that based upon this relatively recent change in the governing case law, he will revisit his prior decision to forego requesting discovery and an evidentiary hearing on this component of his claim.

the same young Black men were gangsters because of their untoward behavior outside of the courtroom.  Inter alia, these juror statements suggest that there was a further nefarious motivation underlying at least some of the jurors' perspectives during sentencing deliberations: racial bias.

The death sentence is constitutionally infirm. Relief should be granted and the state court judgment should be vacated.

## CONCLUSION

Relief should be granted on both subparts of this claim.

Respectfully submitted,

Dated: November 15, 2021          s/Phillip A. Treviño