**PHILLIP A. TREVIÑO** [SBN 121119]
137 N. Larchmont Blvd., #801
Los Angeles, California 90004
Telephone: (951) 703-3000

Attorney for Petitioner
ERNEST DYKES

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ERNEST DYKES**, | Case No. 11-CV-04454-SI |
| Petitioner, | **REPLY TO OPPOSITION TO APPLICATION TO STAY PROCEEDINGS** |
| v. | |
| **KEVIN CHAPPELL, Warden,** | **DEATH PENALTY CASE** |
| Respondent. | |

Petitioner has reviewed Respondent's opposition to his application to stay these proceedings under Rhines v. Weber, 533 U.S. 167, 181-82, and its progeny. There is nothing in Respondent's submission that changes the course this Court should follow. Petitioner should be allowed to return to the California courts to exhaust his new claim of federal constitutional violation based upon New York State Rifle & Pistol Association, Inc., et al. v. Bruen, 597 U.S. __, decided June 23, 2022 (hereinafter Bruen).[1]

---

[1] Petitioner notes that, in order to achieve exhaustion of his new claim, he must ultimately present his claim to the California Supreme Court. However, it warrants noting the process may implicate presentation of the claim to the lower state courts. This question is dependent upon California law coupled with the facts of the case, questions Petitioner has not yet been able to assess fully. The threshold decision of which California court is the appropriate venue for this new constitutional claim will require careful analysis of current state law. Petitioner will undertake this analysis immediately following permission from this Court for him to return to the state courts.

Respondent's opposition makes clear there are a number of points of disagreement between the parties concerning the impact of the Supreme Court's recent decision, but even Respondent is compelled to acknowledge <u>Bruen</u> is an important development.

Cutting to the chase, and fully consistent with federal respect for the state courts, anchored in comity and deference, Petitioner submits that all of the challenges and questions Respondent raises in his opposition should be presented first to the state courts. The parties will clearly continue to differ, but it should be the state courts' burden first to evaluate and decide the questions concerning <u>Bruen</u>'s impact on this matter.

Respectfully submitted,

Dated: July 15, 2022        s/Phillip A. Treviño
                            Counsel for Petitioner

**MEMORANDUM OF POINTS AND AUTHORITIES**

Respondent does make some concessions in his submission.

First, and importantly, he acknowledges that the threshold showing for remand to the state courts is low. Still, he argues nevertheless that Petitioner has not satisfied it. This is simply wrong.

This is a capital matter where there is no true justification for a death sentence (discussed further below). And yet even so Respondent would have this Court disregard the fact that with <u>Bruen</u> the U.S. Supreme Court has further undermined the prosecution's argument that simply possessing a firearm was proof Petitioner is a violent man.

And that was after all the only evidence in aggravation of sentence the prosecution adduced against Petitioner at his capital sentencing trial.

A few further points also are not in dispute. During the original state court proceedings, Petitioner did object to the prosecution's efforts to use his possession of a firearm against him in his capital sentencing trial. The firearm was inside a glove and left on top of a squad car, and it remained unseen by law enforcement under <u>after</u> Petitioner had already been placed inside a squad car. Yet the prosecution contended this simple possession was proof that Petitioner was a violent man deserving of execution by California. Petitioner rejected that contention, but his objection was overruled by the trial court.

Respondent now faults Petitioner for having raised only limited arguments against admission of the firearm evidence when

originally before the California courts.  Respondent is correct; Petitioner's arguments did not encompass the scope of what <u>Bruen</u> now addresses.  That is precisely why Petitioner now seeks to return to the state courts.  Petitioner can hardly be faulted for not having expanded his objections at the time of trial to reach the magnitude of what <u>Bruen</u> has done today.[2]

Further, there is no dispute as to whether Petitioner has been prompt in raising this new claim.  The lengthy and stunning decision in <u>Bruen</u> issued on June 23, 2022; four (4) days later (which included a weekend) Petitioner brought his motion.

Nor does Respondent make any assertion of any prejudice he would experience if this matter is remanded to the state courts. Indeed there is no such prejudice he could articulate let alone demonstrate.

Given these confines, Respondent is constrained to make weak factual arguments.  Whatever the strength of those arguments (each and all of which Petitioner rejects), it remains the case Respondent's arguments should be presented first to the state courts.

To the extent Respondent cites precedent to this Court in support of his arguments, all of the precedent he cites is, of

---

[2] Nor is there any dispute as to whether <u>Teague</u> or any other legal doctrine would preclude relief on this new claim. Respondent does not even make any such argument.  Indeed, there is no viable such argument. The new claim <u>Bruen</u> creates is anchored on the Second Amendment.  This is not a novel legal area. The Supreme Court has upended many understandings concerning the Amendment, but that is no bar here to allowing Petitioner to add this new claim, nor should there be.

1  course, pre-Bruen and accordingly is now equally subject to re-
2  assessment.  And yet again, it should be the state courts that
3  address all of these questions in the first instance.  Respondent
4  does not seem even to have considered this.
5      The gravamen of Claim One has always turned on the factual
6  singularity of this case.  In no reasoned world should this matter
7  be a capital matter.  But it is.  Not because of law, reason, and
8  justice, but precisely because of injustice and federal
9  constitutional violations.
10     This case embodies a singularly weak - indeed wholly
11 inappropriate - capital prosecution.[3]
12     -    Petitioner surrendered and voluntarily confessed to
13          this matter.[4]  He accepts the fact he will remain
14          incarcerated for life without parole.  This is not a
15          case with a petitioner who claims factual or legal
16          innocence.
17     -    Nor is there any dispute as to Petitioner's lack of
18          prior criminal convictions.  This is an undisputed fact
19          also.
20     -    Nor can there be any dispute the jury found
21          Petitioner did not have first degree intent when the

---

[3] Under the felony-murder doctrine, Petitioner is responsible legally for Lance Armstrong's death. Petitioner has always acknowledged responsibility for this tragedy.  But none of the questions before this Court turn on Petitioner's guilt.  The only issue in play is the constitutionality of Petitioner's sentence of death.

