California Appellate Project
California Appellate Project Federal Court Docketing
101 Second Street
Suite 600
San Francisco, CA 94105


11-cv-04454-SI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST EDWARD DYKES,<br><br>Petitioner,<br><br>v.<br><br>RON BROOMFIELD, Acting Warden, San Quentin State Prison,<br><br>Respondent. | Case No. 11-cv-04454-SI<br><br>DEATH PENALTY CASE<br><br>**ORDER DENYING REQUEST FOR STAY AND ABEYANCE**<br><br>Re: Dkt. No. 134 |

Petitioner Ernest Edward Dykes has filed an "Application to Stay Proceedings While Petitioner Exhausts New Claim Pursuant to U.S. Supreme Court Decision in New York State v. Bruen, 597 U.S. __ (June 23, 2022)." Dkt. No. 134. In essence, Petitioner seeks to invoke the stay and abeyance procedure of *Rhines v. Weber*, 544 U.S. 269, 278 (2005). Respondent opposes the motion. For the following reasons, Petitioner's motion will be **DENIED**.

## BACKGROUND

In 1995, a jury in Alameda County convicted Petitioner of the first degree murder of nine-year-old Lance Clark, along with the robbery and attempted first degree murder of Lance's grandmother, Bernice Clark. *People v. Dykes*, 46 Cal. 4th 731, 742 (2009). The jury found true the special circumstance that Petitioner committed the murder during the course of a robbery. *Id.* Petitioner was sentenced to death. The Supreme Court of California affirmed his convictions and sentence. *Id.* The United States Supreme Court denied certiorari review. *Dykes v. California*, 558 U.S. 1127 (2010). The Supreme Court of California subsequently denied Petitioner's state court petition for writ of habeas corpus. *In re Dykes*, No. S126085 (Aug. 31, 2011).

On September 7, 2011, Petitioner initiated the instant federal habeas action by asking this

1   Court to appoint counsel and stay his execution. He filed his finalized federal habeas petition on

2   December 21, 2012. Dkt. No. 13. Following the denial of Petitioner's motion for discovery, the

3   parties have proceeded with substantive briefing of the petition's eight claims. The lone remaining

4   claim due to be briefed by the parties is Claim One. Petitioner filed the instant motion seeking a

5   stay on the date his brief on the merits of Claim One was due. Respondent has filed an opposition

6   (Dkt. No. 136), and Petitioner has filed a reply (Dkt. No. 137).

7   Petitioner seeks stay and abeyance so that he "may return to the Supreme Court of California

8   to exhaust a new claim based upon the U.S. Supreme Court's dramatic decision" in *New York State*

9   *Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. __, 142 S. Ct. 2111 (2022). Dkt. No. 134 at 1. He

10  argues, "[t]his new claim will have a direct and powerful impact on Petitioner's sentence of death,

11  as it will directly undermine the constitutionality of key evidence received by the jury in the penalty

12  phase of Petitioner's capital trial." *Id.*

13

14  **LEGAL STANDARD**

15  A federal court may not grant habeas relief until a petitioner has exhausted available state

16  remedies with respect to each claim. 28 U.S.C. § 2254(b); *Picard v. Connor*, 404 U.S. 270, 272

17  (1971). A federal constitutional claim is exhausted when it has been "fairly presented" to the highest

18  state court and that court has had a meaningful opportunity to apply controlling legal principles to

19  the facts underlying the claim. *Picard*, 404 U.S. at 276-77.

20  The Supreme Court follows a rule of "total exhaustion," requiring that all claims in a habeas

21  petition be exhausted before a federal court may grant the petition. *Rose v. Lundy*, 455 U.S. 509,

22  522 (1982). A district court is permitted, however, to stay a mixed petition containing both

23  exhausted and unexhausted claims so that the petitioner may exhaust his claims in state court without

24  running afoul of the one-year statute of limitations imposed by the Antiterrorism and Effective

25  Death Penalty Act of 1996. *Rhines*, 544 U.S. at 273-75. A district court must stay a mixed petition

26  if: (1) the petitioner has good cause for his failure to exhaust his claims, (2) the unexhausted claims

27  are potentially meritorious, and (3) there is no indication that the petitioner intentionally engaged in

28  dilatory tactics. *Id.* at 278.

