1  **PHILLIP A. TREVIÑO** [SBN 121119]
   137 N. Larchmont Blvd., #801
2  Los Angeles, California 90004
   Telephone: (951) 703-3000
3
   Attorney for Petitioner
4  ERNEST DYKES

5

6                    **UNITED STATES DISTRICT COURT**

7                 **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

8

9  **ERNEST DYKES**,                     ) **Case No. 11-CV-04454-SI**
                                          )
10          Petitioner,                   ) EX PARTE APPLICATION TO WITHDRAW
                                          ) AS COUNSEL; DECLARATION OF
11          v.                            ) COUNSEL
                                          )
12 **MICHAEL MARTEL, Warden,**            )
                                          )
13          Respondent.                   ) Hearing Date: None Requested
   _____        ) **DEATH PENALTY CASE**
14

15      With profound regret, the undersigned counsel hereby moves this
16 Honorable Court for an order relieving him forthwith in this matter.
17 This application was utterly and completely unthinkable prior to the
18 recent settlement conference in this matter.  For the reasons set
19 forth herein it is now necessary.
20      The declaration of counsel submitted herewith is incorporated by
21 reference.
22
23                                Respectfully submitted,
24
25 Dated: May 29, 2023          Phillip A. Treviño
26
27
28

**DECLARATION OF PHILLIP A. TREVIÑO**

I, Phillip A. Treviño, do hereby state and declare as follows:

1. I am an attorney at law, duly admitted to practice before this Honorable Court. It has been my professional and personal privilege to serve as counsel to Petitioner in this matter since the time I decided to accept an appointment in this matter.[1] For the reasons following, <u>inter alia</u>, I no longer consider it professionally or personally appropriate for me to remain as his counsel. Accordingly I hereby move this Court for order relieving me and appointing new counsel as promptly as possible.[2]

---

[1] Counsel did have reticence to accept this appointment when first requested to do so by predecessor direct appeal counsel. Ultimately counsel changed his view, evidenced by his ensuing acceptance of this role. Despite repeated efforts to make clear that at no time since his decision to accept this appointment has counsel ever regretted that decision, counsel was unable to persuade the settlement judge that he was fully committed to Petitioner. This is a failure of communication, and counsel accepts responsibility for this failure. He notes, however, that during the settlement conference he endeavored strenuously to disabuse the settlement judge of the judge's misapprehension. It appeared clear those efforts were unsuccesful.

[2] When this Court entered its recent order referring this matter for settlement discussions, I was actively engaged in preparing various new motions for submission. First, a renewed motion for Judicial Notice under Rule 201 of FRE of the judicial records in <u>Jones v. Chappell</u>, Central District Court docket CV-09-2158-CJC, as well as a motion for relief to include vacatur of the underlying conviction as well as sentence in this matter. Said relief to be based upon Petitioner's now ever-stronger position to seek such relief, and thereby factually rendering the Ninth Circuit's adverse decision in <u>Jones</u> inapposite. An additional factor to bolster such relief is the practices and positions taken by the CJA unit in this matter, viz encouraging counsel to forego seeking preliminary funding for the necessary factual allegations to state Claim One in the petition, and, <u>inter alia</u>, encouraging counsel to seek a stay pending a final decision in <u>Ashmus v. Broomfield</u>, Northern District of California docket 4:93-cv-0594-YGR. At the urging of the CJA Unit, and <u>inter alia</u>, out of deference to fiscal concerns, namely conservation of limited CJA funds, I moved this Court to stay this matter and the
(continued...)

1    2.   Immediately following the conclusion of the recent settlement conference, I wrote to Petitioner to advise him of the status of this matter, and I noted that although the proceeding had not been fruitful, I remained optimistic about his legal prospects.[3]

---

[2](...continued)
Court entered that stay. (Docket entries 43, 44, 45, and 46)  I was, and I remain, respectful of the fiscal consequences of the relief implicated by the petition in this matter.

At the request of the Central District CJA Unit, in 2009, I was the first attorney to accept an appointment in mega-cases to serve as Coordinating Discovery Attorney.  I agreed to and did serve in that role for numerous years and in numerous massively complex cases (e.g., 200 defendants) in order to assist ensuring maximum defense independence while also working toward minimization of CJA expenditures.