[4] As stated repeatedly throughout this litigation, Petitioner does not seek to invalidate his conviction. He challenges only the sentence of death imposed in this matter.

|   |   |
|---|---|
| 1 | firearm was discharged. The jury expressly found |
| 2 | Petitioner not guilty of attempted first degree murder. |
| 3 | His conviction of murder can legally only stand on the |
| 4 | felony-murder doctrine. |

Petitioner is a man with no prior criminal history, who called the police to surrender himself, confessed to the events at issue, and the jury itself by its findings concluded the firearm was accidentally discharged.  These factors, alone and together,[5] frame just why and how this is not a matter in which execution is warranted.  This case simply and plainly is built on fractured and weak legal premises, coupled with a fundamentally malfunctioning trial process.  This is why Petitioner is before this Court seeking to invalidate his sentence of death.

It is also an inescapable truth that this case has never been, and will never be, one of the "worst of the worst" so as to merit execution.[6]  Despite years of litigation before the courts, Respondent has never been able to bring himself to allege otherwise.  He argues strenuously in support of Petitioner's death sentence, but even Respondent cannot go the final step and make such a palpably dishonest averment about Petitioner or this matter. It seems probable that every court in this country that is familiar with capital litigation and murder cases generally knows this: this

---

[5] Along with further aspects of this matter Petitioner will refrain from reiterating here but which are set forth in great detail in Claim One.

[6] See e.g., Roper v. Simmons, 543 U.S. 551.568 (2005), Atkins v. Virginia, 536 U.S. 304.319 (2002), and Godfrey v. Georgia, 446 U.S. 420, 428-29 (1980).

fact pattern, while tragic as all murders are, is simply not one of the worst of the worst.

Petitioner did not anticipate Bruen. Did anyone? But Bruen is now the law. Respondent has not given this Court any reason to refuse to allow Petitioner to use this new precedent in furthering his constitutional arguments.

Still, instead of accepting what federal precedent directs should now transpire, Respondent does not want to give the state court system a chance to correct its earlier errors. He wrangles with wisps of an elusive argument, trying to mount a justification for his view that the presence of the firearm, found only after Petitioner was inside the squad car, somehow properly justified the depiction of Petitioner as a truly dangerous and violent man.[7] Even before Bruen, this was a dubious premise throughout America, certainly including in inner-city Oakland. Today, it is a legally flawed argument and Petitioner's matter should be reviewed again by the California courts expressly in light of Bruen.

Respondent makes extensive arguments concerning how the already existing case law governing possession of a firearm will operate to the detriment of Petitioner's claim. Respondent may ultimately be proved right, although Petitioner firmly disagrees and expressly rejects the point. But, for today, what matters is simply that all of this has been thrown into serious doubt by Bruen. And Petitioner firmly believes much, perhaps all, of those

---

[7] As he has consistently done, Petitioner rejects this contention and rests on his previous presentations, all supported by detailed citations to the judicial records in this matter.

prior decisions must now be reassessed, certainly at least as applied to him and this matter. And whatever application the state courts may ultimately attribute to each of those decisions in the wake of Bruen, there will remain the most significant question here: how - if at all - will those cases now operate as applied to Petitioner and in this unique fact pattern? If this ultimate question is eventually to be put to this Court, should this Court not at least first have the benefit of learning the state courts' views of the matter?

If Respondent had truly wanted this matter to proceed without remand, he could have simply conceded the futility of exhaustion for the new claim. Respondent plainly rejected that option.[8] It was Respondent's prerogative to do so and Petitioner respects that.

Petitioner would frankly be most pleased simply to remain before this Court, but it bears noting that would not likely be the most appropriate course. There are a myriad of considerations that application of Bruen to this matter will likely require be assessed by the state courts after complete briefing and consideration of the factual predicate of Petitioner's guilt and penalty phase trials.

Nowhere has Respondent justified why this Court should undertake this additional burden; he simply wants the Court to do so.

---

[8] "If Respondent elects to concede the futility of any further state proceedings, this matter may properly remain active in the federal arena and this claim may properly be added to the already pending petition. Ex Parte Hawk, 321 U.S. 114, 117 (1944); Granberry v. Greer, 481 U.S. 129, 135-36 (1987)." Motion at 7-8.

Rhines is solid U.S. Supreme Court precedence that spells out the steps a petitioner should follow to exhaust a claim. This matter should be stayed and held in abeyance, and Petitioner allowed to return to the California state courts to exhaust his new claim.

### III.
### CONCLUSION

Based upon the points and authorities discussed herein and in his opening motion, Petitioner respectfully asks that this Honorable Court stay this proceeding and hold it in abeyance pending Petitioner's exhaustion before the California courts of his new federal constitutional claim based upon Bruen.

A stay and abeyance are fully and properly warranted at this time under federal law.[9]

Respectfully submitted,

Dated: July 15, 2022            s/Phillip A. Treviño

---

[9] If the Court grants the stay, it may wish to set a date for Petitioner to file a status report with this Court. Petitioner respectfully suggests that a report would be appropriate after a two month interval. This would allow Petitioner to have a reasonable amount of time to make some initial assessments concerning the state court proceedings.