United States District Court
Northern District of California

2

1    ## DISCUSSION

2       Petitioner's motion will be denied for at least two reasons: 1) he has not yet filed a mixed

3    petition containing both exhausted and unexhausted claims to which *Rhines* might be applied; and

4    2) his motion fails to show that his proposed *Bruen* claim satisfies the criteria for a *Rhines* stay.

5

6    ## I.    *Rhines* Applies to Mixed Petitions.

7       By its own terms, the stay and abeyance remedy afforded by *Rhines* is available when a

8    district court is presented with a mixed petition: "We confront here the problem of a 'mixed' petition

9    for habeas corpus relief in which a state prisoner presents a federal court with a single petition

10   containing some claims that have been exhausted in the state courts and some that have not." 544

11   U.S. at 271.  Here, the only petition before the Court is not mixed; rather, it is fully exhausted.  As

12   there is currently no mixed petition, there is nothing to stay under *Rhines*.

13      Petitioner's motion invites the court to apply the *Rhines* test to a prospective, unfiled mixed

14   petition, requiring the court to speculate about his entitlement to stay and abeyance on the basis of

15   a vaguely-described legal theory.  He argues that, under *Bruen*, his constitutional rights were

16   violated when the prosecution introduced evidence at the penalty phase of his trial that during a

17   prior, unrelated arrest he was in possession of a concealed and loaded firearm. Dkt. No. 134 at 7.

18   He does not clarify the specific constitutional rights that were violated, variously describing his

19   prospective claim as one challenging "a further constitutional defect in his sentence of death" or a

20   "constitutional violation[.]"  Dkt. No. 134 at 2, 7.  *Rhines* requires this Court to examine any

21   unexhausted claim for potential merit. 544 U.S. at 277-78.  The Court may abuse its discretion in

22   affording a stay to a "plainly meritless" unexhausted claim, and it may abuse its discretion in

23   denying a stay for a "potentially meritorious" one.  *Id.*  Prudence dictates that the Court's exercise

24   of discretion at least be traceable to a clearly-defined, pleaded claim.

25      Petitioner's motion appears to recognize his need to first plead his claim: "Petitioner moves

26   now for leave to amend his federal petition to incorporate this further, important, allegation." Dkt.

27   No. 134 at 7.  The motion is captioned, however, as an "Application to Stay Proceedings" and the

28   closing request for relief is that the Court "stay this proceeding pending exhaustion before the

United States District Court
Northern District of California

3

California Courts of his new federal constitutional claim based upon *Bruen*." *Id.* at 8. Petitioner must put the cart back behind the horse. If he wants leave to amend his petition, he must file a motion seeking such leave, with citation to applicable authority showing why he is entitled to amend, and to which he has attached his proposed amended petition. If such leave is granted, then he may request a stay pursuant to *Rhines*.[1]

## II. Petitioner Fails to Satisfy the *Rhines* Criteria for Stay and Abeyance.

Putting aside that Petitioner's motion for stay and abeyance is not yet ripe, the limited information Petitioner has provided about his proposed *Bruen* claim fails to establish that he is entitled to a *Rhines* stay. Assuming, without finding, that Petitioner can satisfy the "good cause" and intentional delay prongs of the *Rhines* test, he has failed to establish that his claim is at least potentially meritorious.

It would be an abuse of discretion to stay federal habeas corpus proceedings pending exhaustion of a "plainly meritless" claim. *Rhines*, 544 U.S. at 277. In general, the standard for judging whether a claim is "plainly meritless" for *Rhines* purposes is lenient: "[P]rinciples of comity and federalism demand that the federal court refrain from ruling on the merits of the claim unless 'it is perfectly clear that the petitioner has no hope of prevailing.'" *Dixon v. Baker*, 847 F.3d 714, 722 (9th Cir. 2017) (quoting *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005)). In other words, a federal court may forego a *Rhines* stay and proceed to deny an unexhausted claim on the merits "only when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett*, 406 F.3d at 623-24. A claim is "colorable" when the petitioner has "alleged specific facts that, if true, would entitle him to relief." *Tilcock v. Budge*, 538 F.3d 1138, 1145-46 (9th Cir. 2008).