I take full ultimate responsibility for my submissions to this Court.  Even so, eventually I became concerned the stay was not truly in Petitioner's best interests, and accordingly I moved to have the stay terminated. (Docket entry 72) Petitioner Ashmus has since died, and the issues raised in his matter were never fully adjudicated.  Petitioner herein had his better legal interests negatively affected by that further delay, and I was preparing to mitigate that prejudice to the best of my ability. A renewed, and indeed enhanced, motion for relief consistent with the rationale underlying Judge Carney's decision in Jones has struck me as more and more appropriate in this matter.  In addition, I intended immediately following the submission of those motions to this Court to seek a writ of mandamus from the Circuit due to the extraordinary delay independently and already suffered in this matter due to funding and discovery denials coupled with Petitioner numerous efforts to see this litigation advance to entry of judgment so as to allow appellate review.  Petitioner has suffered slowly but consistently due to the slow process of this matter.  I know the five-prong analysis pertinent under Bauman v. US District Court, 557 F.2d 650 (9th Cir. 1977), and I am well aware of how difficult it is to satisfy that standard. I was prepared to sign a pleading before the Circuit asserting entitlement to that relief in this matter.  Following the settlement conference, I am no longer willing to take those steps, although I continue to believe they are in Petitioner's best interests.  This is but one illustration of the conflict I am now experiencing in this matter.  For these time sensitive reasons, respectfully I urge the Court to assess and rule on this application with deliberate dispatch.

[3]   It is not my practice to disclose any aspect of confidential client communications. My commitment to this practice was only strengthened following the issuance of the published decision in US v. Adelzo-Gonzalez, 268 F.3d 772 (9th Cir. 2001)(Illston, D.J.,
(continued...)

1  As noted supra, and as I informed the settlement judge, at that time
2  I had no intention of ever seeking to be relieved in this matter.

3     3.   All the same, given the extraordinary manner in which the
4  settlement proceedings were conducted, thereafter I began to confer
5  with numerous other experienced federal capital habeas counsel
6  regarding what transpired during that session.  One with whom I have
7  frequently conferred was counsel of record in Furman v. Georgia.  It
8  has long been my practice to confer with colleagues I respect,
9  especially so in this complex, challenging, and rewarding area of
10 practice.  All the same, I take full responsibility for the final
11 decisions I have made in this matter.

12    4.   Following those numerous consultations spread over several
13 days, I concluded I needed to make more detailed disclosures to my
14 client regarding the grave assertions the settlement judge leveled
15 against me. I accordingly wrote anew to Petitioner.  I informed him

---

[3](...continued)
sitting by designation).  Although occasional attorney-client time expenditures may escape my notice, I generally do not seek compensation under the CJA for those time segments.  The settlement judge was made aware of this based upon my responses to his inquiries during the hearing. Herein I continue to make no disclosures of communications by my client. But given the overall dimensions of what has occurred, I have determined that nominal disclosures of my own actions now seem warranted in the overriding interests of my client in having conflict-free counsel.  Since the order referring this matter out for settlement, I have been attempting to set up a legal call with Petitioner.  I have spoken with staff at San Quentin, I have completed paperwork and returned it to that staff. I have received no response to those efforts.  I have repeatedly called the facility, only to be told by the operator that "no one was in that department" and all that could be recommended was that I call again on another day.  In prior instances the CJA has cut my bill when it took repeated calls to the facility. For these reasons while I would have preferred to speak directly with Petitioner, I have resorted to correspondence to ensure he is aware as promptly as possible of these events.

in detail of the settlement judge's numerous accusations leveled against me, as well as the fact that I disputed all of them. I noted, also, however, that all of this occurred in the presence of opposing counsel. I concluded by noting (a) that I would be making this submission, and (b) that I would be transmitting it to him once submitted. I will indeed do so as soon as it is finalized and submitted to this Court.

5. With due reflection and great sadness, I have concluded I should not remain as counsel in this matter.[4]

6. At each and every juncture I have used my best professional judgment in handling this matter. From the outset, I have operated on the premise that (1) this is not an "ordinary" capital matter, (2) Petitioner will ultimately obtain relief, and (3) I would stand by his side through the entirety of the proceedings. I have handled far more challenging capital cases and never flinched. I have had few clients as pleasant and agreeable as Petitioner herein. It is more than a professional pleasure to represent him; it is a personal pleasure. I am acutely aware that some of my procedural submissions

---

[4] There are a number of considerations that bear upon this issue. As discussed with a number of the other experienced counsel, one is Rule 1.16(a)(3) of the California Rules of Professional Conduct, which provides a lawyer should withdraw when "the lawyer's mental . . . condition renders it unreasonably difficult to carry out the representation effectively." The events described during the settlement conference have left me with a deep emotional conflict, and I do not believe I can continue to make professional decisions in this matter based solely upon my client's best legal interests. I expect I will constantly hereafter be haunted by an inclination to do what is more readily perceptible as "standard" representation rather than that which my professional experience and judgment teach me is in his best interests. Petitioner deserves better than that. At no point prior to this juncture did I ever, in any aspect of my decades of practice, experience such professional doubt.