---

[1] Petitioner's motion cites *Rhines* and nods at its requirement that a petitioner show "good cause" for having failed to exhaust his claim to obtain the stay and abeyance remedy afforded by the decision. Dkt. No. 134 at 7. The motion does not reference the separate stay and abeyance procedure provided in this Circuit pursuant to *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2003). Though adopted before *Rhines*, the "*Kelly* procedure" remains available after that decision and, unlike *Rhines*, allows for the stay of an exhausted petition and, moreover, "does not require that a petitioner show good cause for his failure to exhaust state remedies." *King v. Ryan*, 564 F.3d 1133, 1135 (9th Cir. 2009). Because Petitioner's motion references *Rhines* and discusses its requirements, and makes no mention of *Kelly*, this order presumes Petitioner does not seek to invoke the separate "*Kelly* procedure."

United States District Court
Northern District of California

Analysis of whether Petitioner has cleared the potentially meritorious hurdle must begin with the Supreme Court's *Bruen* decision, which, whatever its import, does not carry the substantial load Petitioner would foist upon it. In *Bruen*, the Court held that the "Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 142 S. Ct. at 2122. Because New York's state law licensing regime for permitted carry required the applicant to demonstrate a "special need" for a permit beyond the ordinary self-defense needs of any law-abiding citizen, and therefore had the effect of prohibiting most citizens from obtaining a license for concealed carry, the law was found unconstitutional. *Id.* Pointedly, *Bruen* "does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense." *Id.* at 2161 (Kavanaugh, J., concurring). The decision also recognizes that the right to publicly carry a firearm "has traditionally been subject to well-defined restrictions governing the intent for which one could carry arms, the manner of carry, or the exceptional circumstances under which one could not carry arms." *Id.* at 2138. Hence, *Bruen* does not prohibit a state from criminalizing the concealed carry of a loaded weapon. *Id.* at 2150 ("States could lawfully eliminate one kind of public carry—concealed carry—so long as they left open the option to carry openly."). For these reasons, *Bruen* is limited in scope: it merely prohibits a state from employing a discretionary licensing regime that requires applicants to demonstrate a special need for obtaining a license beyond the ordinary need to defend oneself outside the home. *Id.* at 2161-62.

Petitioner's argument that *Bruen* invalidates his sentence is underdeveloped and attenuated. Petitioner describes a previous arrest on the streets of Oakland during which a loaded, concealed firearm was discovered. Dkt. No. 134 at 2. Although he states this conduct was "uncharged," *id.*, and there is no indication it resulted in a conviction, the conduct was presented to the jury through the testimony of the arresting officer during the penalty phase of Petitioner's trial. *See* Rep.'s Tr. 3774-3785. Petitioner now argues that *Bruen* makes "clear the prosecution should not have been allowed to introduce evidence in aggravation of the simple—and historically always lawful—fact that Petitioner was simply carrying a firearm[.]" Dkt. No. 134 at 6. Although California's licensing scheme was among those identified in *Bruen* as constitutionally flawed in 2022, *see* 142 S. Ct. at 2124, Petitioner does not describe California's licensing scheme at the time of his 1991 arrest. Nor

1    does he allege that he was denied a license in the application of a presumptively invalid discretionary

2    licensing regime. He merely concludes that he was arrested for lawful conduct and that,

3    consequently, the jury should not have been presented with evidence of his unlawful arrest.

4         To be sure, the prosecution introduced evidence of the previous arrest to establish the

5    statutory aggravating circumstance then found at Cal. Penal Code § 190.3(b): "The presence or

6    absence of criminal activity by the defendant, other than the crimes for which the defendant has

7    been tried in the present proceedings, which involved the use or attempted use of force or violence

8    or the express or implied threat to use force or violence." Rep.'s Tr. 3880. The prosecutor argued

9    that, under California law, "possessing a loaded, concealed firearm, in violation of the law, . . .

10   involves the implied threat of violence." *Id.* Notably, the prosecution argued that the jury should

11   consider this aggravating circumstance in addition to the statutory aggravating circumstance

12   pertaining to the circumstances of the offense, which involved the murder of a child during a robbery

13   of the child's grandmother, along with the victim impact evidence introduced during the penalty

14   phase. *Id.* The jury's verdict form does not indicate that the jury found that the aggravating

15   circumstance relating to other criminal activity was established or, if so, how much weight it was

16   afforded in the jury's ultimate finding that the aggravating circumstance(s) outweighed the

17   mitigating. Clerk's Tr. 16769.