are not standard practice.[5] But they were always the product of my best professional judgment as concerned the right actions to take for Petitioner. I did not make my judgments based upon how they might unsettle or leave curious the judiciary. I knew I had a big picture stratagem and I had my client's confidence.[6]

7. During the settlement proceedings, and all in the presence of opposing counsel from the California Attorney General's Office and the Alameda County District Attorney's Office, the settlement judge stated I was providing ineffective assistance of counsel to Petitioner; I was going to lose this case; I did not understand basic principles of Ninth Circuit jurisdiction; it appeared I was simply tired and wanted to dump Petitioner's case; and that I was professionally derelict in other ways. To the best of my abilities, I tried to dispel his allegations and concerns, but the onslaught of criticism was persistent and far-ranging, and despite my various contradictory assertions he reiterated points I believed I had repudiated. Increasingly I realized I was simply unable to assuage his concerns. I also refused to violate the integrity of the

---

[5] In addition to my extensive research of Petitioner's matter, as well as my other habeas clients' matters, both capital and non-capital, my judgment and decisions herein have also been informed by six (6) years during which I served two terms on the Capital Habeas Counsel Selection Committee for the Central District of California. In that role, I reviewed, analyzed, and discussed with the other members of the Committee countless capital dockets and pleadings, both state and federal, in order to assess the performances of other capital habeas counsel.

[6] That stratagem included, post an initial appeal, further extended litigation before this Honorable District Court. For the reasons recited herein, I cannot today imagine how I could remain effective, or be seen to be effective, in this District for this client.

1  attorney-client privilege, which seemed to affect the judge adversely.
2  It was increasingly clear throughout the proceeding I had no
3  credibility before that judge, and although styled a settlement
4  conference, the matter would have been more properly characterized as
5  nothing other than a repudiation of my professional ethics and legal
6  judgment.

7      8.  Over decades of active trial, appellate and habeas
8  litigation in the federal courts, I have had many challenging
9  encounters with countless federal judges.  Many have disagreed with
10 legal arguments I have proffered, or my procedural maneuvers, but not
11 a single one has ever impugned my ethics or my professionalism.[7]

12     9.  Lest there be any doubt, and if I failed in any way
13 adequately to dispel any or all of the myriad of assertions leveled
14 against me, I did not then, and I do not now, agree with a single one
15 of them.  This is of little matter in the final analysis.

16     10.  As I noted earlier, and as my client is now aware, all of
17 this occurred in the presence of opposing counsel.  Consistent with
18 my consultations with other experienced counsel, in light of these

---

[7] Indeed, one of the most challenging - and rewarding - relationships I had for a great many years was with the late Hon. Manuel L. Real, during his tenure as Chief Judge of the Central District. I recall at various circuit-wide judicial conferences the majority laughing in good humor when he was described as the only "true" federal judge, a clear humoristic reference his well-known amd very challenging judicial style.  Despite the many challenging interactions we had, as Chief Judge it was he who personally nominated me, and the court at large confirmed me, to various appointments, including as a Ninth Circuit Lawyer Delegate. He also sent various friends and even a family member to me privately for my representation. Just as every federal judge, he was fully entitled to exercise his professional judicial prerogative, and never was I offended by his comportment.  What I experienced this past week, in front of opposing counsel, was of a wholly different cloth. And factually unfounded.

events I do not believe, no matter how earnestly I may endeavor, that I can be his effective, impartial and conflict-free advocate any longer.  Nor do I believe justice should require him to remain with a counsel who has ostensibly been so completely and fully discredited by a federal judicial officer.

11.  No matter how much I may hope to be unaffected by this episode, I must recognize that in the future I may, or at a minimum may be seen to, second-guess my own decisions in this matter given the allegations already made against me.  I can well imagine that opposing counsel will invoke the judicial allegations as well in order to undermine my negotiating positions at all junctures. Petitioner deserves better than this. He should not be saddled with such doubts, all based, not upon assertions made by opposing counsel, but by a sitting federal judicial officer.  Petitioner is deeply repentant for his criminal conduct, but all the same he is also an aggrieved individual.  The criminal justice system has failed him repeatedly. I was proud to be doing my best to correct that.  I do not believe I am any longer qualified for this demanding role.

12.  Respectfully, and in the best interests of Petitioner, I ask that I be relieved forthwith and that new counsel be appointed without delay to ensure Petitioner's interests are protected as completely as possible.

I declare under penalty of perjury that the foregoing is true and correct, under the laws of the State of California.   Done this day in the Saône-et-Loire, France.

May 29, 2023                    s/Phillip A. Treviño