18        On direct appeal, the California Supreme Court rejected Petitioner's argument that the

19   evidence of his possession of the firearm was inadmissible because "the incident did not involve a

20   threat or implied threat of violence" as required by the statutory aggravating circumstance. 46 Cal.

21   4th at 777. The state court ruled that the "jury legitimately could infer an implied threat of violence

22   from all the circumstances, including the criminal character of defendant's possession, the

23   concealment of the loaded and cocked weapon in a manner that rendered it available for instant,

24   surprise use, and defendant's use of a similar firearm in committing the present offense." *Id.* While

25   noting that Petitioner referenced the Second Amendment in his appellate brief, but that he did not

26   "contend that the California statutes prohibiting possession of a concealed, loaded firearm in a public

27   place are void under the Second Amendment[,]" the state court nevertheless found that the Second

28   Amendment did not prohibit introduction of the prior arrest during the penalty phase. *Id.* at 777-78

1  (reasoning that nothing in *District of Columbia v. Heller*, 554 U.S. 570 (2008), required the

2  conclusion that "possession in a public place of a loaded, cocked, semiautomatic weapon with a

3  chambered round, concealed in a large glove and ready to fire, cannot be defined as a crime under

4  state law" or that "such conduct cannot be considered as carrying an implied threat of violence").

5  Against this backdrop, the Court must assess whether Petitioner's prospective *Bruen* claim,

6  as he has described it, has potential merit. Unfortunately for Petitioner, none is apparent. The

7  weightiest consideration is that, as discussed previously, *Bruen* does not prohibit a state from

8  implementing a license requirement to carry a firearm and it does not prohibit a state from

9  criminalizing the concealed carry of a loaded firearm. *Bruen* has simply required California to

10 discontinue application of its discretionary "good cause" requirement in its licensing scheme. 142

11 S. Ct. at 2162 (Kavanaugh, J., concurring) (observing, "the 6 States including New York [and

12 California] potentially affected by today's decision may continue to require licenses for carrying

13 handguns for self-defense so long as those States employ objective licensing requirements" such as

14 "fingerprinting, a background check, a mental health records check, and training in firearms

15 handling and in laws regarding the use of force"). This, indeed, is what California has done. *See*

16 Legal Alert No. OAG-2022-02, California Department of Justice, Office of the Attorney General

17 (June 24, 2022) (providing guidance to local law enforcement officials about California's licensure

18 requirements post-*Bruen*, including that the "good cause" requirements in Cal. Penal Code §§

19 26150(a)(2) and 26155(a)(2) "are inconsistent with the Second and Fourteenth Amendments").

20 Likewise, pursuant to Cal. Penal Code § 25400, it remains a crime to carry a concealed

21 firearm in California. *See* Legal Alert No. OAG-2022-03, California Department of Justice, Office

22 of the Attorney General (Aug. 17, 2022) (providing guidance on the continued enforcement of

23 § 25400, among other restrictions on public carry of firearms, after *Bruen*). *See also Peruta v.*

24 *County of San Diego*, 824 F.3d 919, 939 (9th Cir. 2016) (holding, "the Second Amendment does

25 not protect the right of a member of the general public to carry concealed firearms in public" but

26 recognizing, pre-*Bruen*, that the Supreme Court has not yet determined whether there is "a Second

27 Amendment right for a member of the general public to carry a firearm openly in public"). This

28 offense, carrying a concealed firearm, is one of the very offenses, defined in a predecessor statute,

1    the jury was charged with considering in its deliberations on the aggravating evidence at Petitioner's

2    trial. *See* Rep.'s Tr. 3957.

3        Ultimately, while *Bruen* may demonstrate some constitutional infirmity in the licensing

4    scheme that was in effect at the time of Petitioner's arrest—the Court does not know and Petitioner

5    has not provided specific argument in this regard—the decision does not dictate that the evidence

6    of his possession of a loaded and concealed firearm in public could not have established a viable

7    criminal offense under California law, even after *Bruen*.  More importantly, *Bruen* does not

8    command that the circumstances of Petitioner's previous arrest could not have supported the implied

9    threat of violence that was the basis for its inclusion at the penalty phase as proof of a statutory

10   aggravating circumstance.[2]

11       Finally, even assuming that *Bruen* may be applied retroactively and that it indeed establishes

12   that Petitioner's rights were violated by the introduction of the aggravating evidence of his previous

13   arrest, it does not follow that Petitioner has presented a potentially meritorious claim entitling him

14   to habeas relief.  This is so because, even if a jury has considered a subsequently invalidated

15   aggravating circumstance at the penalty phase, before it may grant habeas relief a federal court

16   sitting in habeas must "conduct a separate harmless error analysis pursuant to *Brecht* [*v.*

17   *Abrahamson*, 507 U.S. 619, 638 (1993),] in order to determine whether the error had a substantial

18   and injurious effect on the jury's verdict." *Beardslee v. Brown*, 393 F.3d 1032, 1037 (9th Cir. 2004).

19   This inquiry requires a "careful examination of the penalty phase transcript and the verdict itself" to

20   assess whether the invalid aggravating circumstance "play[ed] a significant role in the penalty phase

21

22       [2] Petitioner also does not explain why *Bruen* may be applied retroactively to invalidate his
23   death sentence.  "A new rule of constitutional law does not usually apply retroactively." *Ybarra v.*
     *Filson*, 869 F.3d 1016, 1032 (9th Cir. 2017) (citing *Teague v. Lane*, 489 U.S. 288, 310 (1989)).
24   There are two historical exceptions to this rule: "First, a rule applies retroactively if it is a substantive
     rule which places certain kinds of primary, private individual conduct beyond the power of the
25   criminal law-making authority to proscribe.  Second, a rule applies retroactively if it is a watershed
     rule of criminal procedure." *Id.* (internal quotations and citations omitted).  More recently, the
26   United States Supreme Court has foreclosed the latter of these exceptions, finding it "moribund"
     and holding that "[n]ew procedural rules do not apply retroactively on federal collateral review."
27   *Edwards v. Vannoy*, __ U.S. __, 141 S. Ct. 1547, 1560 (2021).  With the second *Teague* retroactivity
     exception unavailable, Petitioner can avail himself of *Bruen* only if it satisfies the remaining
28   exception.  He has not argued, much less shown, that it does.

United States District Court
Northern District of California

1    jury's decision." *Id.* at 1041.

2         Nothing in Petitioner's motion or in the Court's independent review of the record suggests

3    any error under *Bruen* could have had a substantial and injurious effect on the jury's verdict. Instead,

4    a fair reading of the transcript indicates that, as one would expect, the aggravating circumstance

5    relating to the circumstances of the offense, including, particularly, the victim impact evidence

6    introduced at the penalty phase, was far more consequential to the prosecution's penalty phase case

7    than was evidence of Petitioner's previous possession of a firearm. Indeed, in his introductory

8    remarks in the penalty phase, the prosecutor immediately advocated this precise understanding of

9    the hierarchy of the aggravating evidence:

10        And at this part of the proceedings you get to hear – the law allows me to
     present certain types of things to assist you in your decision that you're going to have
11        to make in this case about what the appropriate punishment should be. And I think
     as you already know based on the testimony you have heard in the first part of the
12        case, Mr. Dykes is no stranger to guns and you're going to hear some testimony
     concerning his arrest at another time and place and his possession of a different gun,
13        a loaded 25 caliber semi automatic pistol.

14        *But more importantly* you're going to hear evidence about who Lance Clark
     was . . . . And all you know about him so far is he was a nine year old child who was
15        shot to death. And really when you think about it for the part of the trial you have
     already decided that's all you needed to know. But for the additional decision you're
16        called upon now the law allows to present additional evidence about who that person
     was, about his family, and about what effect his being shot to death had on his family.

17   Rep.'s Tr. 3764 (emphasis supplied). The case-in-chief followed suit. Following the brief testimony

18   of the officer who arrested Petitioner and discovered the loaded and concealed firearm, the

19   prosecution presented substantial victim impact testimony from Lance Clark's grandmother, the

20   surviving victim and his primary caregiver, and his older sister. In closing arguments, the

21   prosecution reiterated its conviction about the priority of the aggravating evidence by focusing

22   vividly on the circumstances of the offense and the victim impact evidence that was introduced,

23   with only a brief mention of the prior arrest to remind the jury of its relevance. *Compare* Rep.'s Tr.

24   3880 *with id.* at 3895-98.

25        The prosecution plainly had a specific purpose in introducing evidence of the firearm

26   possession—namely, establishing a separate statutory aggravating circumstance probative of

27   Petitioner's capacity to use or threaten to use force or violence. But, as was discussed on appeal,

28

1    *see Dykes*, 46 Cal. 4th at 777, this theory was steeped in inference and legalese. There was no

2    evidence that Petitioner brandished or otherwise "used" the loaded and concealed firearm, or that

3    he expressed any threat of force or violence. The firearm was merely recovered from the inside of

4    a large glove Petitioner voluntarily removed when first confronted by police. *Id.* at 776.

5    Nevertheless, the jury was permitted to infer that possession of the firearm implied a threat of force

6    or violence because of the circumstances surrounding the arrest, including that, because the firearm

7    had been stored inside Petitioner's glove, it was concealed "in a manner that rendered it available

8    for instant, surprise use." *Id.* at 777.

9         The circumstances surrounding the murder of Lance Clark and its impact on his family,

10   however, required no such inference and engagement with legal semantics. The testimony was

11   direct and visceral. Without belaboring the point, it is evident that family members' testimony about

12   the devastating effects of the murder of a child is far more likely to influence a jury's penalty phase

13   verdict than is a police officer's comparatively detached and clinical testimony about the procedural

14   steps leading to his discovery of an illicit firearm. Accordingly, any contention that evidence of the

15   previous arrest had a substantial and injurious effect on the jury's penalty phase verdict is both

16   highly attenuated and counterintuitive.

17        For many of the reasons identified in this order, Respondent has argued that Petitioner is not

18   entitled to *Rhines* stay and abeyance because his proposed *Bruen* claim is "plainly meritless." Dkt.

19   No. 136 at 13. Petitioner's response to this contention is only that he disagrees with Respondent's

20   reading of the scope of *Bruen* and that "all of the challenges and questions Respondent raises in his

21   opposition should be presented first to the state courts." Dkt. No. 137 at 2. But *Rhines* firmly places

22   the onus on this Court to first examine any unexhausted claim to determine whether the claim is at

23   least potentially meritorious. The Court would abuse its discretion in staying federal proceedings

24   so that a plainly meritless claim could be presented to the state courts. For the reasons identified in

25   this order, and perhaps partly because Petitioner has not yet fully pleaded his claim, the Court cannot

26   conclude at this time that Petitioner's *Bruen* claim is at least potentially meritorious. Perhaps

27   Petitioner can articulate a claim based on *Bruen* that will navigate around the impediments described

28   in this order; the Court is mindful that the standard for assessing potential merit is lenient. But he

United States District Court
Northern District of California

1    has not done so yet. Accordingly, his motion for *Rhines* stay and abeyance must be denied at this

2    time.

## CONCLUSION

For the foregoing reasons, Petitioner's motion for stay and abeyance (Docket No. 134) is **DENIED**. Petitioner may renew the motion upon filing, within fourteen days of the date of this order, a motion to amend his petition, to which he has attached a proposed amended petition fully articulating his prospective *Bruen* claim and explaining why the claim is potentially meritorious. Alternatively, Petitioner shall file his summation brief on Claim One, which was due the day he filed the instant motion, within seven days of the date of this order.

**IT IS SO ORDERED**.

Dated: September 13, 2022

SUSAN ILLSTON
United States District Judge

OFFICE OF THE CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
450 GOLDEN GATE AVENUE
SAN FRANCISCO, CALIFORNIA 94102

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300



FIRST-CLASS

US POSTAGE $001.

ZIP 94
041M122

09/21/22

-R-T-S-  941055006-1N

RETURN TO SENDER
UNABLE TO FORWARD
UNABLE TO FORWARD
RETURN TO SENDER

RECEIVED

SEP 2 6 2022

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

